**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JAIME FAITH EDMONDSON, ALANA CAMPOS, JOHN COULTER, JESSICA BURCIAGA, BRENDA LYNN GEIGER, CLARK GILMER, JESSICA HINTON, RACHEL BERNSTEIN KOREN, AMBER LANCASTER, URSULA MAYES, CARRIE MINTER, DESSIE MITCHESON, SABELLA SHAKE, TIFFANY TOTH, IRINA VORONINA, and LAURIE ANN YOUNG, | Civil Action No. 8:15-CV_____ <br><br> **COMPLAINT** <br> **INJUNCTIVE RELIEF SOUGHT** <br> (Jury Trial Demanded) |
| Plaintiffs, | |
| - against - | |
| CALIENTE RESORTS, LLC, d/b/a CALIENTE RESORT, and CALIENTE VACATION CLUB, LLC, | |
| Defendants. | |

**COMPLAINT**

COME NOW Plaintiffs JAIME FAITH EDMONDSON, ALANA CAMPOS, JOHN COULTER, JESSICA BURCIAGA, BRENDA LYNN GEIGER, CLARK GILMER, JESSICA HINTON, RACHEL BERNSTEIN KOREN, AMBER LANCASTER, URSULA MAYES, CARRIE MINTER, DESSIE MITCHESON, SABELLA SHAKE, TIFFANY TOTH, IRINA VORONINA, and LAURIE ANN YOUNG (collectively, "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendants Caliente Resorts, LLC d/b/a Caliente Resort, and Caliente Vacation Club, LLC (collectively, "Defendants") state as follows:

## INTRODUCTION

1.      Upon information and belief, Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes.  As the allegations in the Complaint detail, Defendants are chronic and habitual infringers.

2.      Upon information and belief, Defendants have used such images for advertising and commercial purposes on websites, social media accounts and other mediums owned and/or operated by Defendants.

3.      Advertisements containing the unauthorized, misappropriated and altered images identified in this Complaint were never negotiated or purchased by Defendants and have been posted by Defendants for the purpose of advertising, promoting and marketing Defendants' business interests.

4.      Defendants did not seek consent to use any image identified herein.  Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image, each Plaintiff would have promptly declined.

5.      At no time did Defendants seek authority through appropriate channels to use any of the Plaintiffs' images for any purpose.  No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her or his image, likeness and/or identity. This is particularly true given the false perception created by Defendants' conduct that each Plaintiff endorses, supports, participates in or attends the types of events hosted at the Caliente Resort or other locations.

6.      Defendants' conduct is misleading and deceptive.  Defendants' conduct is injurious to each Plaintiff by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants, has contracted to perform at and/or participate in events at the Caliente Resort and/or has been hired to promote,

advertise, market or endorse its "swinger" or alternative lifestyle events and other activities offered at the Resort.  They also create the false and fraudulent perception that each Plaintiff depicted in the advertisements will attend each event and participate in the activities advertised.

7.     By using the images, likeness and identity without authority or consent, Defendants have jeopardized each Plaintiff's image, brand and marketability.

8.     Defendants' conduct has also deprived each Plaintiff the opportunity to engage in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

9.     Having operated a business in the adult entertainment and resort industry, Defendants are, or should be, well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

10.     Despite being well aware of an obligation to do so, Defendants never negotiated for or purchased any image of any Plaintiff.  On the contrary, Defendants circumvented the typical arms-length negotiation process entirely and pirated the images.  In doing so, Defendants deprived each Plaintiff of the right to say "no," to protect her or his image, brand and reputation, and gained a windfall by using and altering the images of professional and successful models for Defendants' own commercial purposes without having to compensate the models a single penny for such usage.

11.     Even after receiving two separate demand and cease & desist letters from Plaintiffs' counsel, enclosed herewith as **Exhibits A** (September 10, 2015 Letter) and **B** (September 30, 2015 Letter)**,** Defendants have failed and refused to remove the infringing

imagery.  Rather, in a brazen show of contempt for Plaintiffs' objections and rights, Defendants proceeded to post *additional* infringing images even after receipt of the Demand Letter.  To date, the infringing images are reflected on Defendants' websites and social media.

12.     Knowing Plaintiffs' objections thereto, Defendants continue to use the images without authority.  Much more than merely a misuse in connection with an innocuous brand or event, Defendants' have defamed and embarrassed Plaintiffs by associating their images with the "swinger" lifestyle promoted by Defendants at the Resort.

13.     Each Plaintiff seeks, among other relief, an Order immediately and permanently enjoining Defendants' illegal activities, and compelling Defendants to appropriately compensate each Plaintiff for the theft and piracy of her or his image.

## PARTIES

**A.  <u>Plaintiffs</u>**

14.     Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendants harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models.

15.     Plaintiff Jaime Faith Edmondson ("Edmondson") is, and at all times relevant to this action was, a professional model and a resident of Saint Petersburg, Florida.

16.     Plaintiff Alana Campos ("Campos") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

17.     Plaintiff John Coulter ("Coulter") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

18.     Plaintiff Jessica Burciaga ("Burciaga") is, and at all times relevant to this action was, a professional model and a resident of Whittier, California.

19.     Plaintiff Brenda Lynn Geiger ("Geiger") is, and at all times relevant to this action was, a professional model and a resident of Brewerton, New York.

20.     Plaintiff Clark Gilmer ("Gilmer") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

21.     Plaintiff Jessica (Jessa) Hinton ('Hinton") is, and at all times relevant to this action was, a professional model and a resident of Sherman Oaks, California.

22.     Plaintiff Rachel Bernstein Koren ("Koren") is, and at all times relevant to this action was, a professional model and a Los Angeles, California.

23.     Plaintiff Amber Lancaster ("Lancaster") is, and at all times relevant to this action was, a professional model and a resident Los Angeles, California.

24.     Plaintiff Ursula Mayes ("Mayes") is, and at all times relevant to this action was, a professional model and a resident of Irvine, California.

25.     Plaintiff Carrie Minter ("Minter") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

26.     Plaintiff Dessie Mitcheson ("Mitcheson") is, and at all times relevant to this action was, a professional model and a resident of Costa Mesa, California.

27.     Plaintiff Sabella Shake ("Shake") is, and at all times relevant to this action was, a professional model and a Patterson, California.

28.     Plaintiff Tiffany Toth ("Toth") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

29.     Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

30.     Plaintiff Laurie Ann Young ("Young") is, and at all times relevant to this action was, a professional model and a resident Huntington Beach, California.

**B.   Defendant Caliente Resorts, LLC d/b/a Caliente Resort**

31.     Based on publicly available records, and further upon information and belief, Defendant Caliente Resorts, LLC, operating and doing business as "Caliente Resort" ("Caliente Resort" or "the Resort") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 21240 Gran Via Boulevard, Land O' Lakes, Florida 34637.

32.     The Resort is a private, "clothing optional" resort marketing and catering to individuals engaging in "swinger," "spouse swapping" or open relationship lifestyle events. While the Resort is considered "private," Defendants' marketing and promotional activities are publicly accessible through the world wide web, various social media outlets and affirmative prospect marketing.

33.     Upon information and belief, the Caliente Resort coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website www.calienteresorts.com, among others, and various coordinated social media promotions through Facebook, Twitter, Instagram and Tumblr, among others.

34.     Defendants own and/or operate www.calienteresorts.com as well as other social media accounts and websites through which they advertise their business.

35.     The Resort hosts multiple "clothing optional" and "swinger" events throughout each month.  Images of one or more of the Plaintiff Models are used to market and promote the events.

**C.  Defendant Caliente Vacation Club, LLC**

36.     Based on publicly available records, and further upon information and belief, Defendant Caliente Vacation Club, LLC ("Caliente Vacation") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 21240 Gran Via Boulevard, Land O' Lakes, FL 24637.

37.     Upon information and belief, membership in Caliente Vacation permits attendees at the Resorts events to pay a lower fee.  As such, Caliente Resort and Caliente Vacation work hand in hand to promote the events and reap profits.

**D.  The Caliente Websites and Business Model**

38.     Upon information and belief, Caliente Resort and Caliente Vacation have a unified business structure, through which Caliente Vacation advertises events at Caliente Resorts and offers members of Caliente Vacation to attend those events through payment of a discounted fee.

39.     Upon information and belief, Calienteresorts.com is registered to Caliente Resorts, LLC, at 21240 Gran Via Blvd., Land O Lakes, Florida 34637.  The calienteresorts.com website also has a link to Caliente Vacation which, in turn, advertises the Resort and events hosted by Caliente Resort.

40.     Calientevacationclub.com is linked to calienteresorts.com.  It also is registered to Caliente Club at 21240 Gran Via Blvd., Land O Lakes, Florida 34637 and reflects a joint enterprise between Caliente Resorts and Caliente Vacation.

41.    The exhibits hereto reflect that the infringing images which form the basis for the claims raised herein were jointly advertised and/or promoted by Caliente Resort and Caliente Vacation for the benefit of both companies.

**E.  Third Party "AAHZ Party"**

42.    Upon information and belief, Defendants partner with AAHZ Party, a party planner or coordinator that helps promote, market and advertise for the "erotic" or swinger lifestyle events, and coordinates, or helps to coordinate, the entertainment at the Resort.  AAHZ Party and its events are also featured and/or promoted on websites and social media outlets owned, operated, hosted by, or affiliated with Defendants.

## JURISDICTION AND VENUE

43.    This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).  This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

44.    The Court has personal jurisdiction over Caliente Resort and Caliente Vacation based on their contacts with the State of Florida, including but not limited to each Defendant's registration to conduct business in Florida, each has its physical location and principal place of business in Florida, and each, upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

45.    Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Caliente Resorts and Caliente Vacation reside in the Middle District of Florida and have their principal place of business in Pasco

County, Florida and all acts giving rise to the claims set forth herein occurred or originated in Pasco County, Florida, which is in the Middle District of Florida.

## FACTUAL BACKGROUND

**A.  Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

46.     Each Plaintiff is a professional model who earns a living by promoting her or his image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her or his reputation and own brand for modeling, acting, hosting, and other opportunities.

47.     Each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

48.     Each Plaintiff has worked to establish herself and himself as reliable, reputable and professional.

49.     Each Plaintiff must necessarily be vigilant in protecting her or his "brand" from harm, taint, or other diminution.

50.     Any improper or unauthorized use of an image, likeness or identity could substantially injure the career and career opportunities of each Plaintiff.

51.     In the modeling industry, models such as Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.

52.     Each Plaintiff is a responsible professional in the ordinary course.  Each Plaintiff seeks to control the use and dissemination of her or his image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

53.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, to wit:

    a.   determine whether the individual or entity seeking a license and release of a model's image, likeness or identity is reputable, has reputable products or services, and, through affiliation therewith, would enhance or harm a model's stature or reputation;

    b.   this reputational information is used in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel and how her or his image is going to be used (among other variables);

    c.   to protect her or his reputation and livelihood, a model or agent carefully and expressly defines the terms and conditions of use;

    d.   the entire negotiated deal is reduced to and memorialized in an integrated, written agreement which defines the parties' relationship.  The terms and conditions of the Agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that Agreement.

54.     In the modeling industry, reputation is critical.  Endorsing, promoting, advertising or marketing the "wrong" product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.  Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

55.     For these reasons, *even if* a model chose to jeopardize her or his career for a compromising engagement (such as appearing in an advertisement for a "swingers" club,

"swingers" resort, or "clothing optional" resort), the fee she or he would charge would necessarily exceed the fee typically charged for more mainstream and reputable work.

**B.**  **Defendants Have Used and Altered Each Plaintiff's Image, Likeness and Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

56.      As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of Caliente Resort and Caliente Vacation.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated or will appear and participate in Defendants' activities or events at the Resort, and/or has agreed and consented to advertise, promote, market or endorse Defendants' business, the Resort or one or more Resort events or activities.

### *Plaintiff Jaime Faith Edmondson*

57.      Edmondson is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  After graduating from Florida Atlantic University with a degree in Criminal Justice in 2002, Edmondson worked as a police officer in Boca Raton, Florida for two years.  She then became a cheerleader for the Miami Dolphins.  Edmondson, along with a fellow Miami Dolphins cheerleader, participated in "The Amazing Race 14" reality TV series.  As a model, Edmondson was a *Playboy* Playmate.  She is also a sports blogger for *Playboy* online and co-host of Sirius Fantasy Sports Radio.  Edmondson appeared on "The Bunny House" documentary, and in the Trace Adkins video for "This Aint No Love Song," among others.

58.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

59.    Edmondson's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which has been used at least two times and altered to create the false perception that Edmondson has consented or agreed to promote, advertise, market and/or endorse the Resort's "Football or Pool Party or Both" and the "SOS ["Swimsuit Optional Sunday"] Party or Bucs: DO BOTH!" events to benefit Defendants' commercial interests.

60.    Even after Edmondson's objection outlined in the demand and cease/desist letter of September 10, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images.  On the contrary, Defendants proceeded to post *new* images advertising new "swinger" events at the Resort.  Defendants have further utterly ignored Edmondson's *second* objection in the demand and cease/desist letter of September 30, 2015 (**Exhibit B**), and have failed and refused to remove the prior and new offending images.

61.    Edmondson's image, likeness and identity in **Exhibit C** are being used as advertising.

62.    Edmondson's image, likeness and identity in **Exhibit C** are being used on social media.

63.    Edmondson's image, likeness and identity in **Exhibit C** are tagged with "#CalienteResort" and are being used for branding purposes.

64.    Edmondson has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

65.     Edmondson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

66.     Defendants never sought permission or authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

67.     Edmondson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

68.     Defendants neither offered nor paid any remuneration to Edmondson for the unauthorized use and self-serving alteration of her image, likeness or identity.

69.     Defendants' use of Edmondson's image, likeness and identity in connection with the Resort's "swinger" events impugns Edmondson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

70.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendants have further damaged Edmondson.

*Plaintiff Alana Campos*

71.     Campos is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  As a model, Campos was a *Playboy* Playmate, and has appeared in *Astonish* Magazine, *Viva Glam* Magazine, *Bliss* Magazine, was the Cover girl of *AZ Foothills*, and has been featured in advertising campaigns of Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear,

Sexy Dresses, Sachika, Marisa Kenson, and Sports Calendar.  Campos is a spokesmodel for My Body Journey.   As an actress, Ms. Campos starred in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman and Michael Douglas.  Campos was also a featured Tecate Beer ring girl at the *Mayweather/Pacquiao* pay-per-view fight in April 2015.

72.     Campos has over 520,000 Instagram followers.

73.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Campos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

74.     Campos' image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit D** to the Complaint, one of which has been used at least three times and altered to create the false perception that Campos has consented or agreed to promote, advertise, market and/or endorse the Resort's "AAHZcon Party" and the other of which has been used at least two times and was similarly altered to create the false perception that Campos has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event, all to benefit Defendants' commercial interests.

75.     Campos' image, likeness and identity in **Exhibit D** are being used as advertising.

76.     Campos' image, likeness and identity in **Exhibit D** are being used on social media.

77.     Campos' image, likeness and identity in **Exhibit D** are tagged with "Presented at Caliente Resort in Tampa, FL" and "Hosted at Caliente Resort in Tampa, FL," and are being used for branding purposes.

78.     Campos' image, likeness and identity in **Exhibit D** are being used for an additional, foreseeable use by AAHZ Party, to advertise and promote its sponsorship of the event.

79.     Campos has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

80.     Campos has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

81.     Defendants never sought permission or authority to use or alter Campos' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

82.     Campos never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Resort or any Resort event.

83.     Defendants neither offered nor paid any remuneration to Campos for the unauthorized use or self-serving alteration of her image, likeness or identity.

84.     Defendants' use of Campos' image, likeness and identity in connection with the Resort's "swinger" events impugns Campos' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

85.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Campos' images in their market activities and business.  In doing so, Defendants have further damaged Campos.

*Plaintiff John Coulter*

86.    Coulter is, and at all times relevant to this action was, a successful professional model and actor with numerous accomplishments.  He has appeared in television commercials and music videos.  Coulter has also appeared in advertising campaigns for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male.

87.    In all instances of commercial marketing and promotion of his image, likeness or identity by third parties, Coulter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

88.    Coulter's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit E** to the Complaint, which has been used and altered to create the false perception that Coulter has consented or agreed to promote, advertise, market and/or endorse the Resort's "Great Gatsby" event to benefit Defendants' commercial interests.

89.    Coulter's image, likeness and identity in **Exhibit E** are being used as advertising.

90.    Coulter's image, likeness and identity in **Exhibit E** are being used on social media.

91.    Coulter has never been employed by Defendants or contracted with Defendants participate in events at the Resort.

92.    Coulter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

93.    Defendants never sought permission or authority to use or alter Coulter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

94.     Coulter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering his image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event to benefit Defendants' commercial interests.

95.     Defendants neither offered nor paid any remuneration to Coulter for the unauthorized use and self-serving alteration of his image, likeness or identity.

96.     Defendants' use of Coulter's image, likeness and identity in connection with the Resort's "swinger" events impugns Coulter's character, embarrasses him, and suggests – falsely – his support for and participation in such a lifestyle.

97.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Coulter's images in their market activities and business.   In doing so, Defendants have further damaged Coulter.

### Plaintiff Jessica Burciaga

98.     Burciaga is, and at all times relevant to this action was, a successful businesswoman, professional model and actress with numerous accomplishments.   Burciaga's business ventures include a women's online clothing boutique, www.SailorandSaint.com.   As a model, Burciaga won *Stuff* Magazine's "Neighborhood Knockout" contest, appeared as a ring girl in EA Sports Fight Night Round 3 video game, was a *Playboy* Playmate, and was featured in *Maxim*, *Import Tuner*, *Modified Magazine*, *Performance Auto & Sound*, *Show Latina*, and *Lowrider* Magazine, among others.   As an actress, Burciaga has appeared as herself in several episodes of "The Girls Next Door" reality TV series.

99. Burciaga has over 1.2 million Instagram followers and 200,000 Twitter subscribers.

100. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

101. Burciaga's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit F** to the Complaint, which has been used at least three times and altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Resort's "Caliente Getaway Labor Day Weekend Party" event to benefit Defendants' commercial interests.

102. Burciaga's image, likeness and identity in **Exhibit F** are being used as advertising.

103. Burciaga's image, likeness and identity in **Exhibit F** are being used on social media.

104. Burciaga's image, likeness and identity in **Exhibit F** are tagged with "Caliente Clothing Optional Resort," "Caliente Club & Resort," and "www.calienteresorts.com," and are being used for branding purposes.

105. Burciaga has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

106. Burciaga has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

107. Defendants never sought permission or authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants, the Resort, or any Resort event.

108.    Burciaga never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

109.    Defendants neither offered or paid any remuneration to Burciaga for the unauthorized use or self-serving alteration of her image, likeness or identity.

110.    Defendants' use of Burciaga's image, likeness and identity in connection with the Resort's "swinger" events impugns Burciaga's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's images in their market activities and business.  In doing so, Defendants have further damaged Burciaga.

### *Plaintiff Brenda Lynn Geiger*

111.    Geiger is, and at all times relevant to this action was, a successful professional model, television personality, and actress with numerous accomplishments.  As a model, Geiger has been featured in numerous magazines such as *Show, Maxim, Glamour,* and *Raw,* as well as product and brand campaigns such as Primitive Clothing.  Geiger has also appeared on the Howard Stern Show in a "Miss HTV" contest and in music videos including Keri Hilton's video "Ms. Officer."

112.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Geiger negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

113.   Geiger's image, likeness and identity are depicted in at least one photo, enclosed as **Exhibit G** to the Complaint, which has been used at least three times and altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Resort's "Caliente Getaway Labor Day Weekend Party" event to benefit Defendants' commercial interests.

114.   Geiger's image, likeness and identity in **Exhibit G** are being used as advertising.

115.   Geiger's image, likeness and identity in **Exhibit G** are being used on social media.

116.   Geiger's image, likeness and identity in **Exhibit G** are tagged with "Caliente Clothing Optional Resort," "Caliente Club & Resort," and "www.calienteresorts.com," and are being used for branding purposes.

117.   Geiger has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

118.   Geiger has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

119.   Defendants never sought permission or authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

120.   Geiger never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

121.   Defendants neither offered nor paid any remuneration to Geiger for the unauthorized use or self-serving alteration of her image, likeness or identity.

122.     Defendants' use of Geiger's image, likeness and identity in connection with the Resort's "swinger" events impugns Geiger's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

123.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Geiger's images in their market activities and business.   In doing so, Defendants have further damaged Geiger

### Plaintiff Clark Gilmer

124.     Gilmer is, and at all times relevant to this action was, a successful professional model, host and actress with numerous accomplishments.  As a model, Gilmer has been featured in *Maxim*, *UFC* Magazine, *Crystal* Magazine, and *Miami Living*, and has worked for advertising campaigns for Tecate Beer, Plum Pretty Sugar Lingerie, Lady Lux swimwear, Sketchers, KGB swimwear, Susan Holmes swimwear, Privalia, John Frieda, California Costumes, Maya Hansen, and AbXcore.  As an actress and spokesmodel, she has appeared in television commercials for Carl's Jr., Piston Kings Motor Oil, BJ's Brewhouse and Sol Republic Headphones.  Gilmer has also appeared in the film *Argo* as well as television shows such as *America's Next Top Model*, *How I Met Your Mother*, *CSI*, *Dexter*, and *Glory Kickboxing*.

125.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Gilmer negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

126.     Gilmer's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit H** to the Complaint, which has been used at least three times and altered to create the false perception that Gilmer has consented or agreed to promote, advertise, market

and/or endorse the Resort's "AAHZ Fetish Ball; Slap and Tickle" event to benefit Defendants' commercial interests.

127.    Gilmer's image, likeness and identity in **Exhibit H** are being used as advertising.

128.    Gilmer's image, likeness and identity in **Exhibit H** are being used on social media.

129.    Gilmer's image, likeness and identity in **Exhibit H** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote its sponsorship of the event.

130.    Gilmer has never been employed by Defendants or contracted with Defendants participate in events at the Resort.

131.    Gilmer has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

132.    Defendants never sought permission or authority to use or alter Gilmer's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

133.    Gilmer never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

134.    Defendants neither offered nor paid any remuneration to Gilmer for the unauthorized use and self-serving alteration of her image, likeness or identity.

135.    Defendants' use of Gilmer's image, likeness and identity in connection with the Resort's "swinger" events impugns Gilmer's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

136.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gilmer's images in their market activities and business.   In doing so, Defendants have further damaged Gilmer.

### Plaintiff Jessica (Jessa) Hinton

137.   Hinton is, and at all times relevant to this action, a successful businesswoman, professional model, host, actress and television personality with numerous accomplishments.   Hinton's business ventures include being named Creative Director for MAJR Media and given part ownership for her role with the company.   As a model, Hinton has been the Palms Hotel & Casino's ad campaign spokesmodel, a *Playboy* "Playmate of the Month," has been featured as the front cover model for magazines such as *FHM*, *Kandy* Magazine, *MMA Sports* Magazine, *Guitar World* and *Muscle & Fitness* Magazine.   She served as the spokesmodel for Milwaukee's Best Beer in conjunction with Playboy Enterprises, the spokesmodel for Affliction Clothing, Enzo Milano Hair Products, REVIV Wellness Spa, Protein World and has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media.   As an actress, Hinton has appeared in multiple national television commercials, on "Baywatch" and "7th Heaven."   Hinton has also been the host of Victory Poker interviewing poker players and celebrities and as an interview personality for Top Rank Boxing, conducting interviews of Manny Pacquiao and Shane Mosley.   Hinton has also been a guest host for Los Angeles television station KTLA.

138.   Hinton has 1 million Instagram followers.

139.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

140.    Hinton's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit I** to the Complaint, one of which has been used at least twice and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Resort's "AAHZcon Party" and another of which has been used at least three times to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event to benefit Defendants' commercial interests.

141.    Hinton's image, likeness and identity in **Exhibit I** are being used as advertising.

142.    Hinton's image, likeness and identity in **Exhibit I** are being used on social media.

143.    Hinton's image, likeness and identity in **Exhibit I** are tagged with  "Hosted at Caliente Resort in Tampa, FL" and being used for branding purposes.

144.    Hinton's image, likeness and identity in **Exhibit I** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote its sponsorship of the event.

145.    Hinton has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

146.    Hinton has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

147.    Defendants never sought permission or authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

148.    Hinton never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

149.    Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use and self-serving alteration of her image, likeness or identity.

150.    Defendants' use of Hinton's image, likeness and identity in connection with the Resort's "swinger" events impugns Hinton's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

151.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's images in their market activities and business.   In doing so, Defendants have further damaged Hinton

### Plaintiff Rachel Bernstein Koren

152.    Koren is, and at all times relevant to this action was, a successful professional model, actress and businesswoman with numerous accomplishments.   As a model and brand spokesmodel, Koren has walked runways for fashion shows in Miami's "Mercedes Benz Fashion Week," and has been featured in The Midori Campaign in both print and billboards.   Koren has appeared in such magazines as *Esquire, Vogue, Modern Salon*, *Kandy, Vibra*, *Launch Pad*, *Cut & Dry*, *Hairdo*, *Rebel X*, *Maxim*, *Viva Glam*, and *Swim*.   She has also modeled brands by Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, No Fear, Axe Body Spray, Skinit, Paul Mitchell, Styleget, Bijoli, Sunset Tan, Divine Boutique, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, SNI Swimwear Calendars, Tommy Bahama, Sunsets Inc, B Swim, Love Culture, Fantasy Lingerie, Elegant

Moments, So Cal Swimwear, No Fear, American Honey and Have Faith Swimwear.  Koren's other business ventures include being a part owner of Cashmere hair products.  She has appeared on television shows such as *Shark Tank*.

153.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Koren negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

154.    Koren's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit J** to the Complaint, which has been used at least three times and altered to create the false perception that Koren has consented or agreed to promote, advertise, market and/or endorse the Resort's "Sexy Bare Bottom Club; Shimmer and Shine" event to benefit Defendants' commercial interests.

155.    Koren image, likeness and identity in **Exhibit J** are being used as advertising.

156.    Koren's image, likeness and identity in **Exhibit J** are being used on social media.

157.    Koren's image, likeness and identity in **Exhibit J** are tagged with "SexyBareBottomsClub.com" and being used for branding purposes.

158.    Koren's image, likeness and identity in **Exhibit J** are being used as a "coupon" to promote membership in the Resort's "Sexy Bare Bottoms Club" and "Shimmer and Shine" event, to wit: "Contact us or call Caliente and mention code sbbc for a 15% discount on your weekend stay" and "RSVP and mention Sexy Bare Bottoms Club and your screen name at the gate for reduced ground fees all day long . . . "

159.    Koren has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

160.    Koren has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

161.    Defendants never sought permission or authority to use or alter Koren's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

162.    Koren never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

163.    Defendants neither offered nor paid any remuneration to Koren for the unauthorized use and self-serving alteration of her image, likeness or identity.

164.    Defendants' use of Koren's image, likeness and identity in connection with the Resort's "swinger" events impugns Koren's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

165.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Koren's images in their market activities and business.   In doing so, Defendants have further damaged Koren.

### Plaintiff Amber Lancaster

166.    Lancaster is, and at all times relevant to this action was, a successful professional model, host, actress and businesswoman with numerous accomplishments, including winning the Miss Washington Teen USA competition.  As a model, Lancaster has been featured in *Maxim*, *US Weekly*, *People*, *Stylewatch*, *Life & Style* and *Star*.  She was formerly a member of the Seattle Seahawks cheerleading squad.  Lancaster is a brand spokesmodel and host on the internationally

known TV series "The Price is Right."  She established "Amber Lancaster Interiors."  As an actress, Lancaster has appeared in such television shows as *Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, Entourage, Attack of the Show, The Scream Awards, The Best Damn Sports Show Period*, and the film *Redline*.

167.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Lancaster negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

168.    Lancaster's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit K** to the Complaint, which has been used at least two times and altered to create the false perception that Lancaster has consented or agreed to promote, advertise, market and/or endorse the Resort's "Happy St. Patrick's Day" event to benefit Defendants' commercial interests.

169.    Lancaster's image, likeness and identity in **Exhibit K** are being used as advertising.

170.    Lancaster's image, likeness and identity in **Exhibit K** are being used on social media.

171.    Lancaster has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

172.    Lancaster has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

173.    Defendants never sought permission or authority to use or alter Lancaster's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

174.   Lancaster never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

175.   Defendants neither offered nor paid any remuneration to Lancaster for the unauthorized use and self-serving alteration of her image, likeness or identity.

176.   Defendants' use of Lancaster's image, likeness and identity in connection with the Resort's "swinger" events impugns Lancaster's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

177.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lancaster's images in their market activities and business.  In doing so, Defendants have further damaged Lancaster.

### Plaintiff Ursula Mayes

178.   Mayes is, and at all times relevant to this action was, a successful professional model, actress and television personality with numerous accomplishments.  As a model, Mayes has been featured in magazines such as *Maxim*, *US* Magazine, *Muscle & Fitness*, *944*, *Stuff*, *OC Health*, *Runway*, *People* Magazine, *Harper's Bazaar*, Korean *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire*, *Esquire* Turkey, Australian *FHM*, *Kandy* Magazine, *MMA Sports* Magazine, *Guitar World* and *Muscle & Fitness* Magazine.  She served as the spokesmodel for Coffee Bean & Tea Leaf, Coronet Diamonds, Volkswagen, Amway, Jim Beam, California Milk, Subaru, Evan Williams, Bacardi, among other companies.  As an actress, Hinton has appeared in multiple national television commercials, on "Deal or No Deal" and "The Tonight Show with

Jay Leno." Mayes was also the cover model for the video game "Juiced 2: Hot Import Nights," starring in the game's television commercial, which aired on major networks worldwide.

179.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Mayes negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

180.    Mayes' image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit L** to the Complaint, one of which has been used at least three times and altered to create the false perception that Mayes has consented or agreed to promote, advertise, market and/or endorse the Resort's "Great Gatsby" event, and the other of which has been used at least two times and was similarly altered to create the false perception that Mayes has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event, all to benefit Defendants' commercial interests.

181.    Mayes' image, likeness and identity in **Exhibit L** are being used as advertising.

182.    Mayes' image, likeness and identity in **Exhibit L** are being used on social media.

183.    Mayes' image, likeness and identity in **Exhibit L** are tagged with  "Presented at Caliente Resort in Tampa, FL" and being used for branding purposes.

184.    Mayes' image, likeness and identity in **Exhibit L** are also being used for an additional, foreseeable use by AAHZ Party to advertise and promote its website www.aahzparty.com and its sponsorship of the event.

185.    Mayes has never been employed by Defendants or contracted with Defendants participate in events at the Resort.

186.    Mayes has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

187.    Defendants never sought permission or authority to use or alter Mayes' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

188.    Mayes never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

189.    Defendants neither offered nor paid any remuneration to Mayes for the unauthorized use and self-serving alteration of her image, likeness or identity.

190.    Defendants' use of Mayes' image, likeness and identity in connection with the Resort's "swinger" events impugns Mayes' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

191.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mayes' images in their market activities and business.   In doing so, Defendants have further damaged Mayes.

### *Plaintiff Carrie Minter*

192.    Minter is, and at all times relevant to this action was, a successful professional model, actress and businesswoman with numerous accomplishments.  As a model, Minter was a *Playboy* Playmate, and has appeared in such other magazines as *GQ*, *Maxim*, *FHM*, *Seventeen*, *Aroos Bridal* Magazine, *Apparel News*.  Minter has also been featured in advertising campaigns for Harley Davidson, Dreamgirl International, Elegant Moments Lingerie, Benchwarmer Trading Cards, JC Penney, Women's Wear Daily, Simin Couture, the Beverly Hills Hotel, Ferrari, Renaissance Hotel & Spa, Gillette, Love FiFi Lingerie, Music Legs, Linder Sport/Sexy

Shapewear, Have Faith Swimgerie, Wendy Griffin Jewelry, Shirley of Hollywood, and many other companies.  Minter has also been featured in commercials, television series, music videos, and films.  Minter's business ventures include her ownership of "Carrie's Pilates Plus."

193.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Minter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

194.   Minter's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit M** to the Complaint, which has been used at least three times and altered to create the false perception that Minter has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event to benefit Defendants' commercial interests.

195.   Minter's image, likeness and identity in **Exhibit M** are being used as advertising.

196.   Minter's image, likeness and identity in **Exhibit M** are being used on social media.

197.   Minter's image, likeness and identity in **Exhibit M** are tagged with "Presented at Caliente Resort in Tampa, FL" and are being used for branding purposes.

198.   Minter's image, likeness and identity in **Exhibit M** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote it sponsorship of the event.

199.   Minter has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

200.   Minter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

201.    Defendants never sought permission or authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

202.    Minter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Resort or any Resort event.

203.    Defendants neither offered nor paid any remuneration to Minter for the unauthorized use or self-serving alteration of her image, likeness or identity.

204.    Defendants' use of Minter's image, likeness and identity in connection with the Resort's "swinger" events impugns Minter's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

205.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Minter's images in their market activities and business.  In doing so, Defendants have further damaged Minter.

### Plaintiff Dessie Mitcheson

206.    Mitcheson is, and at all times relevant to this action was, a successful professional model, actress, television personality and spokeswoman with numerous accomplishments.  As a model, Mitcheson has been the face of *Playboy* Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental.   She has been featured multiple times in *Maxim* magazine, and been named *Maxim*'s "Hometown Hottie."  As a television personality, Mitcheson was featured as the main Tecate Beer ring girl for the *Mayweather/Pacquiao* pay-per-view fight

in April 2015. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine, among others.

207. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Mitcheson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

208. Mitcheson's image, likeness and identity are depicted in at least four photographs, enclosed as **Exhibit N** to the Complaint, which have been used at least twice and altered to create the false perception that Mitcheson has consented or agreed to promote, advertise, market and/or endorse the Resort's "AAHZ's Metallic Party," "AAHZ's Great Gatsby" and "AAHZ's White Christmas Party" events to benefit Defendants' commercial interests.

209. Mitcheson's image, likeness and identity in **Exhibit N** are being used as advertising.

210. Mitcheson's image, likeness and identity in **Exhibit N** are being used on social media.

211. Mitcheson's image, likeness and identity in **Exhibit N** are tagged with the following language "Hosted at Caliente Resorts" and are being used for branding purposes.

212. Mitcheson's image, likeness and identity in **Exhibit N** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote its website, www.aahzparty.com, and its sponsorship of the event.

213. Mitcheson has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

214. Mitcheson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

215.    Defendants never sought permission or authority to use or alter Mitcheson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

216.    Mitcheson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants, the Resort or any Resort event.

217.    Defendants neither offered nor paid any remuneration to Mitcheson for the unauthorized use or self-serving alteration of her image, likeness or identity.

218.    Defendants' use of Mitcheson's image, likeness and identity in connection with the Resort's "swinger" events impugns Mitcheson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

219.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Mitcheson's images in their market activities and business.  In doing so, Defendants have further damaged Mitcheson.

### Plaintiff Sabella Shake

220.    Shake is, and at all times relevant to this action was, a successful professional model, spokeswoman and actress with numerous accomplishments.  As a model, Shake has been featured in magazines such as *Esquire*, *Inked*, *Happy*, and *Treats*.  She has been a spokesmodel for Affliction Clothing and Creative Recreation Shoes, has appeared in ads for Party City, Nikon Cameras, Ducati, Fender and Paul Mitchell, appeared in films such as *Shoot 'Em Up*, *Date Night*, and *The Apostles*.

221.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Shake negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

222.    Shake's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit O** to the Complaint, which has been used at least three times and altered to create the false perception that Shake has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event to benefit Defendants' commercial interests.

223.    Shake's image, likeness and identity in **Exhibit O** are being used as advertising.

224.    Shake's image, likeness and identity in **Exhibit O** are being used on social media.

225.    Shake's image, likeness and identity in **Exhibit O** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote its sponsorship of the event.

226.    Shake has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

227.    Shake has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

228.    Defendants never sought permission or authority to use or alter Shake's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

229.    Shake never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

230.    Defendants neither offered nor paid any remuneration to Shake for the unauthorized use and self-serving alteration of her image, likeness or identity.

231.    Defendants' use of Shake's image, likeness and identity in connection with the Resort's "swinger" events impugns Shake's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

232.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Shake's images in their market activities and business.   In doing so, Defendants have further damaged Shake.

### Plaintiff Tiffany Toth

233.    Toth is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  As a model, Toth has been a *Playboy* "Playmate of the Month," a *Playboy* "Cyber Girl of the Week" and *Playboy* "Cyber Girl of the Month."  She has also been featured in such magazines as *Maxim*, *Super Street Bike*, *Import Tuner*, *Sport Truck*, *Iron Man*, and *Seventeen*.

234.    Toth has more than 370,000 Instagram followers, over one million Facebook followers, and is paid for social media product endorsements.

235.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Toth negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

236.    Toth's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit P** to the Complaint, one of which has been used at least four times and altered to create the false perception that Toth has consented or agreed to promote, advertise,

market and/or endorse the Resort's "American Bombshell" event, and the other of which has been used at least two times and was similarly altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Resort's "Sexy Bare Bottom Club: Shimmer and Shine" event, all to benefit Defendants' commercial interests.

237.    Toth's image, likeness and identity in **Exhibit P** are being used as advertising.

238.    Toth's image, likeness and identity in **Exhibit P** are being used on social media.

239.    Toth's image, likeness and identity in **Exhibit P** are tagged with "SexyBareBottomsClub.com" and being used for branding purposes

240.    Toth's image, likeness and identity in **Exhibit P** are being used as a "coupon" to promote membership in the Resort's "Sexy Bare Bottoms Club" and "Shimmer and Shine" event, to wit: "Contact us or call Caliente and mention code sbbc for a 15% discount on your weekend stay" and "RSVP and mention Sexy Bare Bottoms Club and your screen name at the gate for reduced ground fees all day long . . . "

241.     Toth's image, likeness and identity in **Exhibit P** is being used for branding purposes.

242.    Toth has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

243.    Toth has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

244.    Defendants never sought permission or authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

245.    Toth never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

246.    Defendants neither offered nor paid any remuneration to Toth for the unauthorized use or self-serving alteration of her image, likeness or identity.

247.    Defendants' use of Toth's image, likeness and identity in connection with the Resort's "swinger" events impugns Toth's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

248.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Toth's images in their market activities and business.  In doing so, Defendants have further damaged Toth.

### *Plaintiff Irina Voronina*

249.    Voronina is, and at all times relevant to this action was, a successful professional model, spokesmodel and actress with numerous accomplishments.  As a model, Voronina has modeled internationally for more than 14 years, was a *Playboy* "Playmate of the Month" and has been named "Model Of the Year" by *Kandy* Magazine based on the highest number of digital issue downloads on iPad and iPhone.  Voronina has also modeled for international brands such as SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour, among others.  Additionally, Voronina has appeared in numerous magazines including *FHM*, *Maxim*, *Max* (Italy), *Ocean*, *Shape*, *944*, *Knockout*, *Q* (UK), and *People* (Australia).  Voronina was a St Pauli Girl Beer spokes model, led a year-long public relations tour across the United States for the beer brand, and became first ever St. Pauli Girl to ring the NYSE closing bell.  As a spokesmodel,

Voronina was the main host of *Playboy* Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air. As an actress, Voronina has appeared in *Reno 911*, *Balls of Fury*, *Towelhead*, as well as television shows *Svetlana*, on the live action show *Saul of the Mole Men*, and as a guest star on Nickelodeon's *iCarly*.

250. Voronina has more than 2 million Facebook fans.

251. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

252. Voronina's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit Q** to the Complaint, which has been used at least twice and altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Resort's "Erotic Halloween Ball: Act out your deepest fantasy," to benefit Defendants' commercial interests.

253. Voronina's image, likeness and identity in **Exhibit Q** are being used as advertising.

254. Voronina's image, likeness and identity in **Exhibit Q** are being used on social media.

255. Voronina's Image, likeness and identity in **Exhibit Q** are tagged with www.CalienteResorts.com and "aahzparty.com" and are being used for branding purposes.

256. Voronina has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

257. Voronina has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

258.    Defendants never sought permission or authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

259.    Voronina never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

260.    Defendants neither offered nor paid any remuneration to Voronina for the unauthorized use and self-serving alteration of her image, likeness or identity.

261.    Defendants' use of Voronina's image, likeness and identity in connection with the Resort's "swinger" events impugns Voronina's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

262.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's images in their market activities and business.  In doing so, Defendants have further damaged Voronina.

### *Plaintiff Laurie Ann Young*

263.    Young is, and at all times relevant to this action was, a successful professional model, spokesmodel and actress with numerous accomplishments.  As a model, Young has been engaged for modeling work with Shirley's of Hollywood, is an "ambassador" for the NHRA drag racing series, is featured on the cover of the 2015 *Kandy* Magazine and is the *Kandy* "Model of the Year."  Young has also appeared in a number of television commercials and serves as a late night spokeswoman for Adam & Eve products.

264.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

265.    Young's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit R** to the Complaint, which has been used at least three times and altered to create the false perception that Young has consented or agreed to promote, advertise, market and/or endorse the Resort's "Nothing Butt Net" event to benefit Defendants' commercial interests.

266.    Young's image, likeness and identity in **Exhibit R** are being used as advertising.

267.    Young's image, likeness and identity in **Exhibit R** are being used on social media.

268.    Young's image, likeness and identity in **Exhibit R** are being used for an additional, foreseeable use by AAHZ Party to advertise and promote its sponsorship of the event.

269.    Young has never been employed by Defendants or contracted with Defendants to participate in events at the Resort.

270.    Young has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

271.    Defendants never sought permission or authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort, or any Resort event.

272.    Young never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event.

273.    Defendants neither offered nor paid any remuneration to Young for the unauthorized use and self-serving alteration of her image, likeness or identity.

274.    Defendants' use of Young's image, likeness and identity in connection with the Resort's "swinger" events impugns Young's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle.

275.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Young's images in their market activities and business.   In doing so, Defendants have further damaged Young.

**C.   Plaintiffs' Sent Defendants A Demand Letter Directing Defendants to Cease and Desist Unauthorized Use of Plaintiffs' Images and Notifying Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply**

276.    On September 10, 2015 Plaintiffs, through counsel, sent Defendants Caliente Resort and Caliente Vacation Club a demand and cease/desist letter ("First Demand Letter").

277.    The First Demand Letter provided Defendants with notice of their wrongful actions and demanded that Defendants immediately "cease and desist any further use and dissemination of the Models' Images . . . ." (**Exhibit A**, at 2).  Appended to the First Demand Letter was a "Preliminary Expert Report in the Matters of Caliente Resorts LLC, d/b/a Caliente Resorts and Caliente Vacation Club LLC's Unlawful Use of Models' Images" which provided illustrative examples of the offending images.  *Id.*

278.    The First Demand Letter further demanded that "Caliente provide written disclosures of its misuse and written acknowledgement of its intention to permanently comply with this cease and desist demand."  *Id.*

279.    The First Demand Letter further demanded that "Caliente immediately remove any and all unauthorized images from a Caliente-owned, hosted, controlled or contributed website as well as any social media outlet (Facebook, Twitter, Instagram, YouTube, Tumblr, etc)." *Id.*

280.    The First Demand Letter further demanded that "Caliente pay **$1,485,000** in aggregate compensatory, or actual, single damages to compensate the Models for the theft and unauthorized use of the Images . . . ." *Id.*   The amount demanded was a significantly smaller figure than actual damages, and was equivalent to the valuation of the infringed images *known to Plaintiffs at the time* of the First Demand Letter.   It did not include any demand fee for the tortious damages to the Plaintiffs themselves.

281.    The First Demand Letter further demanded that "Caliente disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information. . . ." *Id.*

282.    The First Demand Letter further demanded that "Caliente preserve all records (electronic and hard copy) relevant to the matters raised herein for use in litigation pursuant to the Document Preservation Demand," and appended a separate, detailed document preservation demand.   *Id.*

283.    The First Demand Letter outlined, among other things, the values for each infringed image and some (but not all) of the potential legal claims Plaintiffs would pursue absent Defendants' full compliance with the demands.

284.    Defendants were given thirty (30) days to satisfy the conditions set forth in the First Demand Letter. *Id.*

285.    Defendants certified receipt of the First Demand Letter on September 14, 2015.

286.    Defendants provided no response to the First Demand Letter and made no effort to comply with the demands therein.

287.    Defendants failed and refused to "cease and desist" use and dissemination of the infringing images.

288.    Defendants failed and refused to "provide written disclosures of its misuse and written acknowledgement of its intention to permanently comply with [the] cease and desist demand."

289.    Defendants failed and refused to remove any of the infringing images from any website or social media site owned, operated, leased, hosted, contributed or supported by Defendants.

290.    Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

291.    Defendants failed and refused to disclose their insurance policy coverage information.

292.    Upon information and belief, Defendants have failed and refused to preserve relevant records.

293.    Despite knowing Plaintiffs' objections to the unauthorized use of their images, Defendants not only failed to cease and desist use and dissemination of the images, but expanded their improper activities by posting new images within a week *after* receipt of the First Demand Letter.

294.    On or about September 20, 2015, Defendants posted a new image of Edmondson to advertise and promote an event at the Resort without obtaining authority to do so and without compensating Edmondson.

**D. Plaintiffs' Sent Defendants A *Second* Demand Letter Directing Defendants to Cease and Desist Unauthorized Use of Plaintiffs' Images and Notifying Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply.**

295.    On September 30, 2015 Plaintiffs, through counsel, sent a second demand and cease/desist letter ("Second Demand Letter").

296.    The Second Demand Letter directed, once again, that Defendants cease and desist their improper conduct and notified Defendants of their improper use of Edmondson's image. (**Exhibit B**).

297.    Defendants certified receipt of the Second Demand Letter on October 2, 2015.

298.    Defendants provided no response to the Second Demand Letter and made no effort whatsoever to comply with the demands therein.

299.    Defendants failed and refused to "cease and desist" use and dissemination of the infringing images.

300.    Defendants failed and refused to "provide written disclosures of its misuse and written acknowledgement of its intention to permanently comply with [the] cease and desist demand."

301.    Defendants failed and refused to remove any of the infringing images from any website or social media site.

302.    Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

303.    Defendants failed and refused to disclose their insurance policy coverage information.

304.    Upon information and belief, Defendants have, to date, failed and refused to preserve relevant records.

305.    Any conditions precedent to bringing this action have been performed and/or satisfied, or have otherwise occurred or been discharged.

306.    As of the filing of this Complaint, Defendants have continued to fail and refuse to remove the offending images or comply with any other demands raised in the First or Second Demand Letters.

## CAUSES OF ACTION

### *Plaintiff Jaime Faith Edmondson's Causes of Action*

### EDMONDSON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising as to all Defendants)

307.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

308.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Edmondson from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

309.    Defendants used and altered Edmondson's image, likeness and/or identity as described herein without authority in order to create the perception that Edmondson worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

310.     Defendants' use and alteration of Edmondson's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

311.     Defendants' unauthorized use and alteration of Edmondson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Edmondson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities and/or that Edmondson would participate in or appear at the specific events promoted in the advertisement.

312.     Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Edmondson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities

313.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Edmondson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's

events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

314.    Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

315.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

316.    Defendants knew or should have known that their unauthorized use and alteration of Edmondson's image, likeness and identity would cause consumer confusion as described in this Complaint.

317.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

318.    Defendants wrongful conduct as described herein was willful.

319.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

320.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

321.    The method and manner in which Defendants used the images of Edmondson further evinces that Defendants were aware of or consciously disregarded the fact that Edmondson did not consent to Defendants' use of the images to advertise Defendants' business.

322.    Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

323.    Defendants' unauthorized use of Edmondson's image, likeness and identity directly and proximately caused and continue to cause damage to Edmondson in an amount to be determined at trial.

324.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**EDMONDSON COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants**)

325.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

326.    Edmondson has a statutory right of publicity under Section 540.08, Florida Statutes.

327.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

328.    Despite the clear language of Section 540.08, Defendants published Edmondson's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

329.    Edmondson's image, likeness or identity are recognizable in the photos identified in **Exhibit C.**

330.    Defendants never sought permission nor authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

331.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

332.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Edmondson's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

333.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Edmondson of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

334.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Edmondson of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

335.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

336.    Alternatively, Defendants acted negligently towards Edmondson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

337.    Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

338.    Defendants also have damaged Edmondson as a direct and proximate result of their unauthorized use of Edmondson's images without compensating Edmondson.

339.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### EDMONDSON COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness as to all Defendants)**

340.   Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

341.   Edmondson has a common law right of publicity.

342.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Edmondson without express written or oral consent to such use.

343.   Defendants published, printed, displayed and/or publicly used Edmondson's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

344.   Edmondson's image, likeness or identity are recognizable in the photos identified in **Exhibit C.**

345.   Defendants took these actions without Edmondson's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

346.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

347.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Edmondson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

348.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Edmondson of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

349.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Edmondson of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

350.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

351.    Alternatively, Defendants acted negligently towards Edmondson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

352.     Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

353.     Defendants also have damaged Edmondson as a direct and proximate result of their unauthorized use of Edmondson's image, likeness and/or identity without compensating Edmondson.

354.     WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### EDMONDSON COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

355.     Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

356.     Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

357.     Defendants are direct and active participants in market dealings with Edmondson by using the images to advertise and promote Edmondson's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

358.     Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

359.     Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.     failing to obtain consent from Edmondson prior to promoting Defendants' business by and through the misappropriation and use of Edmondson's images;

b.     failing to obtain authorization from Edmondson prior to the publication of Edmondson's images on Defendants' marketing and promotional materials;

c.     failing to compensate Edmondson for the appropriation of her images on Defendants' marketing and promotional materials;

d.     falsely representing by implication to the public that Edmondson endorsed the Defendants' business, or would be present at Defendants' events; and

e.     falsely representing by implication that Edmondson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

360.     Defendants' conduct described herein was misleading.

361.     Defendants knew their unauthorized use and alteration of Edmondson's image, likeness and/or identity was misleading.

362.     Defendants' unauthorized use and alteration of Edmondson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

363.     Defendants' wrongful conduct as detailed herein was willful and malicious.

364.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

365.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

366.    Alternatively, the method and manner in which Defendants used the images of Edmondson further evinces that Defendants were aware or consciously disregarded that Edmondson did not consent to Defendants' use of the images to advertise Defendants' business.

367.    Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

368.    Defendants' unauthorized use of Edmondson's image, likeness and identity directly and proximately caused and continues to cause damage to Edmondson in an amount to be determined at trial.

369.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

370.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

371.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

372.    Defendants knowingly appropriated, altered, used and disseminated Edmondson's image, likeness and/or identity without authorization or consent.

373.    Defendants misappropriation of Edmondson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Edmondson of certain rights.

374.    Defendants' misconduct detailed in this Complaint denied Edmondson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

375.    Defendants' appropriation and alteration of Edmondson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

376.    Defendants' wrongful conduct as detailed herein was willful and malicious.

377.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

378.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

379.    Alternatively, the method and manner in which Defendants used the images of Edmondson further evinces that Defendants were aware or consciously disregarded the fact that Edmondson did not consent to Defendants' use of the images to advertise Defendants' business.

380.    Defendants' appropriation, use and alteration of Edmondson's image, likeness and identity without authority directly and proximately caused damage to Edmondson in an amount to be determined at trial.

381.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT VI
### (Defamation as to all Defendants)

382.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

383.    As described herein, Defendants have used, altered and published Edmondson's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

384.    Defendants' unauthorized use and publication of Edmondson's altered images, likeness and/or identity constitutes false representations or statements by implication about Edmondson's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

385.    Defendants' representations or statements by implication were knowingly false.

386.    At all times relevant to matters raised in this Complaint, Defendants knew Edmondson was not affiliated with or employed by the Resort, knew that Edmondson would not participate in the events at the Resort, knew that Edmondson did not endorse Defendants' business, the Resort or Resort events, and knew that she had not been appropriately compensated for such use.

387.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Edmondson images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

388.    Defendants' unauthorized use and publication of such altered Edmondson images were defamatory.

389.    Defendants' unauthorized use and publication of such altered Edmondson images and knowingly false representations and/or statements by implication about Edmondson were made with actual malice.

390.    Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Edmondson, which were defamatory.

391.    Such false and defamatory representations and statements about Edmondson were published to innumerable current and prospective customers and promoters.

392.    Defendants knew their conduct described herein was wrongful.

393.    Defendants intended to deprive Edmondson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Edmondson did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

394.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Edmondson's rights.

395.    Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Edmondson's reputation and marketability, among other injuries, in an amount to be determined at trial.

396.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT VII
### (Defamation Per Se as to all Defendants)

397.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

398.    As described herein, Defendants have used, altered and published Edmondson's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

399.    Defendants' unauthorized use and publication of Edmondson's altered images, likeness and/or identity constitutes false representations or statements by implication about

Edmondson's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

400.   Defendants' representations or statements by implication were knowingly false.

401.   At all times relevant to matters raised in this Complaint, Defendants knew Edmondson was not affiliated with or employed by the Resort, knew that Edmondson would not participate in the events at the Resort, knew that Edmondson did not endorse Defendants' business activities, the Resort or the Resort events, and knew that she had not been appropriately compensated for such use.

402.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Edmondson images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

403.   Defendants' unauthorized use and publication of such altered Edmondson images were defamatory.

404.   Defendants' unauthorized use and publication of such altered Edmondson images and knowingly false representations or statements by implication about Edmondson were made with actual malice.

405.   Defendants' representations and statements falsely impute to Edmondson a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

406.   These false statements by implication and/or altered images constitute defamation *per se*.

62

407. Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

408. Defendants knew their conduct described herein was wrongful.

409. Defendants intended to deprive Edmondson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Edmondson did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

410. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Edmondson's rights.

411. Defendants' publication of Edmondson's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Edmondson as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

412. Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Edmondson's reputation and marketability, among other injuries, in an amount to be determined at trial.

413. WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of

profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## EDMONDSON COUNT VIII
### (Unjust Enrichment as to all Defendants)

414.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

415.    Edmondson has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

416.    Defendants were aware that Edmondson's image, likeness and/or identity were valuable.

417.    Defendants were aware of the resulting benefit from usage of Edmondson's image, likeness and/or identity.

418.    Defendants have retained profits and other benefits conferred upon them by using Edmondson's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

419.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Edmondson's image, likeness and/or identity without paying fair value for the images.

420.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT IX
### (Negligence as to all Defendants)

421.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

422.    Under the circumstances stated herein, Defendants owed a duty of care towards Edmondson.

423.    Among other things, that duty included the obligation to deal with Edmondson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Edmondson's image, likeness or identity in derogation of her rights, and to not cause harm to Edmondson.

424.    Defendants breached that duty by using and altering Edmondson's image, likeness or identity without Edmondson's authorization, permission or consent.

425.    Defendants' conduct and breach as described above directly and proximately caused injury to Edmondson's reputation, brand, goodwill and livelihood for which she has suffered damages.

426.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

*Plaintiff Alana Campos' Causes of Action*

## CAMPOS COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

427.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

428.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Campos from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

429.    Defendants used and altered Campos' image, likeness and/or identity as described herein without authority in order to create the perception that Campos worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

430.    Defendants' use and alteration of Campos' image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

431.    Defendants' unauthorized use and alteration of Campos' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Campos worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, consented to or authorized

Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Campos would participate in or appear at the specific events promoted in the advertisement.

432.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Campos worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

433.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Campos worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

434.    Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and

campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

435.    Defendants' unauthorized use and alteration of Campos' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

436.    Defendants knew or should have known that their unauthorized use and alteration of Campos' image, likeness and identity would cause consumer confusion as described in this Complaint.

437.    Defendants' unauthorized use and alteration of Campos' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

438.    Defendants wrongful conduct as described herein was willful.

439.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

440.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Campos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Campos.

441.    The method and manner in which Defendants used the images of Campos further evinces that Defendants were aware of or consciously disregarded the fact that Campos did not consent to Defendants' use of the images to advertise Defendants' business.

442.     Defendants have caused and will continue to cause irreparable harm to Campos, her reputation and brand by attributing to Campos the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

443.     Defendants' unauthorized use of Campos' image, likeness and identity directly and proximately caused and continue to cause damage to Campos in an amount to be determined at trial.

444.     WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**CAMPOS COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

445.     Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

446.     Campos has a statutory right of publicity under Section 540.08, Florida Statutes.

447.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

448.     Despite the clear language of Section 540.08, Defendants published Campos' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

449.     Campos' image, likeness or identity are recognizable in the photos identified in **Exhibit D.**

450.     Defendants never sought permission nor authority to use or alter Campos' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

451.     Campos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

452.     Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Campos' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

453.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Campos of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

454.     Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Campos of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

455.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Campos' rights.

456.    Alternatively, Defendants acted negligently towards Campos in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

457.    Defendants have caused and will continue to cause irreparable harm to Campos, her reputation and brand by attributing to Campos the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

458.    Defendants also have damaged Campos as a direct and proximate result of their unauthorized use of Campos' images without compensating Campos.

459.    WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CAMPOS COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

460.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-[306] as if fully alleged herein.

461.    Campos has a common law right of publicity.

462.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Campos without express written or oral consent to such use.

463.    Defendants published, printed, displayed and/or publicly used Campos' image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

464.    Campos' image, likeness or identity are recognizable in the photos identified in **Exhibit D.**

465.    Defendants took these actions without Campos' permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Campos' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

466.    Campos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

467.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Campos' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

468.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Campos of a property interest

during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

469.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Campos of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

470.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Campos' rights.

471.    Alternatively, Defendants acted negligently towards Campos in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

472.    Defendants have caused and will continue to cause irreparable harm to Campos, her reputation and brand by attributing to Campos the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

473.    Defendants also have damaged Campos as a direct and proximate result of their unauthorized use of Campos' image, likeness and/or identity without compensating Campos.

474.    WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### CAMPOS COUNT IV
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act as to all Defendants**)

475.     Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

476.     Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

477.     Defendants are direct and active participants in market dealings with Campos by using the images to advertise and promote Campos' claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

478.      Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

479.     Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.        failing to obtain consent from Campos prior to promoting Defendants' business by and through the misappropriation and use of Campos' images;

b.        failing to obtain authorization from Campos prior to the publication of Campos' images on Defendants' marketing and promotional materials;

c.        failing to compensate Campos for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Campos endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Campos sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

480.    Defendants' conduct described herein was misleading.

481.    Defendants knew their unauthorized use and alteration of Campos' image, likeness and/or identity was misleading.

482.    Defendants' unauthorized use and alteration of Campos' image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

483.    Defendants' wrongful conduct as detailed herein was willful and malicious.

484.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Campos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Campos.

485.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Campos' rights.

486.    Alternatively, the method and manner in which Defendants used the images of Campos further evinces that Defendants were aware or consciously disregarded that Campos did not consent to Defendants' use of the images to advertise Defendants' business.

487.    Defendants have caused and will continue to cause irreparable harm to Campos, her reputation and brand by attributing to Campos the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

488.     Defendants' unauthorized use of Campos' image, likeness and identity directly and proximately caused and continues to cause damage to Campos in an amount to be determined at trial.

489.     WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**CAMPOS COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

490.     Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

491.     Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

492.     Defendants knowingly appropriated, altered, used and disseminated Campos' image, likeness and/or identity without authorization or consent.

493.     Defendants misappropriation of Campos' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Campos of certain rights.

494.     Defendants' misconduct detailed in this Complaint denied Campos the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants of her image and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

495.     Defendants' appropriation and alteration of Campos' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

496.     Defendants' wrongful conduct as detailed herein was willful and malicious.

497.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Campos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Campos.

498.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Campos' rights.

499.     Alternatively, the method and manner in which Defendants used the images of Campos further evinces that Defendants were aware of or consciously disregarded the fact that Campos did not consent to Defendants' use of the images to advertise Defendants' business.

500.     Defendants' appropriation, use and alteration of Campos' image, likeness and identity without authority directly and proximately caused damage to Campos in an amount to be determined at trial.

501.     WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CAMPOS COUNT VI
### (Defamation as to all Defendants)

502.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

503.    As described herein, Defendants have used, altered and published Campos' image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

504.    Defendants' unauthorized use and publication of Campos' altered images, likeness and/or identity constitutes false representations or statements by implication about Campos' affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

505.    Defendants' representations or statements by implication were knowingly false.

506.    At all times relevant to matters raised in this Complaint, Defendants knew that Campos was not affiliated with or employed by the Resort, knew that Campos would not participate in the events at the Resort, knew that Campos did not endorse Defendants' business, the Resort or Resort events, and knew that Campos had not been appropriately compensated for such use.

507.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Campos images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

508.    Defendants' unauthorized use and publication of such altered Campos images were defamatory.

509.   Defendants' unauthorized use and publication of such altered Campos images and knowingly false representations and/or statements by implication about Campos were made with actual malice.

510.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Campos, which were defamatory.

511.   Such false and defamatory representations and statements about Campos were published to innumerable current and prospective customers and promoters.

512.   Defendants knew their conduct described herein was wrongful.

513.   Defendants intended to deprive Campos of a property interest or, at a minimum, evinced a conscious disregard for the fact that Campos did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

514.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Campos or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Campos' rights.

515.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Campos' reputation and marketability, among other injuries, in an amount to be determined at trial.

516.   WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CAMPOS COUNT VII
### (Defamation Per Se as to all Defendants)

517.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

518.    As described herein, Defendants have used, altered and published Campos' image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

519.    Defendants' unauthorized use and publication of Campos' altered images, likeness and/or identity constitutes false representations or statements by implication about Campos' affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

520.    Defendants' representations or statements by implication were knowingly false.

521.    At all times relevant to matters raised in this Complaint, Defendants knew that Campos was not affiliated with or employed by the Resort, knew that Campos would not participate in the events at the Resort, knew that Campos did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Campos had not been appropriately compensated for such use.

522.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Campos images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

523.    Defendants' unauthorized use and publication of such altered Campos images were defamatory.

524.    Defendants' unauthorized use and publication of such altered Campos images and knowingly false representations or statements by implication about Campos were made with actual malice.

525.    Defendants' representations and statements falsely impute to Campos a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Campos is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

526.    These false statements by implication and/or altered images constitute defamation *per se*.

527.    Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

528.    Defendants knew their conduct described herein was wrongful.

529.    Defendants intended to deprive Campos of a property interest or, at a minimum, evinced a conscious disregard for the fact that Campos did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

530.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Campos or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Campos' rights.

531.    Defendants' publication of Campos' image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Campos as a "swinger" at the Resort who would partake and participate in the full panoply of

activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

532.    Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Campos' reputation and marketability, among other injuries, in an amount to be determined at trial.

533.    WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## CAMPOS COUNT VIII
### (Unjust Enrichment as to all Defendants)

534.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

535.    Campos has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

536.    Defendants were aware that Campos' image, likeness and/or identity were valuable.

537.    Defendants were aware of the resulting benefit from usage of Campos' image, likeness and/or identity.

538.    Defendants have retained profits and other benefits conferred upon them by using Campos' image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

539.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Campos' image, likeness and/or identity without paying fair value for the images.

540.    WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CAMPOS COUNT IX
### (Negligence as to all Defendants)

541.    Campos hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

542.    Under the circumstances stated herein, Defendants owed a duty of care towards Campos.

543.    Among other things, that duty included the obligation to deal with Campos and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Campos' image, likeness or identity in derogation of her rights, and to not cause harm to Campos.

544.    Defendants breached that duty by using and altering Campos' image, likeness or identity without Campos' authorization, permission or consent.

545. Defendants' conduct and breach as described above directly and proximately caused injury to Campos' reputation, brand, goodwill and livelihood for which she has suffered damages.

546. WHEREFORE, Campos respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff John Coulter's Causes of Action*

### <u>COULTER COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Advertising as to all Defendants)**

547. Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

548. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Coulter from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

549. Defendants used and altered Coulter's image, likeness and/or identity as described herein without authority in order to create the perception that Coulter worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of his images in order to

advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

550.   Defendants' use and alteration of Coulter's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

551.   Defendants' unauthorized use and alteration of Coulter's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Coulter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Coulter would participate in or appear at the specific events promoted in the advertisement.

552.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Coulter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

553.   Upon information and belief, Defendants' unauthorized use or alteration of Coulter's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Coulter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of his images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

554.    Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

555.    Defendants' unauthorized use and alteration of Coulter's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

556.    Defendants knew or should have known that their unauthorized use and alteration of Coulter's image, likeness and identity would cause consumer confusion as described in this Complaint.

557.    Defendants' unauthorized use and alteration of Coulter's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

86

558.    Defendants wrongful conduct as described herein was willful.

559.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

560.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

561.    The method and manner in which Defendants used the images of Coulter further evinces that Defendants were aware of or consciously disregarded the fact that Coulter did not consent to Defendants' use of the images to advertise Defendants' business.

562.    Defendants have caused and will continue to cause irreparable harm to Coulter, his reputation and brand by attributing to Coulter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

563.    Defendants' unauthorized use of Coulter's image, likeness and identity directly and proximately caused and continue to cause damage to Coulter in an amount to be determined at trial.

564.    WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness as to all Defendants)

565.    Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

566.    Coulter has a statutory right of publicity under Section 540.08, Florida Statutes.

567.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

568.    Despite the clear language of Section 540.08, Defendants published Coulter's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

569.    Coulter's image, likeness or identity are recognizable in the photos identified in **Exhibit E.**

570.    Defendants never sought permission nor authority to use or alter Coulter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

571.    Coulter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of his image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

572.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Coulter's image, likeness or identity

without his express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

573.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Coulter of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

574.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Coulter of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

575.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

576.    Alternatively, Defendants acted negligently towards Coulter in using and disseminating, without authority, his image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

577.    Defendants have caused and will continue to cause irreparable harm to Coulter, his reputation and brand by attributing to Coulter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

578.    Defendants also have damaged Coulter as a direct and proximate result of their unauthorized use of Coulter's images without compensating Coulter.

579.    WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT III
### (Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness as to all Defendants)

580.     Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

581.     Coulter has a common law right of publicity.

582.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Coulter without express written or oral consent to such use.

583.     Defendants published, printed, displayed and/or publicly used Coulter's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

584.     Coulter's image, likeness or identity are recognizable in the photos identified in **Exhibit E.**

585.     Defendants took these actions without Coulter's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Coulter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

586.    Coulter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of his image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

587.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Coulter's image, likeness or identity without his express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

588.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Coulter of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

589.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Coulter of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

590.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

591.    Alternatively, Defendants acted negligently towards Coulter in using and disseminating, without authority, his image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

592.     Defendants have caused and will continue to cause irreparable harm to Coulter, his reputation and brand by attributing to Coulter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

593.     Defendants also have damaged Coulter as a direct and proximate result of their unauthorized use of Coulter's image, likeness and/or identity without compensating Coulter.

594.     WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT IV
### (Violation of Fla. Stat. § 501.204:
**Florida's Deceptive and Unfair Trade Practices Act as to all Defendants**)

595.     Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

596.     Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

597.     Defendants are direct and active participants in market dealings with Coulter by using the images to advertise and promote Coulter's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

598.     Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

599.     Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.     failing to obtain consent from Coulter prior to promoting Defendants' business by and through the misappropriation and use of Coulter's images;

b.     failing to obtain authorization from Coulter prior to the publication of Coulter's images on Defendants' marketing and promotional materials;

c.     failing to compensate Coulter for the appropriation of his images on Defendants' marketing and promotional materials;

d.     falsely representing by implication to the public that Coulter endorsed the Defendants' business, or would be present at Defendants' events; and

e.     falsely representing by implication that Coulter sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

600.     Defendants' conduct described herein was misleading.

601.     Defendants knew their unauthorized use and alteration of Coulter's image, likeness and/or identity was misleading.

602.     Defendants' unauthorized use and alteration of Coulter's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

603.     Defendants' wrongful conduct as detailed herein was willful and malicious.

604.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

605.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

606.     Alternatively, the method and manner in which Defendants used the images of Coulter further evinces that Defendants were aware or consciously disregarded that Coulter did not consent to Defendants' use of the images to advertise Defendants' business.

607.     Defendants have caused and will continue to cause irreparable harm to Coulter, his reputation and brand by attributing to Coulter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

608.     Defendants' unauthorized use of Coulter's image, likeness and identity directly and proximately caused and continues to cause damage to Coulter in an amount to be determined at trial.

609.     WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **COULTER COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

610.     Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

611.     Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

612.     Defendants knowingly appropriated, altered, used and disseminated Coulter's image, likeness and/or identity without authorization or consent.

613.     Defendants misappropriation of Coulter's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Coulter of certain rights.

614.     Defendants' misconduct detailed in this Complaint denied Coulter the right to engage in arms-length negotiations over the use and dissemination of his image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of his image, and the right to otherwise protect his image, likeness and/or identity from harm at the hands of Defendants.

615.     Defendants' appropriation and alteration of Coulter's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

616.     Defendants' wrongful conduct as detailed herein was willful and malicious.

617.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Coulter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter.

618.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Coulter's rights.

619.     Alternatively, the method and manner in which Defendants used the images of Coulter further evinces that Defendants were aware of or consciously disregarded the fact that Coulter did not consent to Defendants' use of the images to advertise Defendants' business.

620.     Defendants' appropriation, use and alteration of Coulter's image, likeness and identity without authority directly and proximately caused damage to Coulter in an amount to be determined at trial.

621.     WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT VI
### (Defamation as to all Defendants)

622.     Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

623.     As described herein, Defendants have used, altered and published Coulter's image, likeness and/or identity without his authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

624.     Defendants' unauthorized use and publication of Coulter's altered images, likeness and/or identity constitutes false representations or statements by implication about Coulter's affiliation with or employment by the Resort, and his participation in or endorsement of the advertised activities at the Resort.

625.     Defendants' representations or statements by implication were knowingly false.

626.     At all times relevant to matters raised in this Complaint, Defendants knew that Coulter was not affiliated with or employed by the Resort, knew that Coulter would not

participate in the events at the Resort, knew that Coulter did not endorse Defendants' business, the Resort or Resort events, and knew that Coulter had not been appropriately compensated for such use.

627.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Coulter images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

628.    Defendants' unauthorized use and publication of such altered Coulter images were defamatory.

629.    Defendants' unauthorized use and publication of such altered Coulter images and knowingly false representations and/or statements by implication about Coulter were made with actual malice.

630.    Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Coulter, which were defamatory.

631.    Such false and defamatory representations and statements about Coulter were published to innumerable current and prospective customers and promoters.

632.    Defendants knew their conduct described herein was wrongful.

633.    Defendants intended to deprive Coulter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Coulter did not consent to Defendants' use or alteration of his image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

634.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Coulter's rights.

635.    Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Coulter's reputation and marketability, among other injuries, in an amount to be determined at trial.

636.    WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT VII
### (Defamation Per Se as to all Defendants)

637.    Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

638.    As described herein, Defendants have used, altered and published Coulter's image, likeness and identity without his authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

639.    Defendants' unauthorized use and publication of Coulter's altered images, likeness and/or identity constitutes false representations or statements by implication about Coulter's affiliation with or employment by the Resort, or his participation in or endorsement of the advertised activities at the Resort.

640.    Defendants' representations or statements by implication were knowingly false.

641.    At all times relevant to matters raised in this Complaint, Defendants knew that Coulter was not affiliated with or employed by the Resort, knew that Coulter would not

participate in the events at the Resort, knew that Coulter did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Coulter had not been appropriately compensated for such use.

642.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Coulter images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

643.   Defendants' unauthorized use and publication of such altered Coulter images were defamatory.

644.   Defendants' unauthorized use and publication of such altered Coulter images and knowingly false representations or statements by implication about Coulter were made with actual malice.

645.   Defendants' representations and statements falsely impute to Coulter a matter, practice or course of conduct incompatible with his business, trade or profession as a legitimate and successful professional model.   Coulter is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which his image, likeness and identity was used.

646.   These false statements by implication and/or altered images constitute defamation *per se*.

647.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

648.   Defendants knew their conduct described herein was wrongful.

649.   Defendants intended to deprive Coulter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Coulter did not consent to Defendants' use,

alteration or publication of his image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

650.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Coulter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Coulter's rights.

651.   Defendants' publication of Coulter's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Coulter as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of his lawful business, trade, profession, or office.

652.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Coulter's reputation and marketability, among other injuries, in an amount to be determined at trial.

653.   WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## COULTER COUNT VIII
### (Unjust Enrichment as to all Defendants)

654.   Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

655.    Coulter has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of his images without compensation.

656.    Defendants were aware that Coulter's image, likeness and/or identity were valuable.

657.    Defendants were aware of the resulting benefit from usage of Coulter's image, likeness and/or identity.

658.    Defendants have retained profits and other benefits conferred upon them by using Coulter's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

659.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Coulter's image, likeness and/or identity without paying fair value for the images.

660.    WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COULTER COUNT IX
### (Negligence as to all Defendants)

661.    Coulter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

662.    Under the circumstances stated herein, Defendants owed a duty of care towards Coulter.

663.    Among other things, that duty included the obligation to deal with Coulter and his image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Coulter's image, likeness or identity in derogation of his rights, and to not cause harm to Coulter.

664.    Defendants breached that duty by using and altering Coulter's image, likeness or identity without Coulter's authorization, permission or consent.

665.    Defendants' conduct and breach as described above directly and proximately caused injury to Coulter's reputation, brand, goodwill and livelihood for which he has suffered damages.

666.    WHEREFORE, Coulter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Jessica Burciaga's Causes of Action*

### **BURCIAGA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

667.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

668.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Burciaga from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

669.   Defendants used and altered Burciaga's image, likeness and/or identity as described herein without authority in order to create the perception that Burciaga worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

670.   Defendants' use and alteration of Burciaga's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

671.   Defendants' unauthorized use and alteration of Burciaga's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Burciaga worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Burciaga would participate in or appear at the specific events promoted in the advertisement.

672.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether  Burciaga worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants'

or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

673.    Upon information and belief, Defendants' unauthorized use or alteration of Burciaga's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

674.    Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

675.    Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

676.    Defendants knew or should have known that their unauthorized use and alteration of Burciaga's image, likeness and identity would cause consumer confusion as described in this Complaint.

677.    Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

678.    Defendants wrongful conduct as described herein was willful.

679.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

680.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

681.    The method and manner in which Defendants used the images of Burciaga further evinces that Defendants were aware of or consciously disregarded the fact that Burciaga did not consent to Defendants' use of the images to advertise Defendants' business.

682.    Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

683.    Defendants' unauthorized use of Burciaga's image, likeness and identity directly and proximately caused and continue to cause damage to Burciaga in an amount to be determined at trial.

684.    WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness as to all Defendants)

685.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

686.    Burciaga has a statutory right of publicity under Section 540.08, Florida Statutes.

687.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

688.    Despite the clear language of Section 540.08, Defendants published Burciaga's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

689.    Burciaga's image, likeness or identity are recognizable in the photos identified in **Exhibit F.**

690.     Defendants never sought permission nor authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

691.     Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

692.     Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

693.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Burciaga of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

694.     Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Burciaga of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

695.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

696.     Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

697.    Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

698.    Defendants also have damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's images without compensating Burciaga.

699.    WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

700.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

701.    Burciaga has a common law right of publicity.

702.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Burciaga without express written or oral consent to such use.

703.    Defendants published, printed, displayed and/or publicly used Burciaga's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

704.    Burciaga's image, likeness or identity are recognizable in the photos identified in **Exhibit F.**

705.    Defendants took these actions without Burciaga's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

706.    Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

707.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

708.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Burciaga of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

709.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Burciaga of a property interest after receipt of the First Demand Letter in

which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

710.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

711.    Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

712.    Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

713.    Defendants also have damaged Burciaga as a direct and proximate result of their unauthorized use of Burciaga's image, likeness and/or identity without compensating Burciaga.

714.    WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**BURCIAGA COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)**

715.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

716.    Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

717.    Defendants are direct and active participants in market dealings with Burciaga by using the images to advertise and promote Burciaga's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

718.    Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

719.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.  failing to obtain consent from Burciaga prior to promoting Defendants' business by and through the misappropriation and use of Burciaga's images;

b.  failing to obtain authorization from Burciaga prior to the publication of Burciaga's images on Defendants' marketing and promotional materials;

c.  failing to compensate Burciaga for the appropriation of her images on Defendants' marketing and promotional materials;

d.  falsely representing by implication to the public that Burciaga endorsed the Defendants' business, or would be present at Defendants' events; and

e.  falsely representing by implication that Burciaga sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

720.  Defendants' conduct described herein was misleading.

721.  Defendants knew their unauthorized use and alteration of Burciaga's image, likeness and/or identity was misleading.

722.  Defendants' unauthorized use and alteration of Burciaga's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

723.  Defendants' wrongful conduct as detailed herein was willful and malicious.

724.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

725.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

726.  Alternatively, the method and manner in which Defendants used the images of Burciaga further evinces that Defendants were aware or consciously disregarded that Burciaga did not consent to Defendants' use of the images to advertise Defendants' business.

727.  Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

728.  Defendants' unauthorized use of Burciaga's image, likeness and identity directly and proximately caused and continues to cause damage to Burciaga in an amount to be determined at trial.

729.    WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**BURCIAGA COUNT V**
(**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants**)

730.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

731.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

732.    Defendants knowingly appropriated, altered, used and disseminated Burciaga's image, likeness and/or identity without authorization or consent.

733.    Defendants misappropriation of Burciaga's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Burciaga of certain rights.

734.    Defendants' misconduct detailed in this Complaint denied Burciaga the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

735. Defendants' appropriation and alteration of Burciaga's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

736. Defendants' wrongful conduct as detailed herein was willful and malicious.

737. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

738. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

739. Alternatively, the method and manner in which Defendants used the images of Burciaga further evinces that Defendants were aware of or consciously disregarded the fact that Burciaga did not consent to Defendants' use of the images to advertise Defendants' business.

740. Defendants' appropriation, use and alteration of Burciaga's image, likeness and identity without authority directly and proximately caused damage to Burciaga in an amount to be determined at trial.

741. WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT VI
### (Defamation as to all Defendants)

742.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

743.    As described herein, Defendants have used, altered and published Burciaga's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

744.    Defendants' unauthorized use and publication of Burciaga's altered images, likeness and/or identity constitutes false representations or statements by implication about Burciaga's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

745.    Defendants' representations or statements by implication were knowingly false.

746.    At all times relevant to matters raised in this Complaint, Defendants knew that Burciaga was not affiliated with or employed by the Resort, knew that Burciaga would not participate in the events at the Resort, knew that Burciaga did not endorse Defendants' business, the Resort or Resort events, and knew that Burciaga had not been appropriately compensated for such use.

747.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Burciaga images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

748.    Defendants' unauthorized use and publication of such altered Burciaga images were defamatory.

749. Defendants' unauthorized use and publication of such altered Burciaga images and knowingly false representations and/or statements by implication about Burciaga were made with actual malice.

750. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Burciaga, which were defamatory.

751. Such false and defamatory representations and statements about Burciaga were published to innumerable current and prospective customers and promoters.

752. Defendants knew their conduct described herein was wrongful.

753. Defendants intended to deprive Burciaga of a property interest or, at a minimum, evinced a conscious disregard for the fact that Burciaga did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

754. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Burciaga's rights.

755. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Burciaga's reputation and marketability, among other injuries, in an amount to be determined at trial.

756. WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT VII
### (Defamation Per Se as to all Defendants)

757.    Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

758.    As described herein, Defendants have used, altered and published Burciaga's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

759.    Defendants' unauthorized use and publication of Burciaga's altered images, likeness and/or identity constitutes false representations or statements by implication about Burciaga's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

760.    Defendants' representations or statements by implication were knowingly false.

761.    At all times relevant to matters raised in this Complaint, Defendants knew that Burciaga was not affiliated with or employed by the Resort, knew that Burciaga would not participate in the events at the Resort, knew that Burciaga did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Burciaga had not been appropriately compensated for such use.

762.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Burciaga images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

763.    Defendants' unauthorized use and publication of such altered Burciaga images were defamatory.

764.    Defendants' unauthorized use and publication of such altered Burciaga images and knowingly false representations or statements by implication about Burciaga were made with actual malice.

765.    Defendants' representations and statements falsely impute to Burciaga a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Burciaga is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

766.    These false statements by implication and/or altered images constitute defamation *per se*.

767.    Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

768.    Defendants knew their conduct described herein was wrongful.

769.    Defendants intended to deprive Burciaga of a property interest or, at a minimum, evinced a conscious disregard for the fact that Burciaga did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

770.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Burciaga's rights.

771.    Defendants' publication of Burciaga's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Burciaga as a "swinger" at the Resort who would partake and participate in the full panoply of

activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

772. Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Burciaga's reputation and marketability, among other injuries, in an amount to be determined at trial.

773. WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>BURCIAGA COUNT VIII</u>
### (Unjust Enrichment as to all Defendants)

774. Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

775. Burciaga has conferred a benefit upon Defendants by virtue of Defendants' usage and self-serving alteration of her images without compensation.

776. Defendants were aware that Burciaga's image, likeness and/or identity were valuable.

777. Defendants were aware of the resulting benefit from usage of Burciaga's image, likeness and/or identity.

778.   Defendants have retained profits and other benefits conferred upon them by using Burciaga's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

779.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Burciaga's image, likeness and/or identity without paying fair value for the images.

780.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT IX
### (Negligence as to all Defendants)

781.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

782.   Under the circumstances stated herein, Defendants owed a duty of care towards Burciaga.

783.   Among other things, that duty included the obligation to deal with Burciaga and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Burciaga's image, likeness or identity in derogation of her rights, and to not cause harm to Burciaga.

784.   Defendants breached that duty by using and altering Burciaga's image, likeness or identity without Burciaga's authorization, permission or consent.

785.    Defendants' conduct and breach as described above directly and proximately caused injury to Burciaga's reputation, brand, goodwill and livelihood for which she has suffered damages.

786.    WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Brenda Lynn Geiger's Causes of Action*

**GEIGER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

787.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

788.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Geiger from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

789.    Defendants used and altered Geiger's image, likeness and/or identity as described herein without authority in order to create the perception that Geiger worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to

advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

790.   Defendants' use and alteration of Geiger's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

791.   Defendants' unauthorized use and alteration of Geiger's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Geiger worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Geiger would participate in or appear at the specific events promoted in the advertisement.

792.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Geiger worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

793.   Upon information and belief, Defendants' unauthorized use or alteration of Geiger's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Geiger worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

794.    Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

795.    Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

796.    Defendants knew or should have known that their unauthorized use and alteration of Geiger's image, likeness and identity would cause consumer confusion as described in this Complaint.

797.    Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

798.   Defendants wrongful conduct as described herein was willful.

799.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

800.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

801.   The method and manner in which Defendants used the images of Geiger further evinces that Defendants were aware of or consciously disregarded the fact that Geiger did not consent to Defendants' use of the images to advertise Defendants' business.

802.   Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

803.   Defendants' unauthorized use of Geiger's image, likeness and identity directly and proximately caused and continue to cause damage to Geiger in an amount to be determined at trial.

804.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GEIGER COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

805.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

806.    Geiger has a statutory right of publicity under Section 540.08, Florida Statutes.

807.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

808.    Despite the clear language of Section 540.08, Defendants published Geiger's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

809.    Geiger's image, likeness or identity are recognizable in the photos identified in **Exhibit G.**

810.    Defendants never sought permission nor authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

811.    Geiger never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

812.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Geiger's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

813. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Geiger of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

814. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Geiger of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

815. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

816. Alternatively, Defendants acted negligently towards Geiger in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

817. Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

818. Defendants also have damaged Geiger as a direct and proximate result of their unauthorized use of Geiger's images without compensating Geiger.

819. WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

820.     Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

821.     Geiger has a common law right of publicity.

822.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Geiger without express written or oral consent to such use.

823.     Defendants published, printed, displayed and/or publicly used Geiger's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

824.     Geiger's image, likeness or identity are recognizable in the photos identified in **Exhibit G.**

825.     Defendants took these actions without Geiger's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

826.    Geiger never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

827.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Geiger's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

828.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Geiger of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

829.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Geiger of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

830.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

831.    Alternatively, Defendants acted negligently towards Geiger in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

832.    Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

833.    Defendants also have damaged Geiger as a direct and proximate result of their unauthorized use of Geiger's image, likeness and/or identity without compensating Geiger.

834.    WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

835.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

836.    Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

837.    Defendants are direct and active participants in market dealings with Geiger by using the images to advertise and promote Geiger's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

838.    Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

839.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Geiger prior to promoting Defendants' business by and through the misappropriation and use of Geiger's images;

b.    failing to obtain authorization from Geiger prior to the publication of Geiger's images on Defendants' marketing and promotional materials;

c.    failing to compensate Geiger for the appropriation of her images on Defendants' marketing and promotional materials;

d.    falsely representing by implication to the public that Geiger endorsed the Defendants' business, or would be present at Defendants' events; and

e.    falsely representing by implication that Geiger sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

840.    Defendants' conduct described herein was misleading.

841.    Defendants knew their unauthorized use and alteration of Geiger's image, likeness and/or identity was misleading.

842.    Defendants' unauthorized use and alteration of Geiger's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

843.    Defendants' wrongful conduct as detailed herein was willful and malicious.

844.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

845.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

846.    Alternatively, the method and manner in which Defendants used the images of Geiger further evinces that Defendants were aware or consciously disregarded that Geiger did not consent to Defendants' use of the images to advertise Defendants' business.

847.    Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

848.    Defendants' unauthorized use of Geiger's image, likeness and identity directly and proximately caused and continues to cause damage to Geiger in an amount to be determined at trial.

849.    WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GEIGER COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

850.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

851.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

852.    Defendants knowingly appropriated, altered, used and disseminated Geiger image, likeness and/or identity without authorization or consent.

853.    Defendants misappropriation of Geiger's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Geiger of certain rights.

854.    Defendants' misconduct detailed in this Complaint denied Geiger the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

855.    Defendants' appropriation and alteration of Geiger's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

856.    Defendants' wrongful conduct as detailed herein was willful and malicious.

857.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

858.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

859.    Alternatively, the method and manner in which Defendants used the images of Geiger further evinces that Defendants were aware of or consciously disregarded the fact that Geiger did not consent to Defendants' use of the images to advertise Defendants' business.

860.    Defendants' appropriation, use and alteration of Geiger's image, likeness and identity without authority directly and proximately caused damage to Geiger in an amount to be determined at trial.

861.    WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT VI
### (Defamation as to all Defendants)

862.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

863.    As described herein, Defendants have used, altered and published Geiger's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

864.    Defendants' unauthorized use and publication of Geiger's altered images, likeness and/or identity constitutes false representations or statements by implication about Geiger's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

865.    Defendants' representations or statements by implication were knowingly false.

866.    At all times relevant to matters raised in this Complaint, Defendants knew that Geiger was not affiliated with or employed by the Resort, knew that Geiger would not participate

in the events at the Resort, knew that Geiger did not endorse Defendants' business, the Resort or Resort events, and knew that Geiger had not been appropriately compensated for such use.

867.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Geiger images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

868.    Defendants' unauthorized use and publication of such altered Geiger images were defamatory.

869.    Defendants' unauthorized use and publication of such altered Geiger images and knowingly false representations and/or statements by implication about Geiger were made with actual malice.

870.    Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Geiger, which were defamatory.

871.    Such false and defamatory representations and statements about Geiger were published to innumerable current and prospective customers and promoters.

872.    Defendants knew their conduct described herein was wrongful.

873.    Defendants intended to deprive Geiger of a property interest or, at a minimum, evinced a conscious disregard for the fact that Geiger did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

874.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Geiger's rights.

875.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Geiger's reputation and marketability, among other injuries, in an amount to be determined at trial.

876.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT VII
### (Defamation Per Se as to all Defendants)

877.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

878.   As described herein, Defendants have used, altered and published Geiger's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

879.   Defendants' unauthorized use and publication of Geiger's altered images, likeness and/or identity constitutes false representations or statements by implication about Geiger's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

880.   Defendants' representations or statements by implication were knowingly false.

881.   At all times relevant to matters raised in this Complaint, Defendants knew that Geiger was not affiliated with or employed by the Resort, knew that Geiger would not participate

in the events at the Resort, knew that Geiger did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Geiger had not been appropriately compensated for such use.

882.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Geiger images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

883.    Defendants' unauthorized use and publication of such altered Geiger images were defamatory.

884.    Defendants' unauthorized use and publication of such altered Geiger images and knowingly false representations or statements by implication about Geiger were made with actual malice.

885.    Defendants' representations and statements falsely impute to Geiger a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   Geiger is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

886.    These false statements by implication and/or altered images constitute defamation *per se*.

887.    Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

888.    Defendants knew their conduct described herein was wrongful.

889.    Defendants intended to deprive Geiger of a property interest or, at a minimum, evinced a conscious disregard for the fact that Geiger did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

890.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Geiger's rights.

891.    Defendants' publication of Geiger's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Geiger as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

892.    Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Geiger's reputation and marketability, among other injuries, in an amount to be determined at trial.

893.    WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## GEIGER COUNT VIII
### (Unjust Enrichment as to all Defendants)

894.    Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

895.   Geiger has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

896.   Defendants were aware that Geiger's image, likeness and/or identity were valuable.

897.   Defendants were aware of the resulting benefit from usage of Geiger's image, likeness and/or identity.

898.   Defendants have retained profits and other benefits conferred upon them by using Geiger's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

899.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Geiger's image, likeness and/or identity without paying fair value for the images.

900.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT IX
**(Negligence as to all Defendants)**

901.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

902.   Under the circumstances stated herein, Defendants owed a duty of care towards Geiger.

903.     Among other things, that duty included the obligation to deal with Geiger and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Geiger's image, likeness or identity in derogation of her rights, and to not cause harm to Geiger.

904.     Defendants breached that duty by using and altering Geiger's image, likeness or identity without Geiger's authorization, permission or consent.

905.     Defendants' conduct and breach as described above directly and proximately caused injury to Geiger's reputation, brand, goodwill and livelihood for which she has suffered damages.

906.     WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper..

*Plaintiff Clark Gilmer's Causes of Action*

**GILMER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

907.     Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

908.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gilmer from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

909. Defendants used and altered Gilmer's image, likeness and/or identity as described herein without authority in order to create the perception that Gilmer worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

910. Defendants' use and alteration of Gilmer's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

911. Defendants' unauthorized use and alteration of Gilmer's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gilmer worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Gilmer would participate in or appear at the specific events promoted in the advertisement.

912. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Gilmer worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants'

or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

913.   Upon information and belief, Defendants' unauthorized use or alteration of Gilmer's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Gilmer worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

914.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

915.     Defendants' unauthorized use and alteration of Gilmer's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

916.     Defendants knew or should have known that their unauthorized use and alteration of Gilmer's image, likeness and identity would cause consumer confusion as described in this Complaint.

917.     Defendants' unauthorized use and alteration of Gilmer's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

918.     Defendants wrongful conduct as described herein was willful.

919.     As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

920.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gilmer of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gilmer.

921.     The method and manner in which Defendants used the images of Gilmer further evinces that Defendants were aware of or consciously disregarded the fact that Gilmer did not consent to Defendants' use of the images to advertise Defendants' business.

922.     Defendants have caused and will continue to cause irreparable harm to Gilmer, her reputation and brand by attributing to Gilmer the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

923.     Defendants' unauthorized use of Gilmer's image, likeness and identity directly and proximately caused and continue to cause damage to Gilmer in an amount to be determined at trial.

924.    WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GILMER COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness as to all Defendants)

925.    Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

926.    Gilmer has a statutory right of publicity under Section 540.08, Florida Statutes.

927.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

928.    Despite the clear language of Section 540.08, Defendants published Gilmer's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

929.    Gilmer's image, likeness or identity are recognizable in the photos identified in **Exhibit H.**

930.    Defendants never sought permission nor authority to use or alter Gilmer's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

931. Gilmer never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

932. Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gilmer's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

933. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Gilmer of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

934. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Gilmer of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

935. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gilmer's rights.

936. Alternatively, Defendants acted negligently towards Gilmer in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

937.   Defendants have caused and will continue to cause irreparable harm to Gilmer, her reputation and brand by attributing to Gilmer the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

938.   Defendants also have damaged Gilmer as a direct and proximate result of their unauthorized use of Gilmer's images without compensating Gilmer.

939.   WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## **GILMER COUNT III**
### (**Violation of Common Law Right of Publicity;**
### **Unauthorized Misappropriation of Name or Likeness as to all Defendants**)

940.   Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

941.   Gilmer has a common law right of publicity.

942.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gilmer without express written or oral consent to such use.

943.   Defendants published, printed, displayed and/or publicly used Gilmer's image, likeness or identity on their website and social media outlets, among others, for purposes of trade

and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

944.    Gilmer's image, likeness or identity are recognizable in the photos identified in **Exhibit H.**

945.    Defendants took these actions without Gilmer's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Gilmer's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

946.    Gilmer never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

947.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gilmer's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

948.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Gilmer of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

949.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Gilmer of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

950. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gilmer's rights.

951. Alternatively, Defendants acted negligently towards Gilmer in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

952. Defendants have caused and will continue to cause irreparable harm to Gilmer, her reputation and brand by attributing to Gilmer the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

953. Defendants also have damaged Gilmer as a direct and proximate result of their unauthorized use of Gilmer's image, likeness and/or identity without compensating Gilmer.

954. WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GILMER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

955. Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

956.    Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

957.    Defendants are direct and active participants in market dealings with Gilmer by using the images to advertise and promote Gilmer's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

958.    Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

959.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Gilmer prior to promoting Defendants' business by and through the misappropriation and use of Gilmer's images;

b.    failing to obtain authorization from Gilmer prior to the publication of Gilmer's images on Defendants' marketing and promotional materials;

c.    failing to compensate Gilmer for the appropriation of her images on Defendants' marketing and promotional materials;

d.    falsely representing by implication to the public that Gilmer endorsed the Defendants' business, or would be present at Defendants' events; and

e.    falsely representing by implication that Gilmer sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

960.    Defendants' conduct described herein was misleading.

961.    Defendants knew their unauthorized use and alteration of Gilmer's image, likeness and/or identity was misleading.

962. Defendants' unauthorized use and alteration of Gilmer's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

963. Defendants' wrongful conduct as detailed herein was willful and malicious.

964. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gilmer of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gilmer.

965. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gilmer's rights.

966. Alternatively, the method and manner in which Defendants used the images of Gilmer further evinces that Defendants were aware or consciously disregarded that Gilmer did not consent to Defendants' use of the images to advertise Defendants' business.

967. Defendants have caused and will continue to cause irreparable harm to Gilmer, her reputation and brand by attributing to Gilmer the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

968. Defendants' unauthorized use of Gilmer's image, likeness and identity directly and proximately caused and continues to cause damage to Gilmer in an amount to be determined at trial.

969. WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GILMER COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

970.   Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

971.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

972.   Defendants knowingly appropriated, altered, used and disseminated Gilmer image, likeness and/or identity without authorization or consent.

973.   Defendants misappropriation of Gilmer's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Gilmer of certain rights.

974.   Defendants' misconduct detailed in this Complaint denied Gilmer the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

975.   Defendants' appropriation and alteration of Gilmer's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

976.   Defendants' wrongful conduct as detailed herein was willful and malicious.

977.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gilmer of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gilmer.

978.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gilmer's rights.

979.     Alternatively, the method and manner in which Defendants used the images of Gilmer further evinces that Defendants were aware of or consciously disregarded the fact that Gilmer did not consent to Defendants' use of the images to advertise Defendants' business.

980.     Defendants' appropriation, use and alteration of Gilmer's image, likeness and identity without authority directly and proximately caused damage to Gilmer in an amount to be determined at trial.

981.     WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GILMER COUNT VI
#### (Defamation as to all Defendants)

982.     Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

983.     As described herein, Defendants have used, altered and published Gilmer's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

984.     Defendants' unauthorized use and publication of Gilmer's altered images, likeness and/or identity constitutes false representations or statements by implication about Gilmer's

affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

985.   Defendants' representations or statements by implication were knowingly false.

986.   At all times relevant to matters raised in this Complaint, Defendants knew that Gilmer was not affiliated with or employed by the Resort, knew that Gilmer would not participate in the events at the Resort, knew that Gilmer did not endorse Defendants' business, the Resort or Resort events, and knew that Gilmer had not been appropriately compensated for such use.

987.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Gilmer images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

988.   Defendants' unauthorized use and publication of such altered Gilmer images were defamatory.

989.   Defendants' unauthorized use and publication of such altered Gilmer images and knowingly false representations and/or statements by implication about Gilmer were made with actual malice.

990.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Gilmer, which were defamatory.

991.   Such false and defamatory representations and statements about Gilmer were published to innumerable current and prospective customers and promoters.

992.   Defendants knew their conduct described herein was wrongful.

993.   Defendants intended to deprive Gilmer of a property interest or, at a minimum, evinced a conscious disregard for the fact that Gilmer did not consent to Defendants' use or

alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

994.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Gilmer or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Gilmer's rights.

995.    Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Gilmer's reputation and marketability, among other injuries, in an amount to be determined at trial.

996.    WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GILMER COUNT VII
**(Defamation Per Se as to all Defendants)**

997.    Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

998.    As described herein, Defendants have used, altered and published Gilmer's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

999.    Defendants' unauthorized use and publication of Gilmer's altered images, likeness and/or identity constitutes false representations or statements by implication about Gilmer's

affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1000. Defendants' representations or statements by implication were knowingly false.

1001. At all times relevant to matters raised in this Complaint, Defendants knew that Gilmer was not affiliated with or employed by the Resort, knew that Gilmer would not participate in the events at the Resort, knew that Gilmer did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Gilmer had not been appropriately compensated for such use.

1002. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Gilmer images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1003. Defendants' unauthorized use and publication of such altered Gilmer images were defamatory.

1004. Defendants' unauthorized use and publication of such altered Gilmer images and knowingly false representations or statements by implication about Gilmer were made with actual malice.

1005. Defendants' representations and statements falsely impute to Gilmer a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model. Gilmer is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1006. These false statements by implication and/or altered images constitute defamation *per se*.

1007.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1008.   Defendants knew their conduct described herein was wrongful.

1009.   Defendants intended to deprive Gilmer of a property interest or, at a minimum, evinced a conscious disregard for the fact that Gilmer did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1010.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Gilmer or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Gilmer's rights.

1011.   Defendants' publication of Gilmer's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Gilmer as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1012.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Gilmer's reputation and marketability, among other injuries, in an amount to be determined at trial.

1013.   WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## **GILMER COUNT VIII**
### (**Unjust Enrichment as to all Defendants**)

1014.   Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1015.   Gilmer has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1016.   Defendants were aware that Gilmer's image, likeness and/or identity were valuable.

1017.   Defendants were aware of the resulting benefit from usage of Gilmer's image, likeness and/or identity.

1018.   Defendants have retained profits and other benefits conferred upon them by using Gilmer's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1019.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Gilmer's image, likeness and/or identity without paying fair value for the images.

1020.   WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GILMER COUNT IX
### (Negligence as to all Defendants)

1021.   Gilmer hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1022.   Under the circumstances stated herein, Defendants owed a duty of care towards Gilmer.

1023.   Among other things, that duty included the obligation to deal with Gilmer and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Gilmer's image, likeness or identity in derogation of her rights, and to not cause harm to Gilmer.

1024.   Defendants breached that duty by using and altering Gilmer's image, likeness or identity without Gilmer's authorization, permission or consent.

1025.   Defendants' conduct and breach as described above directly and proximately caused injury to Gilmer's reputation, brand, goodwill and livelihood for which she has suffered damages.

1026.   WHEREFORE, Gilmer respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Jessica (Jessa) Hinton's Causes of Action*

## HINTON COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising as to all Defendants)

1027.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1028.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Hinton from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1029.   Defendants used and altered Hinton's image, likeness and/or identity as described herein without authority in order to create the perception that Hinton worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1030.  Defendants' use and alteration of Hinton's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1031.   Defendants' unauthorized use and alteration of Hinton's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Hinton worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized

Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Hinton would participate in or appear at the specific events promoted in the advertisement.

1032.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Hinton worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities

1033.   Upon information and belief, Defendants' unauthorized use or alteration of Hinton's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1034.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce.

Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1035.   Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1036.   Defendants knew or should have known that their unauthorized use and alteration of Hinton's image, likeness and identity would cause consumer confusion as described in this Complaint.

1037.   Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1038.   Defendants wrongful conduct as described herein was willful.

1039.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1040.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1041.   The method and manner in which Defendants used the images of Hinton further evinces that Defendants were aware of or consciously disregarded the fact that Hinton did not consent to Defendants' use of the images to advertise Defendants' business.

1042.   Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1043.   Defendants' unauthorized use of Hinton's image, likeness and identity directly and proximately caused and continue to cause damage to Hinton in an amount to be determined at trial.

1044.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness as to all Defendants)

1045.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1046.   Hinton has a statutory right of publicity under Section 540.08, Florida Statutes.

1047.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1048.   Despite the clear language of Section 540.08, Defendants published Hinton's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1049.   Hinton's image, likeness or identity are recognizable in the photos identified in **Exhibit I.**

1050.   Defendants never sought permission nor authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1051.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1052.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1053.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Hinton of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1054.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Hinton of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1055.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1056.  Alternatively, Defendants acted negligently towards Hinton in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1057.  Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1058.  Defendants also have damaged Hinton as a direct and proximate result of their unauthorized use of Hinton's images without compensating Hinton.

1059.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **HINTON COUNT III**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness as to all Defendants)**

1060.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1061.  Hinton has a common law right of publicity.

1062.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Hinton without express written or oral consent to such use.

1063.   Defendants published, printed, displayed and/or publicly used Hinton's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1064.   Hinton's image, likeness or identity are recognizable in the photos identified in **Exhibit I.**

1065.   Defendants took these actions without Hinton's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1066.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1067.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1068.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Hinton of a property interest

during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1069.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Hinton of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1070.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1071.   Alternatively, Defendants acted negligently towards Hinton in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1072.   Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1073.   Defendants also have damaged Hinton as a direct and proximate result of their unauthorized use of Hinton's image, likeness and/or identity without compensating Hinton.

1074.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### HINTON COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1075.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1076. Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1077.  Defendants are direct and active participants in market dealings with Hinton by using the images to advertise and promote Hinton's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1078.  Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1079.  Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.  failing to obtain consent from Hinton prior to promoting Defendants' business by and through the misappropriation and use of Hinton's images;

b.  failing to obtain authorization from Hinton prior to the publication of Hinton's images on Defendants' marketing and promotional materials;

c.  failing to compensate Hinton for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Hinton endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Hinton sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1080.   Defendants' conduct described herein was misleading.

1081.   Defendants knew their unauthorized use and alteration of Hinton's image, likeness and/or identity was misleading.

1082.   Defendants' unauthorized use and alteration of Hinton's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1083.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1084.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1085.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1086.   Alternatively, the method and manner in which Defendants used the images of Hinton further evinces that Defendants were aware or consciously disregarded that Hinton did not consent to Defendants' use of the images to advertise Defendants' business.

1087.   Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1088.   Defendants' unauthorized use of Hinton's image, likeness and identity directly and proximately caused and continues to cause damage to Hinton in an amount to be determined at trial.

1089.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### HINTON COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft as to all Defendants)

1090.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1091.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1092.   Defendants knowingly appropriated, altered, used and disseminated Hinton image, likeness and/or identity without authorization or consent.

1093.   Defendants misappropriation of Hinton's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Hinton of certain rights.

1094.   Defendants' misconduct detailed in this Complaint denied Hinton the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1095.   Defendants' appropriation and alteration of Hinton's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1096.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1097.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1098.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1099.   Alternatively, the method and manner in which Defendants used the images of Hinton further evinces that Defendants were aware of or consciously disregarded the fact that Hinton did not consent to Defendants' use of the images to advertise Defendants' business.

1100.   Defendants' appropriation, use and alteration of Hinton's image, likeness and identity without authority directly and proximately caused damage to Hinton in an amount to be determined at trial.

1101.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT VI
### (Defamation as to all Defendants)

1102.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1103.  As described herein, Defendants have used, altered and published Hinton's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1104.  Defendants' unauthorized use and publication of Hinton's altered images, likeness and/or identity constitutes false representations or statements by implication about Hinton's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1105.  Defendants' representations or statements by implication were knowingly false.

1106.  At all times relevant to matters raised in this Complaint, Defendants knew that Hinton was not affiliated with or employed by the Resort, knew that Hinton would not participate in the events at the Resort, knew that Hinton did not endorse Defendants' business, the Resort or Resort events, and knew that Hinton had not been appropriately compensated for such use.

1107.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Hinton images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1108.  Defendants' unauthorized use and publication of such altered Hinton images were defamatory.

1109.   Defendants' unauthorized use and publication of such altered Hinton images and knowingly false representations and/or statements by implication about Hinton were made with actual malice.

1110.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Hinton, which were defamatory.

1111.   Such false and defamatory representations and statements about Hinton were published to innumerable current and prospective customers and promoters.

1112.   Defendants knew their conduct described herein was wrongful.

1113.   Defendants intended to deprive Hinton of a property interest or, at a minimum, evinced a conscious disregard for the fact that Hinton did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1114.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Hinton's rights.

1115.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Hinton's reputation and marketability, among other injuries, in an amount to be determined at trial.

1116.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT VII
### (Defamation Per Se as to all Defendants)

1117.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1118.   As described herein, Defendants have used, altered and published Hinton's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1119.   Defendants' unauthorized use and publication of Hinton's altered images, likeness and/or identity constitutes false representations or statements by implication about Hinton's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1120.   Defendants' representations or statements by implication were knowingly false.

1121.   At all times relevant to matters raised in this Complaint, Defendants knew that Hinton was not affiliated with or employed by the Resort, knew that Hinton would not participate in the events at the Resort, knew that Hinton did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Hinton had not been appropriately compensated for such use.

1122.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Hinton images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1123.   Defendants' unauthorized use and publication of such altered Hinton images were defamatory.

1124. Defendants' unauthorized use and publication of such altered Hinton images and knowingly false representations or statements by implication about Hinton were made with actual malice.

1125. Defendants' representations and statements falsely impute to Hinton a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model. Hinton is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1126. These false statements by implication and/or altered images constitute defamation *per se*.

1127. Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1128. Defendants knew their conduct described herein was wrongful.

1129. Defendants intended to deprive Hinton of a property interest or, at a minimum, evinced a conscious disregard for the fact that Hinton did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1130. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Hinton's rights.

1131. Defendants' publication of Hinton's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Hinton as a "swinger" at the Resort who would partake and participate in the full panoply of

activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1132.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Hinton's reputation and marketability, among other injuries, in an amount to be determined at trial.

1133.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## HINTON COUNT VIII
### (Unjust Enrichment as to all Defendants)

1134.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1135.  Hinton has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1136.  Defendants were aware that Hinton's image, likeness and/or identity were valuable.

1137.  Defendants were aware of the resulting benefit from usage of Hinton's image, likeness and/or identity.

1138.   Defendants have retained profits and other benefits conferred upon them by using Hinton's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1139.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Hinton's image, likeness and/or identity without paying fair value for the images.

1140.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT IX
### (Negligence as to all Defendants)

1141.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1142.   Under the circumstances stated herein, Defendants owed a duty of care towards Hinton.

1143.   Among other things, that duty included the obligation to deal with Hinton and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Hinton's image, likeness or identity in derogation of her rights, and to not cause harm to Hinton.

1144.   Defendants breached that duty by using and altering Hinton's image, likeness or identity without Hinton's authorization, permission or consent.

1145.   Defendants' conduct and breach as described above directly and proximately caused injury to Hinton's reputation, brand, goodwill and livelihood for which she has suffered damages.

1146.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Rachel Bernstein Koren's Causes of Action*

### KOREN COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising as to all Defendants)

1147.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1148.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Koren from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1149.   Defendants used and altered Koren's image, likeness and/or identity as described herein without authority in order to create the perception that Koren worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to

advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1150.   Defendants' use and alteration of Koren's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1151.   Defendants' unauthorized use and alteration of Koren's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Koren worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Koren would participate in or appear at the specific events promoted in the advertisement.

1152.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Koren worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1153.   Upon information and belief, Defendants' unauthorized use or alteration of Koren's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Koren worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1154. Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1155. Defendants' unauthorized use and alteration of Koren's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1156. Defendants knew or should have known that their unauthorized use and alteration of Koren's image, likeness and identity would cause consumer confusion as described in this Complaint.

1157. Defendants' unauthorized use and alteration of Koren's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1158.   Defendants wrongful conduct as described herein was willful.

1159.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1160.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Koren of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

1161.   The method and manner in which Defendants used the images of Koren further evinces that Defendants were aware of or consciously disregarded the fact that Koren did not consent to Defendants' use of the images to advertise Defendants' business.

1162.   Defendants have caused and will continue to cause irreparable harm to Koren, her reputation and brand by attributing to Koren the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1163.   Defendants' unauthorized use of Koren's image, likeness and identity directly and proximately caused and continue to cause damage to Koren in an amount to be determined at trial.

1164.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**KOREN COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants**)

1165.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1166.   Koren has a statutory right of publicity under Section 540.08, Florida Statutes.

1167.   Section 540.08, Florida Statutes,  provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1168.   Despite the clear language of Section 540.08, Defendants published Koren's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1169.   Koren's image, likeness or identity are recognizable in the photos identified in **Exhibit J.**

1170.   Defendants never sought permission nor authority to use or alter Koren's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1171.   Koren never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1172.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Koren's image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1173.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Koren of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1174.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Koren of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1175.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Koren's rights.

1176.   Alternatively, Defendants acted negligently towards Koren in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1177.   Defendants have caused and will continue to cause irreparable harm to Koren, her reputation and brand by attributing to Koren the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1178.   Defendants also have damaged Koren as a direct and proximate result of their unauthorized use of Koren's images without compensating Koren.

1179.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>KOREN COUNT III</u>
### (Violation of Common Law Right of Publicity;<br>Unauthorized Misappropriation of Name or Likeness as to all Defendants)

1180.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1181.   Koren has a common law right of publicity.

1182.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Koren without express written or oral consent to such use.

1183.   Defendants published, printed, displayed and/or publicly used Koren's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1184.   Koren's image, likeness or identity are recognizable in the photos identified in **Exhibit J.**

1185.   Defendants took these actions without Koren's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Koren's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1186.   Koren never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1187.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Koren's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1188.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Koren of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1189.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Koren of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1190.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Koren's rights.

1191.   Alternatively, Defendants acted negligently towards Koren in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1192.   Defendants have caused and will continue to cause irreparable harm to Koren, her reputation and brand by attributing to Koren the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1193.   Defendants also have damaged Koren as a direct and proximate result of their unauthorized use of Koren's image, likeness and/or identity without compensating Koren.

1194.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KOREN COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1195.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1196.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1197.   Defendants are direct and active participants in market dealings with Koren by using the images to advertise and promote Koren's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1198.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1199.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Koren prior to promoting Defendants' business by and through the misappropriation and use of Koren's images;

b.      failing to obtain authorization from Koren prior to the publication of Koren's images on Defendants' marketing and promotional materials;

c.      failing to compensate Koren for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Koren endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Koren sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1200.   Defendants' conduct described herein was misleading.

1201.   Defendants knew their unauthorized use and alteration of Koren's image, likeness and/or identity was misleading.

1202.   Defendants' unauthorized use and alteration of Koren's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1203.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1204.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Koren of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

1205.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Koren's rights.

1206.   Alternatively, the method and manner in which Defendants used the images of Koren further evinces that Defendants were aware or consciously disregarded that Koren did not consent to Defendants' use of the images to advertise Defendants' business.

1207.   Defendants have caused and will continue to cause irreparable harm to Koren, her reputation and brand by attributing to Koren the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1208.   Defendants' unauthorized use of Koren's image, likeness and identity directly and proximately caused and continues to cause damage to Koren in an amount to be determined at trial.

1209.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KOREN COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft as to all Defendants)

1210.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1211.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1212.   Defendants knowingly appropriated, altered, used and disseminated Koren image, likeness and/or identity without authorization or consent.

1213.   Defendants misappropriation of Koren's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Koren of certain rights.

1214.   Defendants' misconduct detailed in this Complaint denied Koren the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1215.   Defendants' appropriation and alteration of Koren's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1216.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1217.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Koren of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

1218.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Koren's rights.

1219.   Alternatively, the method and manner in which Defendants used the images of Koren further evinces that Defendants were aware of or consciously disregarded the fact that Koren did not consent to Defendants' use of the images to advertise Defendants' business.

1220.   Defendants' appropriation, use and alteration of Koren's image, likeness and identity without authority directly and proximately caused damage to Koren in an amount to be determined at trial.

1221.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KOREN COUNT VI
### (Defamation as to all Defendants)

1222.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1223.   As described herein, Defendants have used, altered and published Koren's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1224.   Defendants' unauthorized use and publication of Koren's altered images, likeness and/or identity constitutes false representations or statements by implication about Koren's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1225.   Defendants' representations or statements by implication were knowingly false.

1226.   At all times relevant to matters raised in this Complaint, Defendants knew that Koren was not affiliated with or employed by the Resort, knew that Koren would not participate

in the events at the Resort, knew that Koren did not endorse Defendants' business, the Resort or Resort events, and knew that Koren had not been appropriately compensated for such use.

1227.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Koren images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1228.   Defendants' unauthorized use and publication of such altered Koren images were defamatory.

1229.   Defendants' unauthorized use and publication of such altered Koren images and knowingly false representations and/or statements by implication about Koren were made with actual malice.

1230.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Koren, which were defamatory.

1231.   Such false and defamatory representations and statements about Koren were published to innumerable current and prospective customers and promoters.

1232.   Defendants knew their conduct described herein was wrongful.

1233.   Defendants intended to deprive Koren of a property interest or, at a minimum, evinced a conscious disregard for the fact that Koren did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1234.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Koren's rights.

1235.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Koren's reputation and marketability, among other injuries, in an amount to be determined at trial.

1236.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KOREN COUNT VII
### (Defamation Per Se as to all Defendants)

1237.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1238.   As described herein, Defendants have used, altered and published Koren's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1239.   Defendants' unauthorized use and publication of Koren's altered images, likeness and/or identity constitutes false representations or statements by implication about Koren's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1240.   Defendants' representations or statements by implication were knowingly false.

1241.   At all times relevant to matters raised in this Complaint, Defendants knew that Koren was not affiliated with or employed by the Resort, knew that Koren would not participate

in the events at the Resort, knew that Koren did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Koren had not been appropriately compensated for such use.

1242.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Koren images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1243.   Defendants' unauthorized use and publication of such altered Koren images were defamatory.

1244.   Defendants' unauthorized use and publication of such altered Koren images and knowingly false representations or statements by implication about Koren were made with actual malice.

1245.   Defendants' representations and statements falsely impute to Koren a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Koren is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1246.   These false statements by implication and/or altered images constitute defamation *per se*.

1247.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1248.   Defendants knew their conduct described herein was wrongful.

1249.   Defendants intended to deprive Koren of a property interest or, at a minimum, evinced a conscious disregard for the fact that Koren did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1250.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Koren's rights.

1251.   Defendants' publication of Koren's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Koren as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1252.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Koren's reputation and marketability, among other injuries, in an amount to be determined at trial.

1253.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## KOREN COUNT VIII
### (Unjust Enrichment as to all Defendants)

1254.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1255.   Koren has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1256.   Defendants were aware that Koren's image, likeness and/or identity were valuable.

1257.   Defendants were aware of the resulting benefit from usage of Koren's image, likeness and/or identity.

1258.   Defendants have retained profits and other benefits conferred upon them by using Koren's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1259.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Koren's image, likeness and/or identity without paying fair value for the images.

1260.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KOREN COUNT IX
### (Negligence as to all Defendants)

1261.   Koren hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1262.   Under the circumstances stated herein, Defendants owed a duty of care towards Koren.

1263.   Among other things, that duty included the obligation to deal with Koren and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Koren's image, likeness or identity in derogation of her rights, and to not cause harm to Koren.

1264.   Defendants breached that duty by using and altering Koren's image, likeness or identity without Koren's authorization, permission or consent.

1265.   Defendants' conduct and breach as described above directly and proximately caused injury to Koren's reputation, brand, goodwill and livelihood for which she has suffered damages.

1266.   WHEREFORE, Koren respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Amber Lancaster's Causes of Action*

### LANCASTER COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising as to all Defendants)

1267.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1268.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Lancaster from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1269.   Defendants used and altered Lancaster's image, likeness and/or identity as described herein without authority in order to create the perception that Lancaster worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1270.   Defendants' use and alteration of Lancaster's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1271.   Defendants' unauthorized use and alteration of Lancaster's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Lancaster worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Lancaster would participate in or appear at the specific events promoted in the advertisement.

1272.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Lancaster worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants'

or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1273. Upon information and belief, Defendants' unauthorized use or alteration of Lancaster's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Lancaster worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1274. Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1275.   Defendants' unauthorized use and alteration of Lancaster's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1276.   Defendants knew or should have known that their unauthorized use and alteration of Lancaster's image, likeness and identity would cause consumer confusion as described in this Complaint.

1277.   Defendants' unauthorized use and alteration of Lancaster's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1278.   Defendants wrongful conduct as described herein was willful.

1279.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1280.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lancaster of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lancaster.

1281.   The method and manner in which Defendants used the images of Lancaster further evinces that Defendants were aware of or consciously disregarded the fact that Lancaster did not consent to Defendants' use of the images to advertise Defendants' business.

1282.   Defendants have caused and will continue to cause irreparable harm to Lancaster, her reputation and brand by attributing to Lancaster the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1283.   Defendants' unauthorized use of Lancaster's image, likeness and identity directly and proximately caused and continue to cause damage to Lancaster in an amount to be determined at trial.

1284.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### LANCASTER COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

1285.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1286.   Lancaster has a statutory right of publicity under Section 540.08, Florida Statutes.

1287.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1288.   Despite the clear language of Section 540.08, Defendants published Lancaster's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1289.   Lancaster's image, likeness or identity are recognizable in the photos identified in **Exhibit K.**

1290.  Defendants never sought permission nor authority to use or alter Lancaster's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1291.  Lancaster never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1292.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Lancaster's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1293.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Lancaster of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1294.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Lancaster of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1295.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lancaster's rights.

1296.  Alternatively, Defendants acted negligently towards Lancaster in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1297.   Defendants have caused and will continue to cause irreparable harm to Lancaster, her reputation and brand by attributing to Lancaster the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1298.   Defendants also have damaged Lancaster as a direct and proximate result of their unauthorized use of Lancaster's images without compensating Lancaster.

1299.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### LANCASTER COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness as to all Defendants)**

1300.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1301.   Lancaster has a common law right of publicity.

1302.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Lancaster without express written or oral consent to such use.

1303.   Defendants published, printed, displayed and/or publicly used Lancaster's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1304.   Lancaster's image, likeness or identity are recognizable in the photos identified in **Exhibit K.**

1305.   Defendants took these actions without Lancaster's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Lancaster's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1306.   Lancaster never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1307.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Lancaster's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1308.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Lancaster of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1309.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Lancaster of a property interest after receipt of the First Demand Letter in

which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1310.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lancaster's rights.

1311.   Alternatively, Defendants acted negligently towards Lancaster in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1312.   Defendants have caused and will continue to cause irreparable harm to Lancaster, her reputation and brand by attributing to Lancaster the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1313.   Defendants also have damaged Lancaster as a direct and proximate result of their unauthorized use of Lancaster's image, likeness and/or identity without compensating Lancaster.

1314.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LANCASTER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1315.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1316.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1317.   Defendants are direct and active participants in market dealings with Lancaster by using the images to advertise and promote Lancaster's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1318.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1319.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Lancaster prior to promoting Defendants' business by and through the misappropriation and use of Lancaster's images;

b.      failing to obtain authorization from Lancaster prior to the publication of Lancaster's images on Defendants' marketing and promotional materials;

c.      failing to compensate Lancaster for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Lancaster endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Lancaster sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1320.   Defendants' conduct described herein was misleading.

1321.   Defendants knew their unauthorized use and alteration of Lancaster's image, likeness and/or identity was misleading.

1322.   Defendants' unauthorized use and alteration of Lancaster's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1323.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1324.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lancaster of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lancaster.

1325.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lancaster's rights.

1326.   Alternatively, the method and manner in which Defendants used the images of Lancaster further evinces that Defendants were aware or consciously disregarded that Lancaster did not consent to Defendants' use of the images to advertise Defendants' business.

1327.   Defendants have caused and will continue to cause irreparable harm to Lancaster, her reputation and brand by attributing to Lancaster the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1328.   Defendants' unauthorized use of Lancaster's image, likeness and identity directly and proximately caused and continues to cause damage to Lancaster in an amount to be determined at trial.

1329.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### LANCASTER COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

1330.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1331.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1332.   Defendants knowingly appropriated, altered, used and disseminated Lancaster's image, likeness and/or identity without authorization or consent.

1333.   Defendants misappropriation of Lancaster's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Lancaster of certain rights.

1334.   Defendants' misconduct detailed in this Complaint denied Lancaster the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1335. Defendants' appropriation and alteration of Lancaster's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1336. Defendants' wrongful conduct as detailed herein was willful and malicious.

1337. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lancaster of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lancaster.

1338. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lancaster's rights.

1339. Alternatively, the method and manner in which Defendants used the images of Lancaster further evinces that Defendants were aware of or consciously disregarded the fact that Lancaster did not consent to Defendants' use of the images to advertise Defendants' business.

1340. Defendants' appropriation, use and alteration of Lancaster's image, likeness and identity without authority directly and proximately caused damage to Lancaster in an amount to be determined at trial.

1341. WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LANCASTER COUNT VI
### (Defamation as to all Defendants)

1342.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1343.   As described herein, Defendants have used, altered and published Lancaster's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1344.   Defendants' unauthorized use and publication of Lancaster's altered images, likeness and/or identity constitutes false representations or statements by implication about Lancaster's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1345.   Defendants' representations or statements by implication were knowingly false.

1346.   At all times relevant to matters raised in this Complaint, Defendants knew that Lancaster was not affiliated with or employed by the Resort, knew that Lancaster would not participate in the events at the Resort, knew that Lancaster did not endorse Defendants' business, the Resort or Resort events, and knew that Lancaster had not been appropriately compensated for such use.

1347.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Lancaster images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1348.   Defendants' unauthorized use and publication of such altered Lancaster images were defamatory.

1349.  Defendants' unauthorized use and publication of such altered Lancaster images and knowingly false representations and/or statements by implication about Lancaster were made with actual malice.

1350.  Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Lancaster, which were defamatory.

1351.  Such false and defamatory representations and statements about Lancaster were published to innumerable current and prospective customers and promoters.

1352.  Defendants knew their conduct described herein was wrongful.

1353.  Defendants intended to deprive Lancaster of a property interest or, at a minimum, evinced a conscious disregard for the fact that Lancaster did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1354.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Lancaster or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Lancaster's rights.

1355.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Lancaster's reputation and marketability, among other injuries, in an amount to be determined at trial.

1356.  WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LANCASTER COUNT VII
### (Defamation Per Se as to all Defendants)

1357.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1358.   As described herein, Defendants have used, altered and published Lancaster's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1359.   Defendants' unauthorized use and publication of Lancaster's altered images, likeness and/or identity constitutes false representations or statements by implication about Lancaster's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1360.   Defendants' representations or statements by implication were knowingly false.

1361.   At all times relevant to matters raised in this Complaint, Defendants knew that Lancaster was not affiliated with or employed by the Resort, knew that Lancaster would not participate in the events at the Resort, knew that Lancaster did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Lancaster had not been appropriately compensated for such use.

1362.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Lancaster images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1363.   Defendants' unauthorized use and publication of such altered Lancaster images were defamatory.

1364.   Defendants' unauthorized use and publication of such altered Lancaster images and knowingly false representations or statements by implication about Lancaster were made with actual malice.

1365.   Defendants' representations and statements falsely impute to Lancaster a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Lancaster is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1366.   These false statements by implication and/or altered images constitute defamation *per se*.

1367.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1368.   Defendants knew their conduct described herein was wrongful.

1369.   Defendants intended to deprive Lancaster of a property interest or, at a minimum, evinced a conscious disregard for the fact that Lancaster did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1370.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Lancaster or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Lancaster's rights.

1371.   Defendants' publication of Lancaster's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Lancaster as a "swinger" at the Resort who would partake and participate in the full panoply of

activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1372.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Lancaster's reputation and marketability, among other injuries, in an amount to be determined at trial.

1373.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## LANCASTER COUNT VIII
### (Unjust Enrichment as to all Defendants)

1374.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1375.   Lancaster has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1376.   Defendants were aware that Lancaster's image, likeness and/or identity were valuable.

1377.   Defendants were aware of the resulting benefit from usage of Lancaster's image, likeness and/or identity.

1378.   Defendants have retained profits and other benefits conferred upon them by using Lancaster's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1379.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Lancaster's image, likeness and/or identity without paying fair value for the images.

1380.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LANCASTER COUNT IX
**(Negligence as to all Defendants)**

1381.   Lancaster hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1382.   Under the circumstances stated herein, Defendants owed a duty of care towards Lancaster.

1383.   Among other things, that duty included the obligation to deal with Lancaster and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Lancaster's image, likeness or identity in derogation of her rights, and to not cause harm to Lancaster.

1384.   Defendants breached that duty by using and altering Lancaster's image, likeness or identity without Lancaster's authorization, permission or consent.

1385.   Defendants' conduct and breach as described above directly and proximately caused injury to Lancaster's reputation, brand, goodwill and livelihood for which she has suffered damages.

1386.   WHEREFORE, Lancaster respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Ursula Mayes' Causes of Action*

### <u>MAYES COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising as to all Defendants)

1387.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1388.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mayes from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1389.   Defendants used and altered Mayes' image, likeness and/or identity as described herein without authority in order to create the perception that Mayes worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to

advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1390.   Defendants' use and alteration of Mayes' image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1391.   Defendants' unauthorized use and alteration of Mayes' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mayes worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Mayes would participate in or appear at the specific events promoted in the advertisement.

1392.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Mayes worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1393.   Upon information and belief, Defendants' unauthorized use or alteration of Mayes' image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Mayes worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1394.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1395.   Defendants' unauthorized use and alteration of Mayes' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1396.   Defendants knew or should have known that their unauthorized use and alteration of Mayes' image, likeness and identity would cause consumer confusion as described in this Complaint.

1397.   Defendants' unauthorized use and alteration of Mayes' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1398.   Defendants wrongful conduct as described herein was willful.

1399.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1400.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mayes of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes.

1401.   The method and manner in which Defendants used the images of Mayes further evinces that Defendants were aware of or consciously disregarded the fact that Mayes did not consent to Defendants' use of the images to advertise Defendants' business.

1402.   Defendants have caused and will continue to cause irreparable harm to Mayes, her reputation and brand by attributing to Mayes the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1403.   Defendants' unauthorized use of Mayes' image, likeness and identity directly and proximately caused and continue to cause damage to Mayes in an amount to be determined at trial.

1404.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**MAYES COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

1405.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1406.   Mayes has a statutory right of publicity under Section 540.08, Florida Statutes.

1407.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1408.   Despite the clear language of Section 540.08, Defendants published Mayes' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1409.   Mayes' image, likeness or identity are recognizable in the photos identified in **Exhibit L.**

1410.   Defendants never sought permission nor authority to use or alter Mayes' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1411.   Mayes never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1412.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Mayes' image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1413.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Mayes of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1414.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Mayes of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1415.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mayes' rights.

1416.   Alternatively, Defendants acted negligently towards Mayes in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1417.   Defendants have caused and will continue to cause irreparable harm to Mayes, her reputation and brand by attributing to Mayes the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1418.   Defendants also have damaged Mayes as a direct and proximate result of their unauthorized use of Mayes' images without compensating Mayes.

1419.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MAYES COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

1420.  Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1421.  Mayes has a common law right of publicity.

1422.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mayes without express written or oral consent to such use.

1423.  Defendants published, printed, displayed and/or publicly used Mayes' image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1424.  Mayes' image, likeness or identity are recognizable in the photos identified in **Exhibit L.**

1425.  Defendants took these actions without Mayes' permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Mayes' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1426.   Mayes never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1427.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mayes' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1428.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Mayes of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1429.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Mayes of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1430.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mayes' rights.

1431.   Alternatively, Defendants acted negligently towards Mayes in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1432.   Defendants have caused and will continue to cause irreparable harm to Mayes, her reputation and brand by attributing to Mayes the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1433.   Defendants also have damaged Mayes as a direct and proximate result of their unauthorized use of Mayes' image, likeness and/or identity without compensating Mayes.

1434.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MAYES COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1435.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1436.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1437.   Defendants are direct and active participants in market dealings with Mayes by using the images to advertise and promote Mayes' claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1438. Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1439. Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

    a.     failing to obtain consent from Mayes prior to promoting Defendants' business by and through the misappropriation and use of Mayes' images;

    b.     failing to obtain authorization from Mayes prior to the publication of Mayes' images on Defendants' marketing and promotional materials;

    c.     failing to compensate Mayes for the appropriation of her images on Defendants' marketing and promotional materials;

    d.     falsely representing by implication to the public that Mayes endorsed the Defendants' business, or would be present at Defendants' events; and

    e.     falsely representing by implication that Mayes sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1440. Defendants' conduct described herein was misleading.

1441. Defendants knew their unauthorized use and alteration of Mayes' image, likeness and/or identity was misleading.

1442. Defendants' unauthorized use and alteration of Mayes' image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1443. Defendants' wrongful conduct as detailed herein was willful and malicious.

1444. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mayes of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes.

1445.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mayes' rights.

1446.   Alternatively, the method and manner in which Defendants used the images of Mayes further evinces that Defendants were aware or consciously disregarded that Mayes did not consent to Defendants' use of the images to advertise Defendants' business.

1447.   Defendants have caused and will continue to cause irreparable harm to Mayes, her reputation and brand by attributing to Mayes the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1448.   Defendants' unauthorized use of Mayes' image, likeness and identity directly and proximately caused and continues to cause damage to Mayes in an amount to be determined at trial.

1449.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MAYES COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft as to all Defendants)

1450.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1451.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1452.   Defendants knowingly appropriated, altered, used and disseminated Mayes' image, likeness and/or identity without authorization or consent.

1453.   Defendants misappropriation of Mayes' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Mayes of certain rights.

1454.   Defendants' misconduct detailed in this Complaint denied Mayes the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1455.   Defendants' appropriation and alteration of Mayes' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1456.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1457.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mayes of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes.

1458.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mayes' rights.

1459.   Alternatively, the method and manner in which Defendants used the images of Mayes further evinces that Defendants were aware of or consciously disregarded the fact that Mayes did not consent to Defendants' use of the images to advertise Defendants' business.

1460. Defendants' appropriation, use and alteration of Mayes' image, likeness and identity without authority directly and proximately caused damage to Mayes in an amount to be determined at trial.

1461. WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MAYES COUNT VI
### (Defamation as to all Defendants)

1462. Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1463. As described herein, Defendants have used, altered and published Mayes' image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1464. Defendants' unauthorized use and publication of Mayes' altered images, likeness and/or identity constitutes false representations or statements by implication about Mayes' affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1465. Defendants' representations or statements by implication were knowingly false.

1466. At all times relevant to matters raised in this Complaint, Defendants knew that Mayes was not affiliated with or employed by the Resort, knew that Mayes would not participate

in the events at the Resort, knew that Mayes did not endorse Defendants' business, the Resort or Resort events, and knew that Mayes had not been appropriately compensated for such use.

1467.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Mayes images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1468.  Defendants' unauthorized use and publication of such altered Mayes images were defamatory.

1469.  Defendants' unauthorized use and publication of such altered Mayes images and knowingly false representations and/or statements by implication about Mayes were made with actual malice.

1470.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Mayes, which were defamatory.

1471.  Such false and defamatory representations and statements about Mayes were published to innumerable current and prospective customers and promoters.

1472.  Defendants knew their conduct described herein was wrongful.

1473.  Defendants intended to deprive Mayes of a property interest or, at a minimum, evinced a conscious disregard for the fact that Mayes did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1474.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Mayes' rights.

1475.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Mayes' reputation and marketability, among other injuries, in an amount to be determined at trial.

1476.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MAYES COUNT VII
### (Defamation Per Se as to all Defendants)

1477.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1478.   As described herein, Defendants have used, altered and published Mayes' image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1479.   Defendants' unauthorized use and publication of Mayes' altered images, likeness and/or identity constitutes false representations or statements by implication about Mayes' affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1480.   Defendants' representations or statements by implication were knowingly false.

1481.   At all times relevant to matters raised in this Complaint, Defendants knew that Mayes was not affiliated with or employed by the Resort, knew that Mayes would not participate

227

in the events at the Resort, knew that Mayes did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Mayes had not been appropriately compensated for such use.

1482.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Mayes images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1483.   Defendants' unauthorized use and publication of such altered Mayes images were defamatory.

1484.   Defendants' unauthorized use and publication of such altered Mayes images and knowingly false representations or statements by implication about Mayes were made with actual malice.

1485.   Defendants' representations and statements falsely impute to Mayes a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   Mayes is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1486.   These false statements by implication and/or altered images constitute defamation *per se*.

1487.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1488.   Defendants knew their conduct described herein was wrongful.

1489.   Defendants intended to deprive Mayes of a property interest or, at a minimum, evinced a conscious disregard for the fact that Mayes did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1490.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Mayes or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Mayes' rights.

1491.   Defendants' publication of Mayes' image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Mayes as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1492.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Mayes' reputation and marketability, among other injuries, in an amount to be determined at trial.

1493.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## MAYES COUNT VIII
### (Unjust Enrichment as to all Defendants)

1494.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1495.   Mayes has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1496.   Defendants were aware that Mayes' image, likeness and/or identity were valuable.

1497.   Defendants were aware of the resulting benefit from usage of Mayes' image, likeness and/or identity.

1498.   Defendants have retained profits and other benefits conferred upon them by using Mayes' image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1499.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Mayes' image, likeness and/or identity without paying fair value for the images.

1500.   WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MAYES COUNT IX
### (Negligence as to all Defendants)

1501.   Mayes hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1502.   Under the circumstances stated herein, Defendants owed a duty of care towards Mayes.

1503.   Among other things, that duty included the obligation to deal with Mayes and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or

alter Mayes' image, likeness or identity in derogation of her rights, and to not cause harm to Mayes.

1504.  Defendants breached that duty by using and altering Mayes' image, likeness or identity without Mayes' authorization, permission or consent.

1505.  Defendants' conduct and breach as described above directly and proximately caused injury to Mayes' reputation, brand, goodwill and livelihood for which she has suffered damages.

1506.  WHEREFORE, Mayes respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Carrie Minter's Causes of Action*

<u>**MINTER COUNT I**</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants**)

1507.  Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1508.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Minter from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1509.   Defendants used and altered Minter's image, likeness and/or identity as described herein without authority in order to create the perception that Minter worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1510.   Defendants' use and alteration of Minter's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1511.   Defendants' unauthorized use and alteration of Minter's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Minter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Minter would participate in or appear at the specific events promoted in the advertisement.

1512.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Minter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1513. Upon information and belief, Defendants' unauthorized use or alteration of Minter's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Minter worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1514. Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1515. Defendants' unauthorized use and alteration of Minter's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1516.   Defendants knew or should have known that their unauthorized use and alteration of Minter's image, likeness and identity would cause consumer confusion as described in this Complaint.

1517.   Defendants' unauthorized use and alteration of Minter's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1518.   Defendants wrongful conduct as described herein was willful.

1519.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1520.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

1521.   The method and manner in which Defendants used the images of Minter further evinces that Defendants were aware of or consciously disregarded the fact that Minter did not consent to Defendants' use of the images to advertise Defendants' business.

1522.   Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1523.   Defendants' unauthorized use of Minter's image, likeness and identity directly and proximately caused and continue to cause damage to Minter in an amount to be determined at trial.

1524.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees

and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MINTER COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness as to all Defendants**)

1525.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1526.   Minter has a statutory right of publicity under Section 540.08, Florida Statutes.

1527.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1528.   Despite the clear language of Section 540.08, Defendants published Minter's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1529.   Minter's image, likeness or identity are recognizable in the photos identified in **Exhibit M.**

1530.   Defendants never sought permission nor authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1531.   Minter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1532. Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Minter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1533. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Minter of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1534. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Minter of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1535. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

1536. Alternatively, Defendants acted negligently towards Minter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1537. Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1538. Defendants also have damaged Minter as a direct and proximate result of their unauthorized use of Minter's images without compensating Minter.

1539.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MINTER COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness as to all Defendants)**

1540.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1541.   Minter has a common law right of publicity.

1542.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Minter without express written or oral consent to such use.

1543.   Defendants published, printed, displayed and/or publicly used Minter's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1544.   Minter's image, likeness or identity are recognizable in the photos identified in **Exhibit M.**

1545.   Defendants took these actions without Minter's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Minter's image, likeness

or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1546.  Minter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1547.  Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Minter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1548.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Minter of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1549.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Minter of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1550.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

1551.  Alternatively, Defendants acted negligently towards Minter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1552.   Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1553.   Defendants also have damaged Minter as a direct and proximate result of their unauthorized use of Minter's image, likeness and/or identity without compensating Minter.

1554.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1555.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1556.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1557.   Defendants are direct and active participants in market dealings with Minter by using the images to advertise and promote Minter's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1558.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1559.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Minter prior to promoting Defendants' business by and through the misappropriation and use of Minter's images;

b.      failing to obtain authorization from Minter prior to the publication of Minter's images on Defendants' marketing and promotional materials;

c.      failing to compensate Minter for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Minter endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Minter sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1560.   Defendants' conduct described herein was misleading.

1561.   Defendants knew their unauthorized use and alteration of Minter's image, likeness and/or identity was misleading.

1562.   Defendants' unauthorized use and alteration of Minter's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1563.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1564.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

240

1565.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

1566.   Alternatively, the method and manner in which Defendants used the images of Minter further evinces that Defendants were aware or consciously disregarded that Minter did not consent to Defendants' use of the images to advertise Defendants' business.

1567.   Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1568.   Defendants' unauthorized use of Minter's image, likeness and identity directly and proximately caused and continues to cause damage to Minter in an amount to be determined at trial.

1569.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MINTER COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft as to all Defendants)

1570.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1571.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1572.   Defendants knowingly appropriated, altered, used and disseminated Minter's image, likeness and/or identity without authorization or consent.

1573.   Defendants misappropriation of Minter's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Minter of certain rights.

1574.   Defendants' misconduct detailed in this Complaint denied Minter the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1575.   Defendants' appropriation and alteration of Minter's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1576.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1577.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

1578.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

1579.   Alternatively, the method and manner in which Defendants used the images of Minter further evinces that Defendants were aware of or consciously disregarded the fact that Minter did not consent to Defendants' use of the images to advertise Defendants' business.

1580.   Defendants' appropriation, use and alteration of Minter's image, likeness and identity without authority directly and proximately caused damage to Minter in an amount to be determined at trial.

1581.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT VI
### (Defamation as to all Defendants)

1582.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1583.   As described herein, Defendants have used, altered and published Minter's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1584.   Defendants' unauthorized use and publication of Minter's altered images, likeness and/or identity constitutes false representations or statements by implication about Minter's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1585.   Defendants' representations or statements by implication were knowingly false.

1586.   At all times relevant to matters raised in this Complaint, Defendants knew that Minter was not affiliated with or employed by the Resort, knew that Minter would not participate

in the events at the Resort, knew that Minter did not endorse Defendants' business, the Resort or Resort events, and knew that Minter had not been appropriately compensated for such use.

1587.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Minter images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1588.   Defendants' unauthorized use and publication of such altered Minter images were defamatory.

1589.   Defendants' unauthorized use and publication of such altered Minter images and knowingly false representations and/or statements by implication about Minter were made with actual malice.

1590.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Minter, which were defamatory.

1591.   Such false and defamatory representations and statements about Minter were published to innumerable current and prospective customers and promoters.

1592.   Defendants knew their conduct described herein was wrongful.

1593.   Defendants intended to deprive Minter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Minter did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1594.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Minter's rights.

1595.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Minter's reputation and marketability, among other injuries, in an amount to be determined at trial.

1596.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT VII
### (Defamation Per Se as to all Defendants)

1597.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1598.   As described herein, Defendants have used, altered and published Minter's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1599.   Defendants' unauthorized use and publication of Minter's altered images, likeness and/or identity constitutes false representations or statements by implication about Minter's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1600.   Defendants' representations or statements by implication were knowingly false.

1601.   At all times relevant to matters raised in this Complaint, Defendants knew that Minter was not affiliated with or employed by the Resort, knew that Minter would not participate

in the events at the Resort, knew that Minter did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Minter had not been appropriately compensated for such use.

1602.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Minter images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1603.   Defendants' unauthorized use and publication of such altered Minter images were defamatory.

1604.   Defendants' unauthorized use and publication of such altered Minter images and knowingly false representations or statements by implication about Minter were made with actual malice.

1605.   Defendants' representations and statements falsely impute to Minter a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   Minter is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1606.   These false statements by implication and/or altered images constitute defamation *per se*.

1607.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1608.   Defendants knew their conduct described herein was wrongful.

1609.   Defendants intended to deprive Minter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Minter did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1610.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Minter's rights.

1611.   Defendants' publication of Minter's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Minter as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1612.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Minter's reputation and marketability, among other injuries, in an amount to be determined at trial.

1613.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## MINTER COUNT VIII
### (Unjust Enrichment as to all Defendants)

1614.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1615.   Minter has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1616.   Defendants were aware that Minter's image, likeness and/or identity were valuable.

1617.   Defendants were aware of the resulting benefit from usage of Minter's image, likeness and/or identity.

1618.   Defendants have retained profits and other benefits conferred upon them by using Minter's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1619.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Minter's image, likeness and/or identity without paying fair value for the images.

1620.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>MINTER COUNT IX</u>
### (Negligence as to all Defendants)

1621.   Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1622.   Under the circumstances stated herein, Defendants owed a duty of care towards Minter.

1623.   Among other things, that duty included the obligation to deal with Minter and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Minter's image, likeness or identity in derogation of her rights, and to not cause harm to Minter.

1624.   Defendants breached that duty by using and altering Minter's image, likeness or identity without Minter's authorization, permission or consent.

1625.   Defendants' conduct and breach as described above directly and proximately caused injury to Minter's reputation, brand, goodwill and livelihood for which she has suffered damages.

1626.   WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Dessie Mitcheson's Causes of Action*

### <u>MITCHESON COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

1627.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1628.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Mitcheson from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1629.  Defendants used and altered Mitcheson's image, likeness and/or identity as described herein without authority in order to create the perception that Mitcheson worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1630.  Defendants' use and alteration of Mitcheson's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1631.  Defendants' unauthorized use and alteration of Mitcheson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Mitcheson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Mitcheson would participate in or appear at the specific events promoted in the advertisement.

1632.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Mitcheson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants'

or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1633. Upon information and belief, Defendants' unauthorized use or alteration of Mitcheson's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Mitcheson worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1634. Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States. In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1635.   Defendants' unauthorized use and alteration of Mitcheson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1636.   Defendants knew or should have known that their unauthorized use and alteration of Mitcheson's image, likeness and identity would cause consumer confusion as described in this Complaint.

1637.   Defendants' unauthorized use and alteration of Mitcheson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1638.   Defendants wrongful conduct as described herein was willful.

1639.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1640.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

1641.   The method and manner in which Defendants used the images of Mitcheson further evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the images to advertise Defendants' business.

1642.   Defendants have caused and will continue to cause irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1643.   Defendants' unauthorized use of Mitcheson's image, likeness and identity directly and proximately caused and continue to cause damage to Mitcheson in an amount to be determined at trial.

1644.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MITCHESON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness as to all Defendants)

1645.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1646.   Mitcheson has a statutory right of publicity under Section 540.08, Florida Statutes.

1647.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1648.   Despite the clear language of Section 540.08, Defendants published Mitcheson's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1649.   Mitcheson's image, likeness or identity are recognizable in the photos identified in **Exhibit N.**

1650.   Defendants never sought permission nor authority to use or alter Mitcheson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1651.   Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1652.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1653.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Mitcheson of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1654.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Mitcheson of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1655.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

1656.   Alternatively, Defendants acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1657.   Defendants have caused and will continue to cause irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1658.   Defendants also have damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's images without compensating Mitcheson.

1659.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MITCHESON COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

1660.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1661.   Mitcheson has a common law right of publicity.

1662.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Mitcheson without express written or oral consent to such use.

1663.   Defendants published, printed, displayed and/or publicly used Mitcheson's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1664.   Mitcheson's image, likeness or identity are recognizable in the photos identified in **Exhibit N.**

1665.   Defendants took these actions without Mitcheson's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Mitcheson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1666.   Mitcheson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1667.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Mitcheson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1668.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Mitcheson of a property interest

during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1669.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Mitcheson of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1670.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

1671.   Alternatively, Defendants acted negligently towards Mitcheson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1672.   Defendants have caused and will continue to cause irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1673.   Defendants also have damaged Mitcheson as a direct and proximate result of their unauthorized use of Mitcheson's image, likeness and/or identity without compensating Mitcheson.

1674.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MITCHESON COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1675.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1676. Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1677.   Defendants are direct and active participants in market dealings with Mitcheson by using the images to advertise and promote Mitcheson's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1678.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1679.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Mitcheson prior to promoting Defendants' business by and through the misappropriation and use of Mitcheson's images;

b.      failing to obtain authorization from Mitcheson prior to the publication of Mitcheson's images on Defendants' marketing and promotional materials;

c.      failing to compensate Mitcheson for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Mitcheson endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Mitcheson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1680.   Defendants' conduct described herein was misleading.

1681.   Defendants knew their unauthorized use and alteration of Mitcheson's image, likeness and/or identity was misleading.

1682.   Defendants' unauthorized use and alteration of Mitcheson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1683.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1684.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

1685.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

1686.   Alternatively, the method and manner in which Defendants used the images of Mitcheson further evinces that Defendants were aware or consciously disregarded that Mitcheson did not consent to Defendants' use of the images to advertise Defendants' business.

1687.   Defendants have caused and will continue to cause irreparable harm to Mitcheson, her reputation and brand by attributing to Mitcheson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1688.   Defendants' unauthorized use of Mitcheson's image, likeness and identity directly and proximately caused and continues to cause damage to Mitcheson in an amount to be determined at trial.

1689.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MITCHESON COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft as to all Defendants)

1690.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1691.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1692.   Defendants knowingly appropriated, altered, used and disseminated Mitcheson's image, likeness and/or identity without authorization or consent.

1693.   Defendants misappropriation of Mitcheson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Mitcheson of certain rights.

1694.   Defendants' misconduct detailed in this Complaint denied Mitcheson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1695.  Defendants' appropriation and alteration of Mitcheson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1696.  Defendants' wrongful conduct as detailed herein was willful and malicious.

1697.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Mitcheson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson.

1698.  At a minimum, Defendants' conduct was so reckless or wanton I n care that it constituted a conscious disregard of or indifference to Mitcheson's rights.

1699.  Alternatively, the method and manner in which Defendants used the images of Mitcheson further evinces that Defendants were aware of or consciously disregarded the fact that Mitcheson did not consent to Defendants' use of the images to advertise Defendants' business.

1700.  Defendants' appropriation, use and alteration of Mitcheson's image, likeness and identity without authority directly and proximately caused damage to Mitcheson in an amount to be determined at trial.

1701.  WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**MITCHESON COUNT VI**
**(Defamation as to all Defendants)**

1702.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1703.   As described herein, Defendants have used, altered and published Mitcheson's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1704.   Defendants' unauthorized use and publication of Mitcheson's altered images, likeness and/or identity constitutes false representations or statements by implication about Mitcheson's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1705.   Defendants' representations or statements by implication were knowingly false.

1706.   At all times relevant to matters raised in this Complaint, Defendants knew that Mitcheson was not affiliated with or employed by the Resort, knew that Mitcheson would not participate in the events at the Resort, knew that Mitcheson did not endorse Defendants' business, the Resort or Resort events, and knew that Mitcheson had not been appropriately compensated for such use.

1707.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Mitcheson images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1708.   Defendants' unauthorized use and publication of such altered Mitcheson images were defamatory.

1709.   Defendants' unauthorized use and publication of such altered Mitcheson images and knowingly false representations and/or statements by implication about Mitcheson were made with actual malice.

1710.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Mitcheson, which were defamatory.

1711.   Such false and defamatory representations and statements about Mitcheson were published to innumerable current and prospective customers and promoters.

1712.   Defendants knew their conduct described herein was wrongful.

1713.   Defendants intended to deprive Mitcheson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Mitcheson did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1714.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Mitcheson's rights.

1715.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Mitcheson's reputation and marketability, among other injuries, in an amount to be determined at trial.

1716.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MITCHESON COUNT VII
### (Defamation Per Se as to all Defendants)

1717.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1718.   As described herein, Defendants have used, altered and published Mitcheson's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1719.   Defendants' unauthorized use and publication of Mitcheson's altered images, likeness and/or identity constitutes false representations or statements by implication about Mitcheson's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1720.   Defendants' representations or statements by implication were knowingly false.

1721.   At all times relevant to matters raised in this Complaint, Defendants knew that Mitcheson was not affiliated with or employed by the Resort, knew that Mitcheson would not participate in the events at the Resort, knew that Mitcheson did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Mitcheson had not been appropriately compensated for such use.

1722.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Mitcheson images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1723.   Defendants' unauthorized use and publication of such altered Mitcheson images were defamatory.

1724.  Defendants' unauthorized use and publication of such altered Mitcheson images and knowingly false representations or statements by implication about Mitcheson were made with actual malice.

1725.  Defendants' representations and statements falsely impute to Mitcheson a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Mitcheson is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1726.  These false statements by implication and/or altered images constitute defamation *per se*.

1727.  Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1728.  Defendants knew their conduct described herein was wrongful.

1729.  Defendants intended to deprive Mitcheson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Mitcheson did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1730.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Mitcheson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Mitcheson's rights.

1731.  Defendants' publication of Mitcheson's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Mitcheson as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1732.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Mitcheson's reputation and marketability, among other injuries, in an amount to be determined at trial.

1733.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## MITCHESON COUNT VIII
### (Unjust Enrichment as to all Defendants)

1734.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1735.   Mitcheson has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1736.   Defendants were aware that Mitcheson's image, likeness and/or identity were valuable.

1737.   Defendants were aware of the resulting benefit from usage of Mitcheson's image, likeness and/or identity.

1738.   Defendants have retained profits and other benefits conferred upon them by using Mitcheson's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1739.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Mitcheson's image, likeness and/or identity without paying fair value for the images.

1740.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MITCHESON COUNT IX
**(Negligence as to all Defendants)**

1741.   Mitcheson hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1742.   Under the circumstances stated herein, Defendants owed a duty of care towards Mitcheson.

1743.   Among other things, that duty included the obligation to deal with Mitcheson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Mitcheson's image, likeness or identity in derogation of her rights, and to not cause harm to Mitcheson.

1744.   Defendants breached that duty by using and altering Mitcheson's image, likeness or identity without Mitcheson's authorization, permission or consent.

1745.   Defendants' conduct and breach as described above directly and proximately caused injury to Mitcheson's reputation, brand, goodwill and livelihood for which she has suffered damages.

1746.   WHEREFORE, Mitcheson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Sabella Shake's Causes of Action*

### SHAKE COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Advertising as to all Defendants)**

1747.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1748.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Shake from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1749.   Defendants used and altered Shake's image, likeness and/or identity as described herein without authority in order to create the perception that Shake worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to

advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1750. Defendants' use and alteration of Shake's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1751. Defendants' unauthorized use and alteration of Shake's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Shake worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Shake would participate in or appear at the specific events promoted in the advertisement.

1752. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Shake worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities

1753. Upon information and belief, Defendants' unauthorized use or alteration of Shake's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Shake worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1754.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1755.   Defendants' unauthorized use and alteration of Shake's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1756.   Defendants knew or should have known that their unauthorized use and alteration of Shake's image, likeness and identity would cause consumer confusion as described in this Complaint.

1757.   Defendants' unauthorized use and alteration of Shake's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1758.   Defendants wrongful conduct as described herein was willful.

1759.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1760.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Shake of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Shake.

1761.   The method and manner in which Defendants used the images of Shake further evinces that Defendants were aware of or consciously disregarded the fact that Shake did not consent to Defendants' use of the images to advertise Defendants' business.

1762.   Defendants have caused and will continue to cause irreparable harm to Shake, her reputation and brand by attributing to Shake the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1763.   Defendants' unauthorized use of Shake's image, likeness and identity directly and proximately caused and continue to cause damage to Shake in an amount to be determined at trial.

1764.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**SHAKE COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

1765.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1766.   Shake has a statutory right of publicity under Section 540.08, Florida Statutes.

1767.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1768.   Despite the clear language of Section 540.08, Defendants published Shake's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1769.   Shake's image, likeness or identity are recognizable in the photos identified in **Exhibit O.**

1770.   Defendants never sought permission nor authority to use or alter Shake's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1771.   Shake never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1772.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Shake's image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1773.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Shake of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1774.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Shake of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1775.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Shake's rights.

1776.   Alternatively, Defendants acted negligently towards Shake in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1777.   Defendants have caused and will continue to cause irreparable harm to Shake, her reputation and brand by attributing to Shake the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1778.   Defendants also have damaged Shake as a direct and proximate result of their unauthorized use of Shake's images without compensating Shake.

1779.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SHAKE COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

1780.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1781.   Shake has a common law right of publicity.

1782.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Shake without express written or oral consent to such use.

1783.   Defendants published, printed, displayed and/or publicly used Shake's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1784.   Shake's image, likeness or identity are recognizable in the photos identified in **Exhibit O.**

1785.   Defendants took these actions without Shake's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Shake's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1786.   Shake never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1787.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Shake's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1788.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Shake of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1789.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Shake of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1790.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Shake's rights.

1791.   Alternatively, Defendants acted negligently towards Shake in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1792.   Defendants have caused and will continue to cause irreparable harm to Shake, her reputation and brand by attributing to Shake the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1793.   Defendants also have damaged Shake as a direct and proximate result of their unauthorized use of Shake's image, likeness and/or identity without compensating Shake.

1794.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### SHAKE COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1795.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1796.  Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1797.  Defendants are direct and active participants in market dealings with Shake by using the images to advertise and promote Shake's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1798.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1799.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Shake prior to promoting Defendants' business by and through the misappropriation and use of Shake's images;

b.      failing to obtain authorization from Shake prior to the publication of Shake's images on Defendants' marketing and promotional materials;

c.      failing to compensate Shake for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Shake endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Shake sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1800.   Defendants' conduct described herein was misleading.

1801.   Defendants knew their unauthorized use and alteration of Shake's image, likeness and/or identity was misleading.

1802.   Defendants' unauthorized use and alteration of Shake's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1803.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1804.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Shake of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Shake.

1805.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Shake's rights.

1806.   Alternatively, the method and manner in which Defendants used the images of Shake further evinces that Defendants were aware or consciously disregarded that Shake did not consent to Defendants' use of the images to advertise Defendants' business.

1807.   Defendants have caused and will continue to cause irreparable harm to Shake, her reputation and brand by attributing to Shake the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1808.   Defendants' unauthorized use of Shake's image, likeness and identity directly and proximately caused and continues to cause damage to Shake in an amount to be determined at trial.

1809.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### SHAKE COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

1810.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1811.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1812.   Defendants knowingly appropriated, altered, used and disseminated Shake's image, likeness and/or identity without authorization or consent.

1813.   Defendants misappropriation of Shake's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Shake of certain rights.

1814.   Defendants' misconduct detailed in this Complaint denied Shake the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1815.   Defendants' appropriation and alteration of Shake's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1816.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1817.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Shake of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Shake.

1818.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Shake's rights.

1819.   Alternatively, the method and manner in which Defendants used the images of Shake further evinces that Defendants were aware of or consciously disregarded the fact that Shake did not consent to Defendants' use of the images to advertise Defendants' business.

1820.   Defendants' appropriation, use and alteration of Shake's image, likeness and identity without authority directly and proximately caused damage to Shake in an amount to be determined at trial.

1821.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SHAKE COUNT VI
### (Defamation as to all Defendants)

1822.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1823.   As described herein, Defendants have used, altered and published Shake's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1824.   Defendants' unauthorized use and publication of Shake's altered images, likeness and/or identity constitutes false representations or statements by implication about Shake's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1825.   Defendants' representations or statements by implication were knowingly false.

1826.   At all times relevant to matters raised in this Complaint, Defendants knew that Shake was not affiliated with or employed by the Resort, knew that Shake would not participate

in the events at the Resort, knew that Shake did not endorse Defendants' business, the Resort or Resort events, and knew that Shake had not been appropriately compensated for such use.

1827.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Shake images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1828.   Defendants' unauthorized use and publication of such altered Shake images were defamatory.

1829.   Defendants' unauthorized use and publication of such altered Shake images and knowingly false representations and/or statements by implication about Shake were made with actual malice.

1830.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Shake, which were defamatory.

1831.   Such false and defamatory representations and statements about Shake were published to innumerable current and prospective customers and promoters.

1832.   Defendants knew their conduct described herein was wrongful.

1833.   Defendants intended to deprive Shake of a property interest or, at a minimum, evinced a conscious disregard for the fact that Shake did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1834.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Shake or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Shake's rights.

1835.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Shake's reputation and marketability, among other injuries, in an amount to be determined at trial.

1836.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SHAKE COUNT VII
### (Defamation Per Se as to all Defendants)

1837.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1838.   As described herein, Defendants have used, altered and published Shake's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1839.   Defendants' unauthorized use and publication of Shake's altered images, likeness and/or identity constitutes false representations or statements by implication about Shake's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1840.   Defendants' representations or statements by implication were knowingly false.

1841.   At all times relevant to matters raised in this Complaint, Defendants knew that Shake was not affiliated with or employed by the Resort, knew that Shake would not participate

in the events at the Resort, knew that Shake did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Shake had not been appropriately compensated for such use.

1842.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Shake images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1843.   Defendants' unauthorized use and publication of such altered Shake images were defamatory.

1844.   Defendants' unauthorized use and publication of such altered Shake images and knowingly false representations or statements by implication about Shake were made with actual malice.

1845.   Defendants' representations and statements falsely impute to Shake a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Shake is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1846.   These false statements by implication and/or altered images constitute defamation *per se*.

1847.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1848.   Defendants knew their conduct described herein was wrongful.

1849.   Defendants intended to deprive Shake of a property interest or, at a minimum, evinced a conscious disregard for the fact that Shake did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1850.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Shake or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Shake's rights.

1851.   Defendants' publication of Shake's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Shake as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1852.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Shake's reputation and marketability, among other injuries, in an amount to be determined at trial.

1853.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## SHAKE COUNT VIII
### (Unjust Enrichment as to all Defendants)

1854.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1855.   Shake has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1856.   Defendants were aware that Shake's image, likeness and/or identity were valuable.

1857.   Defendants were aware of the resulting benefit from usage of Shake's image, likeness and/or identity.

1858.   Defendants have retained profits and other benefits conferred upon them by using Shake's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1859.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Shake's image, likeness and/or identity without paying fair value for the images.

1860.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SHAKE COUNT IX
### (Negligence as to all Defendants)

1861.   Shake hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1862.   Under the circumstances stated herein, Defendants owed a duty of care towards Shake.

1863.   Among other things, that duty included the obligation to deal with Shake and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Shake's image, likeness or identity in derogation of her rights, and to not cause harm to Shake.

1864.   Defendants breached that duty by using and altering Shake's image, likeness or identity without Shake's authorization, permission or consent.

1865.   Defendants' conduct and breach as described above directly and proximately caused injury to Shake's reputation, brand, goodwill and livelihood for which she has suffered damages.

1866.   WHEREFORE, Shake respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Tiffany Toth's Causes of Action*

### <u>TOTH COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising as to all Defendants)**

1867.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1868.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Toth from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1869.  Defendants used and altered Toth's image, likeness and/or identity as described herein without authority in order to create the perception that Toth worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1870.  Defendants' use and alteration of Toth's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1871.  Defendants' unauthorized use and alteration of Toth's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Toth worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Toth would participate in or appear at the specific events promoted in the advertisement.

1872.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Toth worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants'

or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

1873.   Upon information and belief, Defendants' unauthorized use or alteration of Toth's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Toth worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1874.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.   In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1875.   Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1876.   Defendants knew or should have known that their unauthorized use and alteration of Toth's image, likeness and identity would cause consumer confusion as described in this Complaint.

1877.   Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1878.   Defendants wrongful conduct as described herein was willful.

1879.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1880.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

1881.   The method and manner in which Defendants used the images of Toth further evinces that Defendants were aware of or consciously disregarded the fact that Toth did not consent to Defendants' use of the images to advertise Defendants' business.

1882.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1883.   Defendants' unauthorized use of Toth's image, likeness and identity directly and proximately caused and continue to cause damage to Toth in an amount to be determined at trial.

1884.  WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness as to all Defendants)

1885.  Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1886.  Toth has a statutory right of publicity under Section 540.08, Florida Statutes.

1887.  Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1888.  Despite the clear language of Section 540.08, Defendants published Toth's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

1889.  Toth's image, likeness or identity are recognizable in the photos identified in **Exhibit P.**

1890.  Defendants never sought permission nor authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1891.   Toth never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1892.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Toth's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1893.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Toth of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1894.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Toth of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1895.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

1896.   Alternatively, Defendants acted negligently towards Toth in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1897.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1898.   Defendants also have damaged Toth as a direct and proximate result of their unauthorized use of Toth's images without compensating Toth.

1899.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

1900.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1901.   Toth has a common law right of publicity.

1902.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Toth without express written or oral consent to such use.

1903.   Defendants published, printed, displayed and/or publicly used Toth's image, likeness or identity on their website and social media outlets, among others, for purposes of trade

and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

1904.   Toth's image, likeness or identity are recognizable in the photos identified in **Exhibit P.**

1905.   Defendants took these actions without Toth's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1906.   Toth never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

1907.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Toth's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1908.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Toth of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

1909.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Toth of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

1910.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

1911.  Alternatively, Defendants acted negligently towards Toth in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

1912.  Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1913.  Defendants also have damaged Toth as a direct and proximate result of their unauthorized use of Toth's image, likeness and/or identity without compensating Toth.

1914.  WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

1915.  Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1916.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1917.   Defendants are direct and active participants in market dealings with Toth by using the images to advertise and promote Toth's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

1918.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1919.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Toth prior to promoting Defendants' business by and through the misappropriation and use of Toth's images;

b.      failing to obtain authorization from Toth prior to the publication of Toth's images on Defendants' marketing and promotional materials;

c.      failing to compensate Toth for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Toth endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Toth sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1920.   Defendants' conduct described herein was misleading.

1921.   Defendants knew their unauthorized use and alteration of Toth's image, likeness and/or identity was misleading.

1922.   Defendants' unauthorized use and alteration of Toth's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1923.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1924.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

1925.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

1926.   Alternatively, the method and manner in which Defendants used the images of Toth further evinces that Defendants were aware or consciously disregarded that Toth did not consent to Defendants' use of the images to advertise Defendants' business.

1927.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

1928.   Defendants' unauthorized use of Toth's image, likeness and identity directly and proximately caused and continues to cause damage to Toth in an amount to be determined at trial.

1929.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**TOTH COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

1930.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1931.   Section 772.11 creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1932.   Defendants knowingly appropriated, altered, used and disseminated Toth's image, likeness and/or identity without authorization or consent.

1933.   Defendants misappropriation of Toth's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Toth of certain rights.

1934.   Defendants' misconduct detailed in this Complaint denied Toth the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1935.   Defendants' appropriation and alteration of Toth's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1936.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1937.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

1938.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

1939.  Alternatively, the method and manner in which Defendants used the images of Toth further evinces that Defendants were aware of or consciously disregarded the fact that Toth did not consent to Defendants' use of the images to advertise Defendants' business.

1940.  Defendants' appropriation, use and alteration of Toth's image, likeness and identity without authority directly and proximately caused damage to Toth in an amount to be determined at trial.

1941.  WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### TOTH COUNT VI
**(Defamation as to all Defendants)**

1942.  Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1943.  As described herein, Defendants have used, altered and published Toth's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1944.  Defendants' unauthorized use and publication of Toth's altered images, likeness and/or identity constitutes false representations or statements by implication about Toth's

affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

1945.   Defendants' representations or statements by implication were knowingly false.

1946.   At all times relevant to matters raised in this Complaint, Defendants knew that Toth was not affiliated with or employed by the Resort, knew that Toth would not participate in the events at the Resort, knew that Toth did not endorse Defendants' business, the Resort or Resort events, and knew that Toth had not been appropriately compensated for such use.

1947.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Toth images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1948.   Defendants' unauthorized use and publication of such altered Toth images were defamatory.

1949.   Defendants' unauthorized use and publication of such altered Toth images and knowingly false representations and/or statements by implication about Toth were made with actual malice.

1950.   Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Toth, which were defamatory.

1951.   Such false and defamatory representations and statements about Toth were published to innumerable current and prospective customers and promoters.

1952.   Defendants knew their conduct described herein was wrongful.

1953.   Defendants intended to deprive Toth of a property interest or, at a minimum, evinced a conscious disregard for the fact that Toth did not consent to Defendants' use or

alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

1954.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Toth's rights.

1955. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Toth's reputation and marketability, among other injuries, in an amount to be determined at trial.

1956.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT VII
### (Defamation Per Se as to all Defendants)

1957.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1958.   As described herein, Defendants have used, altered and published Toth's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

1959.   Defendants' unauthorized use and publication of Toth's altered images, likeness and/or identity constitutes false representations or statements by implication about Toth's

affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

1960.   Defendants' representations or statements by implication were knowingly false.

1961.   At all times relevant to matters raised in this Complaint, Defendants knew that Toth was not affiliated with or employed by the Resort, knew that Toth would not participate in the events at the Resort, knew that Toth did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Toth had not been appropriately compensated for such use.

1962.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Toth images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

1963.   Defendants' unauthorized use and publication of such altered Toth images were defamatory.

1964.   Defendants' unauthorized use and publication of such altered Toth images and knowingly false representations or statements by implication about Toth were made with actual malice.

1965.   Defendants' representations and statements falsely impute to Toth a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  Toth is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

1966.   These false statements by implication and/or altered images constitute defamation *per se*.

1967.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1968.   Defendants knew their conduct described herein was wrongful.

1969.   Defendants intended to deprive Toth of a property interest or, at a minimum, evinced a conscious disregard for the fact that Toth did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

1970.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Toth's rights.

1971.   Defendants' publication of Toth's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Toth as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1972.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Toth's reputation and marketability, among other injuries, in an amount to be determined at trial.

1973.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## TOTH COUNT VIII
### (Unjust Enrichment as to all Defendants)

1974.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1975.   Toth has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1976.   Defendants were aware that Toth's image, likeness and/or identity were valuable.

1977.   Defendants were aware of the resulting benefit from usage of Toth's image, likeness and/or identity.

1978.   Defendants have retained profits and other benefits conferred upon them by using Toth's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

1979.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Toth's image, likeness and/or identity without paying fair value for the images.

1980.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT IX
### (Negligence as to all Defendants)

1981.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1982.   Under the circumstances stated herein, Defendants owed a duty of care towards Toth.

1983.   Among other things, that duty included the obligation to deal with Toth and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Toth's image, likeness or identity in derogation of her rights, and to not cause harm to Toth.

1984.   Defendants breached that duty by using and altering Toth's image, likeness or identity without Toth's authorization, permission or consent.

1985.   Defendants' conduct and breach as described above directly and proximately caused injury to Toth's reputation, brand, goodwill and livelihood for which she has suffered damages.

1986.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Irina Voronina's Causes of Action*

## VORONINA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising as to all Defendants)

1987.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

1988.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Voronina from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1989.   Defendants used and altered Voronina's image, likeness and/or identity as described herein without authority in order to create the perception that Voronina worked at or was otherwise affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

1990.   Defendants' use and alteration of Voronina's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

1991.   Defendants' unauthorized use and alteration of Voronina's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Voronina worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or

authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Voronina would participate in or appear at the specific events promoted in the advertisement.

1992.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Voronina worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities

1993.   Upon information and belief, Defendants' unauthorized use or alteration of Voronina's image, likeness and/or identity as described herein did, in fact, deceive and/or cause consumer confusion as to whether Voronina worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

1994.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce.

Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.  In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

1995.   Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

1996.   Defendants knew or should have known that their unauthorized use and alteration of Voronina's image, likeness and identity would cause consumer confusion as described in this Complaint.

1997.   Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1998.   Defendants wrongful conduct as described herein was willful.

1999.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2000.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

2001.   The method and manner in which Defendants used the images of Voronina further evinces that Defendants were aware of or consciously disregarded the fact that Voronina did not consent to Defendants' use of the images to advertise Defendants' business.

2002.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2003.   Defendants' unauthorized use of Voronina's image, likeness and identity directly and proximately caused and continue to cause damage to Voronina in an amount to be determined at trial.

2004.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VORONINA COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness as to all Defendants)**

2005.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2006.   Voronina has a statutory right of publicity under Section 540.08, Florida Statutes.

2007.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising

purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2008.  Despite the clear language of Section 540.08, Defendants published Voronina's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

2009.  Voronina's image, likeness or identity are recognizable in the photos identified in **Exhibit Q.**

2010.  Defendants never sought permission nor authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2011.  Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2012.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Voronina's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2013.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Voronina of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

2014.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Voronina of a property interest after receipt of the First Demand Letter in

which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

2015.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

2016.   Alternatively, Defendants acted negligently towards Voronina in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

2017.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2018.   Defendants also have damaged Voronina as a direct and proximate result of their unauthorized use of Voronina's images without compensating Voronina.

2019.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

2020.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2021.   Voronina has a common law right of publicity.

2022.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Voronina without express written or oral consent to such use.

2023.   Defendants published, printed, displayed and/or publicly used Voronina's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

2024.   Voronina's image, likeness or identity are recognizable in the photos identified in **Exhibit Q.**

2025.   Defendants took these actions without Voronina's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2026.   Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2027.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Voronina's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2028.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Voronina of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

2029.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Voronina of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

2030.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

2031.   Alternatively, Defendants acted negligently towards Voronina in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

2032.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2033.   Defendants also have damaged Voronina as a direct and proximate result of their unauthorized use of Voronina's image, likeness and/or identity without compensating Voronina.

2034.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**VORONINA COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)**

2035.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2036.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2037.   Defendants are direct and active participants in market dealings with Voronina by using the images to advertise and promote Voronina's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

2038.    Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2039.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Voronina prior to promoting Defendants' business by and through the misappropriation and use of Voronina's images;

b.      failing to obtain authorization from Voronina prior to the publication of Voronina's images on Defendants' marketing and promotional materials;

c.      failing to compensate Voronina for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Voronina endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Voronina sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2040.   Defendants' conduct described herein was misleading.

2041.   Defendants knew their unauthorized use and alteration of Voronina's image, likeness and/or identity was misleading.

2042.   Defendants' unauthorized use and alteration of Voronina's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2043.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2044.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

2045.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

2046.   Alternatively, the method and manner in which Defendants used the images of Voronina further evinces that Defendants were aware or consciously disregarded that Voronina did not consent to Defendants' use of the images to advertise Defendants' business.

2047.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2048.   Defendants' unauthorized use of Voronina's image, likeness and identity directly and proximately caused and continues to cause damage to Voronina in an amount to be determined at trial.

2049.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**VORONINA COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft as to all Defendants)**

2050.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2051.   Section 772.11 creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2052.   Defendants knowingly appropriated, altered, used and disseminated Voronina's image, likeness and/or identity without authorization or consent.

2053.   Defendants misappropriation of Voronina's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Voronina of certain rights.

2054.   Defendants' misconduct detailed in this Complaint denied Voronina the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or

identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2055.   Defendants' appropriation and alteration of Voronina's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2056.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2057.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

2058.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

2059.   Alternatively, the method and manner in which Defendants used the images of Voronina further evinces that Defendants were aware of or consciously disregarded the fact that Voronina did not consent to Defendants' use of the images to advertise Defendants' business.

2060.   Defendants' appropriation, use and alteration of Voronina's image, likeness and identity without authority directly and proximately caused damage to Voronina in an amount to be determined at trial.

2061.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT VI
### (Defamation as to all Defendants)

2062.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2063.   As described herein, Defendants have used, altered and published Voronina's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

2064.   Defendants' unauthorized use and publication of Voronina's altered images, likeness and/or identity constitutes false representations or statements by implication about Voronina's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

2065.   Defendants' representations or statements by implication were knowingly false.

2066.   At all times relevant to matters raised in this Complaint, Defendants knew that Voronina was not affiliated with or employed by the Resort, knew that Voronina would not participate in the events at the Resort, knew that Voronina did not endorse Defendants' business, the Resort or Resort events, and knew that Voronina had not been appropriately compensated for such use.

2067.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Voronina images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

2068.  Defendants' unauthorized use and publication of such altered Voronina images were defamatory.

2069.  Defendants' unauthorized use and publication of such altered Voronina images and knowingly false representations and/or statements by implication about Voronina were made with actual malice.

2070.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Voronina, which were defamatory.

2071.  Such false and defamatory representations and statements about Voronina were published to innumerable current and prospective customers and promoters.

2072.  Defendants knew their conduct described herein was wrongful.

2073.  Defendants intended to deprive Voronina of a property interest or, at a minimum, evinced a conscious disregard for the fact that Voronina did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

2074.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Voronina's rights.

2075.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Voronina's reputation and marketability, among other injuries, in an amount to be determined at trial.

2076.  WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants'

unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT VII
### (Defamation Per Se as to all Defendants)

2077.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2078.   As described herein, Defendants have used, altered and published Voronina's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

2079.   Defendants' unauthorized use and publication of Voronina's altered images, likeness and/or identity constitutes false representations or statements by implication about Voronina's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

2080.   Defendants' representations or statements by implication were knowingly false.

2081.   At all times relevant to matters raised in this Complaint, Defendants knew that Voronina was not affiliated with or employed by the Resort, knew that Voronina would not participate in the events at the Resort, knew that Voronina did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Voronina had not been appropriately compensated for such use.

2082.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Voronina images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

2083.   Defendants' unauthorized use and publication of such altered Voronina images were defamatory.

2084.   Defendants' unauthorized use and publication of such altered Voronina images and knowingly false representations or statements by implication about Voronina were made with actual malice.

2085.   Defendants' representations and statements falsely impute to Voronina a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   Voronina is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

2086.   These false statements by implication and/or altered images constitute defamation *per se*.

2087.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2088.   Defendants knew their conduct described herein was wrongful.

2089.   Defendants intended to deprive Voronina of a property interest or, at a minimum, evinced a conscious disregard for the fact that Voronina did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

2090.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Voronina's rights.

2091.   Defendants' publication of Voronina's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Voronina as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2092.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Voronina's reputation and marketability, among other injuries, in an amount to be determined at trial.

2093.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### VORONINA COUNT VIII
### (Unjust Enrichment as to all Defendants)

2094.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2095.   Voronina has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2096.   Defendants were aware that Voronina's image, likeness and/or identity were valuable.

2097.   Defendants were aware of the resulting benefit from usage of Voronina's image, likeness and/or identity.

2098.   Defendants have retained profits and other benefits conferred upon them by using Voronina's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

2099.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Voronina's image, likeness and/or identity without paying fair value for the images.

2100.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT IX
### (Negligence as to all Defendants)

2101.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2102.   Under the circumstances stated herein, Defendants owed a duty of care towards Voronina.

2103.   Among other things, that duty included the obligation to deal with Voronina and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Voronina's image, likeness or identity in derogation of her rights, and to not cause harm to Voronina.

2104.   Defendants breached that duty by using and altering Voronina's image, likeness or identity without Voronina's authorization, permission or consent.

2105.   Defendants' conduct and breach as described above directly and proximately caused injury to Voronina's reputation, brand, goodwill and livelihood for which she has suffered damages.

2106.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Laurie Ann Young's Causes of Action*

### <u>YOUNG COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising as to all Defendants)

2107.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2108.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Young from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2109.   Defendants used and altered Young's image, likeness and/or identity as described herein without authority in order to create the perception that Young worked at or was otherwise

affiliated with the Resort, endorsed Defendants, the Resort or the Resort's business activities, and/or consented to or authorized Defendants' or the Resort's usage of her images in order to advertise, promote, and market Defendants business, the Resort, and/or the Resort's events and activities.

2110.   Defendants' use and alteration of Young's image, likeness and/or identity to advertise, promote and market Defendants' business, the Resort, and/or the Resort's events and activities as described in this Complaint was false and misleading.

2111.   Defendants' unauthorized use and alteration of Young's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Young worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities, and/or that Young would participate in or appear at the specific events promoted in the advertisement.

2112.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Resort, as to the general quality of attendees and participants at the Resort and in its events, as well as specifically whether Young worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events or activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.

2113.   Upon information and belief, Defendants' unauthorized use or alteration of Young's image, likeness and/or identity as described herein did, in fact, deceive and/or cause

consumer confusion as to whether Young worked at or was otherwise affiliated with the Resort, endorsed Defendants' business, the Resort or the Resort's events and activities, or consented to or authorized Defendants' or the Resort's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Resort's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Caliente Vacation Club, visit the Resort, and participate in events at the Resort and had a material effect and impact on the decision of members and prospective members and participants to join the Caliente Vacation Club, visit the Resort and take part in the events at the Resort.

2114.   Defendants' advertisements, promotions and marketing of the Caliente Vacation Club, the Resort and events at the Resort occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from several different states across the United States.   In addition to membership lists consisting of members of the Caliente Vacation Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Resort events.

2115.   Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Resort and its activities and attracting clientele to the Resort.

2116.   Defendants knew or should have known that their unauthorized use and alteration of Young's image, likeness and identity would cause consumer confusion as described in this Complaint.

2117.   Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2118.   Defendants wrongful conduct as described herein was willful.

2119.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2120.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

2121.   The method and manner in which Defendants used the images of Young further evinces that Defendants were aware of or consciously disregarded the fact that Young did not consent to Defendants' use of the images to advertise Defendants' business.

2122.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2123.   Defendants' unauthorized use of Young's image, likeness and identity directly and proximately caused and continue to cause damage to Young in an amount to be determined at trial.

2124.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness as to all Defendants)

2125.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2126.   Young has a statutory right of publicity under Section 540.08, Florida Statutes.

2127.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2128.   Despite the clear language of Section 540.08, Defendants published Young's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Resort and Resort's events and activities.

2129.   Young's image, likeness or identity are recognizable in the photos identified in **Exhibit R.**

2130.   Defendants never sought permission nor authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2131.   Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2132.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Young's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2133.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Young of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

2134.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Young of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

2135.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

2136.   Alternatively, Defendants acted negligently towards Young in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

2137.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2138.   Defendants also have damaged Young as a direct and proximate result of their unauthorized use of Young's images without compensating Young.

2139.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive

damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness as to all Defendants)

2140.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2141.   Young has a common law right of publicity.

2142.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Young without express written or oral consent to such use.

2143.   Defendants published, printed, displayed and/or publicly used Young's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Resort and Resort's events and activities.

2144.   Young's image, likeness or identity are recognizable in the photos identified in **Exhibit R.**

2145.   Defendants took these actions without Young's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2146.   Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Resort or any Resort event or activity.

2147.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Young's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2148.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Young of a property interest during the entire time period in which the unauthorized use took place prior to receiving the First Demand Letter.

2149.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Young of a property interest after receipt of the First Demand Letter in which each Plaintiff's objection to the unauthorized use was presented to Defendants along with the specific offending images.

2150.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

2151.   Alternatively, Defendants acted negligently towards Young in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Resort and the Resort's events and activities.

2152.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2153.   Defendants also have damaged Young as a direct and proximate result of their unauthorized use of Young's image, likeness and/or identity without compensating Young.

2154.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act as to all Defendants)

2155.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2156.   Section 501.204(1), Florida Statutes, ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2157.   Defendants are direct and active participants in market dealings with Young by using the images to advertise and promote Young's claimed services not only to members of the Caliente Vacation Club, but to the general public in interstate commerce.

2158.   Defendants' at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2159.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Young prior to promoting Defendants' business by and through the misappropriation and use of Young's images;

b.      failing to obtain authorization from Young prior to the publication of Young's images on Defendants' marketing and promotional materials;

c.      failing to compensate Young for the appropriation of her images on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Young endorsed the Defendants' business, or would be present at Defendants' events; and

e.      falsely representing by implication that Young sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2160.   Defendants' conduct described herein was misleading.

2161.   Defendants knew their unauthorized use and alteration of Young's image, likeness and/or identity was misleading.

2162.   Defendants' unauthorized use and alteration of Young's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2163.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2164.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

2165.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

2166.   Alternatively, the method and manner in which Defendants used the images of Young further evinces that Defendants were aware or consciously disregarded that Young did not consent to Defendants' use of the images to advertise Defendants' business.

2167.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Resort.

2168.   Defendants' unauthorized use of Young's image, likeness and identity directly and proximately caused and continues to cause damage to Young in an amount to be determined at trial.

2169.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft as to all Defendants)

2170.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2171.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2172.   Defendants knowingly appropriated, altered, used and disseminated Young's image, likeness and/or identity without authorization or consent.

2173.   Defendants misappropriation of Young's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Young of certain rights.

2174.   Defendants' misconduct detailed in this Complaint denied Young the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants of her image, and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2175.   Defendants' appropriation and alteration of Young's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2176.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2177.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

2178.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

2179.   Alternatively, the method and manner in which Defendants used the images of Young further evinces that Defendants were aware of or consciously disregarded the fact that Young did not consent to Defendants' use of the images to advertise Defendants' business.

2180.   Defendants' appropriation, use and alteration of Young's image, likeness and identity without authority directly and proximately caused damage to Young in an amount to be determined at trial.

2181.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT VI
### (Defamation as to all Defendants)

2182.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2183.   As described herein, Defendants have used, altered and published Young's image, likeness and/or identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

2184.   Defendants' unauthorized use and publication of Young's altered images, likeness and/or identity constitutes false representations or statements by implication about Young's affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.

2185.   Defendants' representations or statements by implication were knowingly false.

2186.   At all times relevant to matters raised in this Complaint, Defendants knew that Young was not affiliated with or employed by the Resort, knew that Young would not participate

in the events at the Resort, knew that Young did not endorse Defendants' business, the Resort or Resort events, and knew that Young had not been appropriately compensated for such use.

2187.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Young images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

2188.   Defendants' unauthorized use and publication of such altered Young images were defamatory.

2189.   Defendants' unauthorized use and publication of such altered Young images and knowingly false representations and/or statements by implication about Young were made with actual malice.

2190.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Young, which were defamatory.

2191.   Such false and defamatory representations and statements about Young were published to innumerable current and prospective customers and promoters.

2192.   Defendants knew their conduct described herein was wrongful.

2193.   Defendants intended to deprive Young of a property interest or, at a minimum, evinced a conscious disregard for the fact that Young did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Resort or Defendants' business interests.

2194.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Young or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Young's rights.

2195.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Young's reputation and marketability, among other injuries, in an amount to be determined at trial.

2196.  WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT VII
### (Defamation Per Se as to all Defendants)

2197.  Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2198.  As described herein, Defendants have used, altered and published Young's image, likeness and identity without her authority or consent in order to promote the Resort and its activities, attract clientele to the Resort, and generate revenue for Defendants.

2199.  Defendants' unauthorized use and publication of Young's altered images, likeness and/or identity constitutes false representations or statements by implication about Young's affiliation with or employment by the Resort, or her participation in or endorsement of the advertised activities at the Resort.

2200.  Defendants' representations or statements by implication were knowingly false.

2201.  At all times relevant to matters raised in this Complaint, Defendants knew that Young was not affiliated with or employed by the Resort, knew that Young would not participate

in the events at the Resort, knew that Young did not endorse Defendants' business activities, the Resort or the Resort events, and knew that Young had not been appropriately compensated for such use.

2202.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Young images to promote the Resort, attract clientele to the Resort, and generate revenue for Defendants.

2203.   Defendants' unauthorized use and publication of such altered Young images were defamatory.

2204.   Defendants' unauthorized use and publication of such altered Young images and knowingly false representations or statements by implication about Young were made with actual malice.

2205.   Defendants' representations and statements falsely impute to Young a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   Young is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Resort for which her image, likeness and identity was used.

2206.   These false statements by implication and/or altered images constitute defamation *per se*.

2207.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2208.   Defendants knew their conduct described herein was wrongful.

2209.   Defendants intended to deprive Young of a property interest or, at a minimum, evinced a conscious disregard for the fact that Young did not consent to Defendants' use,

alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Resort or the Resort's events and activities.

2210.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Young or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Young's rights.

2211.   Defendants' publication of Young's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Young as a "swinger" at the Resort who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2212.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Young's reputation and marketability, among other injuries, in an amount to be determined at trial.

2213.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## YOUNG COUNT VIII
### (Unjust Enrichment as to all Defendants)

2214.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2215.   Young has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2216.   Defendants were aware that Young's image, likeness and/or identity were valuable.

2217.   Defendants were aware of the resulting benefit from usage of Young's image, likeness and/or identity.

2218.   Defendants have retained profits and other benefits conferred upon them by using Young's image, likeness and/or identity to promote and advertise Defendants' business, the Resort or Resort events.

2219.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Young's image, likeness and/or identity without paying fair value for the images.

2220.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT IX
### (Negligence as to all Defendants)

2221.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-306 as if fully alleged herein.

2222.   Under the circumstances stated herein, Defendants owed a duty of care towards Young.

2223.   Among other things, that duty included the obligation to deal with Young and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Young's image, likeness or identity in derogation of her rights, and to not cause harm to Young.

2224.   Defendants breached that duty by using and altering Young's image, likeness or identity without Young's authorization, permission or consent.

2225.   Defendants' conduct and breach as described above directly and proximately caused injury to Young's reputation, brand, goodwill and livelihood for which she has suffered damages.

2226.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, as follows:

(a)   Adjudging and decreeing that Defendants have impermissibly and falsely implied each Plaintiff's association with, voluntary and authorized promotion, advertising, marketing and endorsement of Defendants' business, the Resort or the Resort's events and activities, have violated each Plaintiff's right of privacy, and have violated each Plaintiff's right of publicity;

(b)      Permanently enjoining and restraining Defendants from further violations and misappropriation of each Plaintiff's image, likeness and identity;

(c)      Awarding each Plaintiff damages including, without limitation, actual or compensatory-type damages, exclusive of lost profits and disgorgement of profits, and exclusive of special, consequential, exemplary or punitive damages, from the multiple instances of unauthorized use and alteration of each Plaintiff's image, likeness and/or identity, false advertising, deceptive practices, violation of right of privacy, violation of right of publicity, defamation and defamation *per se* in an amount to be determined at trial but in no event less than **$1,620,000** aggregated across all Plaintiffs;

(d)      Requiring Defendants to account to each Plaintiff for any and all earnings and profits derived by Defendants from each violation alleged herein;

(e)      Requiring Defendants to disgorge any fees, profits, or money to each Plaintiff by which it has been unjustly enriched;

(f)      Awarding each Plaintiff punitive damages in an amount equal to *at least* twice the actual damages awarded at trial but in no event less than **$3,240,000** aggregated across all Plaintiffs;

(g)      Awarding each Plaintiff her and his costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees;

(h)      Granting such other, further or different relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: November 13, 2015

Respectfully Submitted,

*[signature]*

**RICHARD H. MARTIN**
Florida Bar Number:  579831
Email:  richard.martin@akerman.com
**AKERMAN LLP**
401 E. Jackson Street
Suite 1700
Tampa, FL  33602-5250
Phone:  (813) 223-7333
Fax:  (813) 223-2837

**DANIEL B. ROSENTHAL**
Florida Bar Number: 711934
email: daniel.rosenthal@akerman.com
**AKERMAN LLP**
2424 North Federal Highway
Suite 410
Boca Raton, FL 33431
Phone: (561) 862-4000
Fax: (561) 368-4668

And

**CHRISTOPHER G. OPRISON**
Washington D.C. Bar No. 489087
Texas Bar No. 24035601
Virginia Bar No. 41765
Email: christopher.oprison@akerman.com
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Phone: (202) 824-1703
Fax: (202) 393-5959
*Special Admission to Be Applied For*

# EXHIBIT A
# PART 1



**Christopher G. Oprison**

Akerman LLP
The Victor Building
750 9th Street, N.W., Suite 750
Washington, DC 20001
Tel: 202.824.1703
Dir Fax: 202.585.6207
christopher.oprison@akerman.com

September 10, 2015

## **VIA CERTIFIED US MAIL**

Caliente Resorts, LLC
d/b/a Caliente Resort
21240 Gran Via Boulevard
Land O' Lakes, FL 34637
Attn: Carl Anderson, Registered Agent

Caliente Vacation Club, LLC
21240 Gran Via Boulevard
Land O' Lakes, FL 24637
Attn: Carl Anderson, Registered Agent

Caliente Vacation Club LLC
19235 US Highway 41 North
Lutz, FL 33549
Attn: Carl Anderson, Registered Agent

> *Re:    Notice of Potential Claims, Cease & Desist, Demand for Payment, and
> Document Preservation Request*

Dear Mr. Anderson:

Akerman LLP ("Akerman" or "Firm") represents models Irina Voronina, Dessie Mitcheson, Tiffany Toth, Alana Campos, Carrie Minter, Jessica Hinton, Ursula Mayes, Clark Gilmer, John Coulter, Jessica Burciaga, Amber Lancaster and Jaime Edmondson (collectively, the "Models"). I write in connection with the theft and unauthorized use of the Models' photographs and images (collectively, the "Images") by Caliente Resorts, LLC, d/b/a Caliente Resort, and Caliente Vacation Club, LLC (collectively, "Caliente") to promote and market events, including various monthly "lifestyle" events at Caliente.

By this letter, the Models, through the undersigned counsel, provide notice of prospective claims we intend to file absent a satisfactory negotiated resolution consisting of compliance with at least the following demands:

akerman.com

- that Caliente immediately cease and desist any further use and dissemination of the Models' Images – illustrative examples presently known to us are included with the "Preliminary Expert Report in the Matters of Caliente Resorts LLC, d/b/a Caliente Resorts and Caliente Vacation Club LLC Unlawful Use of Models' Images" by Stephen Chamberlin ("Report"), enclosed herewith as **Attachment 1;**

- that Caliente provide written disclaimers of its misuse and written acknowledgement of its intention to permanently comply with this cease and desist demand;

- that Caliente immediately remove any and all unauthorized images from a Caliente-owned, hosted, controlled or contributed website as well as any social media outlet (Facebook, Twitter, Instagram, YouTube, Tumbler, etc.);

- that Caliente pay **$1,485,000** in aggregate compensatory, or *actual*, single damages[1] to compensate the Models for the theft and unauthorized use of the Images, as discussed in the Report;

- that Caliente disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information; and

- that Caliente preserve all records (electronic and hard copy) relevant to the matters raised herein for use in litigation pursuant to the Document Preservation Demand enclosed herewith as **Attachment 2**.

This Notice and Demand is provided as a courtesy to afford Caliente the opportunity to resolve the collective matters without incurring the extensive costs associated with litigation and to avoid the heightened and very real risk of increased damages stemming from discovery of new infringements by Caliente, the imposition of treble damages, punitive damages, disgorgement of profits, and assessment of attorneys' fees to cover the cost of litigating this matter. The monetary demand, set forth *infra* at 9-11 is valid and effective for 30 days from the date of receipt of this letter.

## BACKGROUND

### 1. Caliente Resorts, LLC d/b/a Caliente Resorts and Caliente Vacation Club LLC

Caliente Resorts – specifically, the Caliente-Tampa and Caliente-Caribe Resorts – are private, "clothing optional" luxury resorts marketing and catering to individuals engaging in "swinger" or open relationship lifestyle events. By way of illustration only, according to its Caliente-Tampa "events" webpage, there are multiple events throughout each month and, for many of these, Images of one or more of the Models are used to market and promote the events. Caliente also partners with AAHZ, a party planner or coordinator that helps promote, market and advertise for the "erotic" or swinger lifestyle events, and coordinates, or helps to coordinate, the entertainment at Caliente Resorts and other "clothing optional" resorts.

---

[1] As opposed to the treble damages statutorily available as discussed below, which would bring the baseline figure to **$4,455,000** if required to litigate this matter fully, even without considering disgorgement, attorneys' fees and costs, or punitive, consequential or other damages.

Caliente has pirated the Images of the Models. The advertisements containing the unauthorized Images identified herein were never negotiated or purchased by Caliente and have been posted by Caliente for the purpose of advertising, promoting and marketing its own events. Caliente's actions are misleading and injurious to our clients by falsely and fraudulently representing that each Model depicted is employed by Caliente or, worse, endorses, sanctions, supports and/or is an active participant in the swinger lifestyle events hosted at Caliente. They also create the false and fraudulent representation that each Model depicted in the advertisement will attend each event and participate in the activities advertised.

## 2. Models and Actual Damages

The Models whose Images Caliente has pirated make a living by promoting their images and likenesses to various clients as well as relying on their reputations and own brands for modeling, acting, hosting, and other opportunities. Each Model's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings. Each of the Models has worked tirelessly and diligently to establish herself or himself as reliable, reputable and professional, and each must necessarily be vigilant in protecting her or his brand from harm, taint, or other diminution. Any improper or unauthorized use of likeness, particularly by an entity or individual involved in an undesirable and non-reputable industry such as swinger or spouse-swapping lifestyle resorts substantially injures the career and career opportunities of each Model. To that end, associating the likeness of any of these Models with a deviant, swingers lifestyle resort and culture thinly veiled as a "clothing optional" resort club is injurious to each Model's respective reputation and livelihood.

Enclosed as Attachment 1 is the Report by our industry expert Mr. Stephen Chamberlin, a renowned and highly-experienced model and talent industry agent. As its title suggests, the Report is "preliminary" at this point. Nonetheless, it is customary practice in the industry, and holds true for each of the highly successful Models identified in this Demand Letter, that (a) each Model takes an active role in vetting and selecting the companies she/he chooses to work with, (b) the negotiated compensation a Model earns depends on the work she/he is hired to do, who the client is, and how her/his images are going to be used, (c) whenever hired to work, the Model or her/his agency obtains documents (releases) giving prospective clients (end-users) written permission to use one or more defined images and likenesses for limited usage, based on very specific terms, and (d) the terms and type of image usage agreed to is negotiated at arm's-length and is strictly defined by the parties to each such transaction.

At no time did Caliente seek authority through appropriate channels to use any of the Model Images for any purpose. No Model ever agreed, nor would any Model have agreed, to the use of any Images by Caliente or any other "erotic" or swinger lifestyle or clothing optional club or resort in any way, particularly in the false light of each Model appearing to endorse, support, participate in or attend the types of events hosted at Caliente.

Each Model has worked vigilantly and diligently to build up her/his own modeling, acting and business brand. Each has been injured by the manner in which his/her Images now are cheapened by Caliente's piracy and unauthorized use of those Images, and, each has sustained significant damages for which they are entitled to compensation. The precise scope and extent of

Caliente's unauthorized use continues to develop based on our ongoing investigation. Accordingly, the Images identified in this Demand Letter and reflected in the Report likely represent only a small subset of the Images unlawfully pirated and used by Caliente and, as such, the damages calculation will continue to increase as facts continue to develop. The Report incorporates true and correct copies of screen captures of the Caliente website (and other marketing materials) depicting the Images pirated and used without authority for the following Models, and aggregated *compensatory* damages for the known infringements[2]:

a) **Irina Voronina**: As set forth in the Report, Ms. Voronina is a successful international model and actress with numerous accomplishments and paid opportunities. *See* Report at 8-9. In all instances of commercial marketing and promotion of her images, however, Ms. Voronina granted authority for such use and was appropriately compensated. Not true for the images pirated and used without authority by Caliente to promote an "Erotic Halloween Ball" event (Oct 24, 2015) in both an advertisement and in social media. *See id.* at 9. Rather, Caliente stole Ms. Voronina's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Voronina and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $20,000 which, when multiplied by the number and types of unauthorized usages, brings the *actual damages* to at least **$40,000**. *See id.* at 8.

b) **Dessie Mitcheson**: As set forth in the Report, Ms. Mitcheson is a successful TV personality, model and actress with numerous accomplishments and paid opportunities. *See* Report at 10-11. In all instances of commercial marketing and promotion of her images, however, Ms. Mitcheson granted authority for such use and was appropriately compensated. Not true for the two images pirated and used without authority by Caliente to promote "AAHZ's Metallic Party" (May 17, 2014), a "White Christmas Party" (Dec 20, 2014), and the "Great Gatsby" event (Feb 21, 2015) in advertisements and in social media. *See id.* at 11. Rather, Caliente stole Ms. Mitcheson's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Mitcheson and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $30,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$240,000**. *See id.* at 10.

c) **Tiffany Toth**: As set forth in the Report, Ms. Toth is a successful model and actress with numerous accomplishments and paid opportunities. *See* Report at 12-13. In all instances of commercial marketing and promotion of her images, however, Ms. Toth granted authority for such use and was appropriately compensated. Not true for the two images pirated and used without authority by Caliente to promote the "American Bombshell" event (July 4, 2015), and the "Sexy Bare Bottoms Club: Shimmer and Shine" event (July 11, 2015) in advertisements, social media, on a coupon and through involuntary branding of her image. *See*

---

[2] The compensatory, *or actual,* damages presented below for each model (1) are irrespective of special, consequential, exemplary, punitive or other damages, as well as attorneys' fees and costs or disgorgement of profits, which may be proven and recovered if compelled to litigate, (2) do not account for the fact that Caliente's piracy of each Model's image constitutes a continuous and ongoing infringement which compounds daily for the duration that each unauthorized image remains in circulation by Caliente, and (3) are based on infringements known at the time of the preparation of this Demand Letter and may be amplified to the extent our ongoing investigation efforts reveal additional unauthorized images following your receipt of this letter.

*id.* at 13. Rather, Caliente stole Ms. Toth's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Toth and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $40,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$240,000**. *See id.* at 12.

d)  **Alana Campos**: As set forth in the Report, Ms. Campos is a successful model and actress with numerous accomplishments and paid opportunities. *See* Report at 14-15. In all instances of commercial marketing and promotion of her images, however, Ms. Campos granted authority for such use and was appropriately compensated. Not true for the two images pirated and used without authority by Caliente to promote the "Nothing Butt Net" event (June 21, 2014) and the "AAHZcon Party" (March 21, 2015) hosted at Caliente Resort in advertising, social media and involuntary branding. *See id.* at 15. Rather, Caliente stole Ms. Campos' images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Campos and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $30,000, which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$150,000**. *See id.* at 14.

e)  **Carrie Minter**: As set forth in the Report, Ms. Minter is a successful model, actress and businesswoman with numerous accomplishments and paid opportunities. See Report at 16-17. In all instances of commercial marketing and promotion of her images, however, Ms. Minter granted authority for such use and was appropriately compensated. Not true for the image pirated and used without authority by Caliente to promote the "Nothing Butt Net" event (June 21, 2014) in advertisements, on social media and through involuntary branding of her image. *See id.* at 17. Rather, Caliente stole Ms. Minter's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Minter and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $25,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$75,000**. *See id.* at 16.

f)  **Jessica Hinton**: As set forth in the Report, Ms. Hinton is a successful model, actress, TV personality and host, and independent businesswoman with numerous accomplishments and paid opportunities. *See* Report at 18-19. In all instances of commercial marketing and promotion of her images, however, Ms. Hinton granted authority for such use and was appropriately compensated. Not true for the image pirated and used without authority by Caliente to promote the "AAHZcon Party" (March 21, 2015) hosted at Caliente Resort in advertisements and through social media. *See id.* at 19. Rather, Caliente stole Ms. Hinton's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Hinton and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $30,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$60,000**. *See id.* at 18.

g)  **Ursula Mayes**: As set forth in the Report, Ms. Mayes is a successful model and actress with numerous accomplishments and paid opportunities. *See* Report at 20-21. In all instances of commercial marketing and promotion of her images, however, Ms. Mayes granted authority for such use and was appropriately compensated. Not true for the images pirated and

used without authority by Caliente to promote the "Nothing Butt Net" event (June 21, 2014), the "AAHZ's Fetish Ball: Slap & Tickle" event (Jan 17, 2015), and the "Great Gatsby" event (Feb 21, 2015) in advertisements, through social media and through involuntary branding of her image. *See id.* at 21. Rather, Caliente stole Ms. Mayes' images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Mayes and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $20,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$100,000**. *See id.* at 20.

h) **Clark Gilmer**: As set forth in the Report, Ms. Gilmer is a successful swimsuit and fashion model and actress with numerous accomplishments and paid opportunities. *See* Report at 22-23. In all instances of commercial marketing and promotion of her images, however, Ms. Gilmer granted authority for such use and was appropriately compensated. Not true for the images pirated and used without authority by Caliente to promote the "Nothing Butt Net" event (June 21, 2014), and "AAHZ's Fetish Ball: Slap & Tickle" event (Jan 17, 2015) at Caliente Resort, in advertisements, in social media and through involuntary branding of her image. *See id.* at 23. Rather, Caliente stole Ms. Gilmer's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Gilmer and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $20,000. The aggregate value of Ms. Gilmer's *actual damages,* when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$120,000**. *See id.* at 22.

i) **John Coulter**: As set forth in the Report, Mr. Coulter is a successful artist, graphic designer, model and actor with numerous accomplishments and paid opportunities. *See* Report at 24-25. In all instances of commercial marketing and promotion of his images, however, Mr. Coulter granted authority for such use and was appropriately compensated. Not true for the images pirated and used without authority by Caliente to promote the "Great Gatsby Party" (Feb 21, 2015) hosted at Caliente Resorts in advertisement and social media. *See id.* at 25. Rather, Caliente stole Mr. Coulter's image and used it without his authority for its own commercial purposes without compensation. Even if Mr. Coulter and his agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $10,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$10,000**. *See id.* at 24.

j) **Jessica Burciaga**: As set forth in the Report, Ms. Burciaga is a successful model and independent businesswoman with numerous accomplishments and paid opportunities. *See* Report at 26-27. In all instances of commercial marketing and promotion of her images, however, Ms. Burciaga granted authority for such use and was appropriately compensated. Not true for the images pirated and used without authority by Caliente to promote the Resort itself through advertising, social media and third party promotion. *See id.* at 27. Rather, Caliente stole Ms. Burciaga's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Burciaga and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $50,000, which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least **$150,000**. *See id.* at 26.

k) **Amber Lancaster**: As set forth in the Report, Ms. Lancaster is a successful model, host and actress with numerous accomplishments and paid opportunities. *See* Report at 28-29. In all instances of commercial marketing and promotion of her images, however, Ms. Lancaster granted authority for such use and was appropriately compensated. Not true for the images stolen and used without authority by Caliente to promote a Happy St. Patrick's Day Party at Caliente through social media and branding. *See id.* at 29. Rather, Caliente stole Ms. Lancaster's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Lancaster and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $100,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least $200,000. *See id.* at 28.

l) **Jaime Edmondson**: As set forth in the Report, Ms. Edmondson is a successful model, host and actress with numerous accomplishments and paid opportunities. *See* Report at 30-31. In all instances of commercial marketing and promotion of her images, however, Ms. Edmondson granted authority for such use and was appropriately compensated. Not true for the images stolen and used without authority by Caliente to promote Caliente's Football and Pool Party events through social media and branding. *See id.* at 31. Rather, Caliente stole Ms. Edmondson's images and used them without her authority for its own commercial purposes without compensation. Even if Ms. Edmondson and her agent would have consented to a limited use by Caliente, each image would have been valued at a minimum of $50,000 which, when multiplied by the number and type of unauthorized usages, brings the *actual damages* to at least $100,000. *See id.* at 30.

## APPLICABLE LAW

Detailed below are some (but not all) of the legal claims available to the Models that are specific to the harms alleged. The claims identified below are separate and apart from (and in addition to) the violations of FDUTPA, actionable negligence, unjust enrichment and similar claims that the Models would assert in any legal action.

### 1. Statutory/Common Law Right of Publicity (Unauthorized Appropriation of Name/Likeness)

The unauthorized appropriation of a person's name or likeness is protected by statute, *see* Fla. Stat. Ann. §540.08(1), and common law right of publicity. *See Agency for Health Care Administration v. Associated Industries of Florida, Inc.,* 678 So. 2d 1239 (Fla. 1996)*; see also Epic Metals Corp. v. Condec, Inc.,* 867 F. Supp. 1009 (M.D. Fla. 1994). As the right of publicity has been formally recognized by statute in Florida, decisions generally cite the statutory right over the common law right. *See Facchina v. Mutual Benefits Corp.*, 735 So. 2d 499 (Fla. 4th Dist. Ct. App. 1999). Both are independent actions that can be brought simultaneous and give rise to separate damages. *See* Fla. Stat. Ann. § 540.08(6); *see also Coton v. Televised Visual X-Ography, Inc.,* 740 F. Supp. 2d 1299, 1308 (M.D. Fla. 2010) ("plaintiff may assert common law and statutory claims for misappropriation in the same action").

The "right of publicity" under Florida law is intended to preserve an individual's right to own, protect, and commercially market, promote or otherwise use his or her name or likeness, including photographs. A person whose likeness is used without consent may bring an action to

enjoin the unauthorized use and to recover damages for loss or injury sustained by the publication, including a reasonable royalty, and punitive damages. Violations of the right of publicity statute are actionable where the use is for the defendant's benefit with a commercial objective, that is, to promote a product or service. *See Tyne v. Time Warner Entm't Co.*, L.P., 901 So. 2d 802 (Fla. 2005); *see also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006); *Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *National Football League v. Alley, Inc.*, 624 F. Supp. 6 (S.D. Fla. 1983). The publication or printing of a product (or service) for advertising purposes has been found sufficient to constitute a statutory violation, even when there was no distribution. *Weinstein Design Group, Inc. v. Fielder*, 884 So. 2d 990 (Fla. Dist. Ct. App. 2004).

Each Image pirated by Caliente, and each unauthorized use of that Image by Caliente to market, promote and advertise for erotic swinger and clothing optional lifestyle events for commercial purposes – of which we have discovered dozens of instances while our investigation continues – constitutes a separate and distinct statutory and common law violation. Under Florida's statutory right of publicity, each Model may enjoin Caliente's infringing conduct and recover damages for any loss or injury sustained including an amount equal to "a reasonable royalty" as well as *punitive or exemplary damages.* Fla. Stat. Ann. § 540.08(2). Moreover, under the common law right of publicity, the Models may recover damages for the unauthorized use without proving actual harm or damage, *see Zim v. Western Pub. Co.,* 573 F.2d 1318 (5th Cir. 1978); *see also Cason v. Baskin,* 20 So. 2d 243 (Fla. 1944), and may recover lost profits and prejudgment interest on the damages awarded. *See Bosem v. Musa Holdings,* 46 So. 3d 42 (Fla. 2010). The Models intend to pursue claims under Florida's statutory and common law right of publicity absent Caliente's immediate compliance with the demands set forth in this letter.

## 2. Federal and State Unfair Competition/False Advertising

The Lanham Act bars the use of false designations or origin or false information and, specifically, prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ," 15 U.S.C. § 1125(a). A violation occurs when, as here, each Model's identity and likeness was used in a commercial promotion misrepresenting that the an event hosted by Caliente is sponsored, supported or endorsed by each Model depicted therein. Damages available for each violation include lost profits, actual damages, and costs, *see* 15 USC Section 1117, as well as disgorgement of Caliente's profits earned directly or indirectly from such unlawful use, *see Ameritox Ltd v. Millenium Labs, Inc.*, 2014 WL 1456347 at *7-8 (M.D. Fla Apr. 14, 2014), which would necessarily compel a detailed accounting of Caliente's earnings for the relevant period. Similarly, under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1) ("FDUTPA"), the Models may recover damages for Caliente's deceptive and fraudulent conduct which, for the reasons stated above, is likely to mislead or lead to consumer confusion.

Each and every one of the photos and images at issue has been used by Caliente for the deliberate purpose of creating a perception that the Models depicted in the advertisements and promotions support, endorse and/or sponsor these events and are likely to participate or be present at these events. The "consumer" is each and every member of the Caliente Vacation club

and other recipients and targets of the promotional advertisements that intended to or did attend any of the vents advertised using the Models' Images.

### 3. Civil Theft

Caliente's knowing theft and unauthorized use and dissemination of the Models' Images constitutes *criminal* theft under Fla. Stat. Ann. § 812.014(1) provable by clear and convincing evidence obtained through the course of our investigation which, in turn, gives rise to liability under Florida's civil theft statute, Fla. Stat. Ann. § 772.11(1), treble damages, attorneys' fees and costs. Each Model has identified her/his respective Image depicted in exhibits A – K of the Report. There is no doubt that the Models' Images attracted patrons to Caliente events and that such promotional yield was a primary, if not THE primary objective. Use of the Models' Images has helped (and is helping) bring more patrons to your establishments and as such, has been to your monetary advantage and benefit. In short, the Models have helped brand your establishment and its events without even knowing or consenting to doing so.

**By this letter, we hereby provide the required thirty (30) days written notice of intent to proceed and demand for settlement uuder Fla. Stat. Ann. § 772.11.** Upon expiration of the 30 days, we intend to pursue all remedies available under applicable law.

## CEASE AND DESIST DEMAND NOTICE

As stated above, at no time did any of the Models give permission or authorize Caliente or any affiliated entity to use or disseminate any image for any reason, including marketing, advertising or promotional purposes. At no time did Caliente or any affiliated entity seek authority or permission to use an image of any of the Models, nor would any of the Models have granted such authority or permission if asked. The mere existence of any image accessible on the internet does not give actual or constructive authority or permission to make use of any such image, particularly for advertising, marketing purposes or promotion. Caliente thus knowingly stole the Images of the Models for use on promotional and marketing materials, including but not limited to, on Caliente's website(s) and on social media such as Facebook, Twitter, Instagram, and Tumblr.

Moreover, it is axiomatic that Caliente never had authority to doctor the Images or misrepresent the Models' likenesses. Nor did Caliente have any authority to associate itself with our clients, and none of our clients ever did or would have associated with Caliente. The Models must be compensated for the unlawful use of their Images, as well as for the corruption and broad circulation of their Images.

Given the foregoing, the Models, by and through undersigned counsel, hereby demand that Caliente: (1) *immediately cease and desist* any further use of the Models' Image(s) and likeness off of any advertising, point of sale, posters, your partners or third party websites (Facebook, Twitter, Instagram, YouTube, and Tumblr), or other promotional videos, sales videos and any and all collateral advertising, including "VIP" membership cards; (2) post a written disclaimer on each social media and Caliente-owned or Caliente-hosted website stating that the advertisement or promotional piece that has been taken down improperly and without authority

used images of certain models, and (3) provide to me written acknowledgement that it has complied with this Cease and Desist Demand.

Please be advised that Caliente's failure to immediately cease and desist with the unauthorized activity discussed above constitutes a separate damage and gives rise to claims actionable under federal and state law. **Caliente's continued use of the pirated images will enhance the Models' punitive damage claims.**

## MONETARY DEMAND

In addition to the injunctive relief outlined above in the Cease/Desist demand, the Models are entitled to fair and appropriate compensation for Caliente's theft and unauthorized use of their Images, particularly given that Caliente profited from its theft. As seen in the recent verdict in *Michael Jordan v. Jewell Food Stores, Inc., et al.*, 1:10-cv-00340 (ND Illinois), unauthorized use of one's image, name or likeness for commercial purposes – regardless of whether the use is embarrassing, complimentary, or wholly innocuous – is taken very seriously by courts in every jurisdiction, and gives rise to absolutely quantifiable damages. The issue of liability for the pirating of Jordan's images was resolved prior to trial. The only remaining issue at trial, then, was quantifying the damages themselves. At trial, Michael Jordan was awarded $8.9 million in damages for the one-time use of his name by a grocery store chain that congratulated Jordan on his Hall of Fame induction and included a $2-off coupon. *See* http://www.nba.com/2015/news/08/22/michael-jordan-wins-lawsuit.ap/. The images stolen and used by Caliente in our case are far more numerous and egregious than in the *Jordan* case. Indeed, Caliente's association is an embarrassment to the Models.

Much like sports legends who have built a marketable brand with their likeness and image, so too have individuals in the talent, modeling, film and studio industries. It is customary practice throughout these industries that hiring a model for a commercial purpose involves a deliberative, arm's-length negotiation process. The fee a professional model charges (as negotiated by her/his agency) involves the consideration of various factors, including but not limited to: quality, earning capacity, experience, demand of a model chosen by a client, location and length of the photo shoot, the intended demographic audience and format (flyers, posters, billboards, commercials, videos, social media, etc.), and term of the assignment. Above all else, however, the single most important factor that our highly successful Models consider before all others is the client – notably, the client's reputation, business line, and the potential that affiliation with a client, while perhaps lucrative for a particular shoot, will damage or taint each Model's reputation, thereby jeopardizing future engagements.

As the Report makes clear, not one of our highly-successful clients (nor her/his agent) agreed to nor would have agreed to book a photo shoot knowing that one or more Images would be used by Caliente to market, promote and advertise the erotic "swinger" or "spouse swapping" clubs, activities or lifestyle offered and endorsed by Caliente. Caliente's piracy of the Models' Images, however, has deprived the Models of the ability to decline an unsavory or unappealing project or, at a minimum, negotiate a premium for accepting a project that would otherwise be undesirable. Caliente's piracy involuntarily branded each Model as a supporter, endorser and/or sponsor of the Caliente "swinger" lifestyle and events, usurped the discretion and judgment

typically reserved for and exercised by each Model and agent, tainted each Model's reputation, and potentially jeopardized future reputable bookings.

The injunctive relief sought above, while preventing continuous harm, does not appropriately compensate the Models for the theft and injury already sustained. Each Model is entitled to compensation for Caliente's infringement. The Report, which explains the calculation methodology, factors considered, and weighted considerations given the venue and setting, sets a minimum demand based only on the Images *presently known*, as follows:

| Model | Value/Image (minimum) | # Images | Separate Usages | Actual Damages | Report |
|---|---|---|---|---|---|
| Irina Voronina | $20,000 | One | Advertising<br>Social Media | **$40,000** | 8-9 |
| Dessie Mitcheson | $30,000 | Four | Advertising<br>Social Media | **$240,000** | 10-11 |
| Tiffany Toth | $40,000 | Two | Advertising<br>Social Media<br>Coupon<br>Branding | **$240,000** | 12-13 |
| Alana Campos | $30,000 | Two | Advertising<br>Social Media<br>Coupon<br>Branding | **$150,000** | 14-15 |
| Carrie Minter | $25,000 | One | Advertising<br>Social Media<br>Branding | **$75,000** | 16-17 |
| Jessica Hinton | $30,000 | One | Advertising<br>Social Media | **$60,000** | 18-19 |
| Ursula Mayes | $20,000 | Two | Advertising<br>Social Media<br>Branding | **$100,000** | 20-21 |
| Clark Gilmer | $20,000 | Two | Advertising<br>Social Media<br>Branding | **$120,000** | 22-23 |
| John Coulter | $10,000 | One | Social Media | **$10,000** | 24-25 |
| Jessica Burciaga | $50,000 | One | Advertising<br>Social Media<br>Third Party | **$150,000** | 26-27 |
| Amber Lancaster | $100,000 | One | Social Media<br>Branding | **$200,000** | 28-29 |
| Jaime Edmondson | $50,000 | One | Social Media<br>Branding | **$100,000** | 30-31 |
| **TOTAL** | | | | **$1,485,000** | |

11

The foregoing monetary demand of **$1,485,000** is based on the factors set forth in the Report, enclosed herewith. Absent a prompt and good faith negotiated resolution, the Models will pursue all legal claims available to them and will seek much greater damages, including damages for harm to reputation, damages for harm to future income, punitive damages, exemplary (treble) damages (which alone would total $4,455,000), attorneys' fees and costs, and damages arising from Caliente's improper use of images presently unknown but which are discovered in the course of our ongoing investigation.

## INSURANCE COVERAGE DEMAND

Under Section 627.4137, Florida Statutes, the Models hereby demand that within 30 days from receipt of this letter, you identify and disclose the name and coverage of all your insurers providing coverage for the acts alleged in this letter, together with a copy of each such insurance policy along with all policy endorsements. Please also promptly provide a copy of this notice **to each of your insurance carriers**. Such carriers are required, pursuant to Section 627.4137, F.S., to furnish, within thirty (30) days of this request a statement under oath of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including without limitation, Director/Officer ("D&O"), excess or umbrella insurance:

1. The name of the insurer

2. The name of each insured

3. The limits of the liability coverage

4. A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement

5. A copy of the policy.

## DOCUMENT PRESERVATION DEMAND

The Models demand that Caliente maintain, preserve and not destroy any documentation, photos, and other items relevant to the matters raised in this letter, in particular, the categories of documents outlined in the enclosed document preservation demand. **Attachment B.** Such demand includes preservation of all documents reflecting Caliente's use of the Models' Images on any medium or platform, whether hard copy or stored electronically, including without limitation, emails or text messages, as well as all client/customer/member lists and all Caliente event attendee rosters or logs from January 1, 2012 to the present.

Destruction of evidence can lead to serious consequences (both civil and criminal) and subject you to further damages above and beyond the damages outlined below. Given the nature of the claims available to the Models, including that the images pirated and unlawfully used by Caliente were expressly and strategically used to market and promote to members the various events identified in this letter, it will be critical to obtain names and contact information of all invitees and attendees at the subject events in order to determine, among other things, the extent to which the Models' Images enticed and induced your clients to attend events and thereby

12

contributed to Caliente's ill-gotten gains. Such information also is important to demonstrate the breadth and extent of the circulation of the pirated images and the resulting harm to our clients. Accordingly, you should promptly preserve, maintain and not destroy or permit the destruction of any such evidence.

* * *

We expect Caliente to comply immediately with the Cease/Desist demand, the Insurance Coverage Demand, and the Document Preservation Demand. **The foregoing Monetary Demand settlement offer will expire 30-days from the date of receipt of this letter.**

Thank you for your prompt attention. Please do not hesitate to contact me with any questions or to discuss.

**AKERMAN LLP**

By: _____
Christopher Oprison

Encl.

cc:    Steven Dorsey, Chief Operating Officer
      Caliente Vacation Club, LLC

      Daniel Rosenthal, Akerman LLP

      Joseph Casas, Casas Law Firm

# ATTACHMENT 1

# EXHIBIT A
# PART 2

STEPHEN
CHAMBERLIN
100 S. DOHENY
DRIVE
LOS ANGELES CA
90048

9 September 2015

Christopher Oprison, Esq.
Akerman LLP
750 9th Street, NW, Suite 750
Washington, DC 20001

Daniel Rosenthal, Esq.
Akerman LLP
2424 North Federal Hwy, Suite 410
Boca Raton, FL 33431

*Re:*   *Preliminary Expert Report Regarding Image Infringement by Caliente Resorts, LLC,*
        *d/b/a Caliente Resort, and Caliente Vacation Club LLC*

Dear Mr. Oprison and Mr. Rosenthal,

This report is per your request in the above-referenced matter.

## I. Introduction

It is my understanding that Caliente Resorts LLC d/b/a Caliente Resorts, and
Caliente Vacation Club, LLC ( collectively, "Caliente") have taken and used, without authority,
certain photographic images belonging to models IRINA VORONINA, DESSIE MITCHESON,
TIFFANY TOTH, ALANA CAMPOS, CARRIE MINTER, JESSICA (JESSA) HINTON,
URSULA MAYES, CLARK GILMER, JOHN COULTER, JESSICA BURCIAGA, AMBER
LANCASTER and JAIME EDMONDSON (collectively, the "Models"). You asked that I
evaluate and value the compensation the Models would have and should have received for the
use of these Images.

It is my understanding that, because the unauthorized nature of Caliente's use and
dissemination of the Models' images is not reasonably in dispute, the only issue I was asked to
address is measuring certain damages caused by such use. In particular, I was asked to prepare a
preliminary report opining on the fair and just compensatory, or *actual*, damages owed to each
Model for the use of their images by Caliente in promotional, marketing and advertising media,
on websites, social media and other forum. At this time, the report is preliminary principally
because it measures only compensatory-type damages for *known* instances in which Caliente
used images without authority, as well as the *known* type and number of usages. My opinions
as expressed in this Report do not include any estimation or opinion regarding the calculation
of other damages, such as special, consequential, exemplary, or punitive damages.

1

After a thorough review of the images, and after consideration of a host of factors outlined in this preliminary report, it is my expert opinion that each Model has sustained quantifiable harm and injury as a result of Caliente's conduct in regard to the use of these images and that the value of all presently known image infringements totals **$1,485,000** in compensatory, or *actual*, damages.

Given that your investigation into this matter is ongoing, new information may be revealed which may affect my opinion regarding the valuation of damages. As such, I reserve the right to amend this report if I am provided with new information regarding any of the Models listed, including but not limited to, newly identified Models, newly discovered images, and newly discovered usages.

## II. Qualifications

I have been involved in the model and talent industry working as an agent since 1989. I was an agency director at LA Models Management, which is one of the world's largest and most respected talent agencies. I also founded a talent agency called Warning Management Inc. and subsequently took the company public. I have extensive background, knowledge and experience in the modeling and talent industry. I am also an expert in the economics of image use, the valuation of image uses, model and public personality career valuation and the effective rates of work and valuation.

Over the last 26 years I have represented hundreds of the world's top models and, in that capacity, it has been my job to be intimately familiar with the modeling market, to quote work, negotiate deals and understand the particular factors driving the pricing for the particular work and the Models. I have quoted rates for my clients thousands of times. I am very familiar with the market rates for high end models today, because I continue to quote, negotiate and oversee rates, work and career development for my clients on a regular basis.

My qualifications are summarized in greater detail in my curriculum vitae, attached to this report. I am being compensated for my time at the rate of $300 per hour. My compensation is not contingent on the outcome of this litigation, or on the opinions I express in this report, any supplemental or final report, or in subsequent litigation or court testimony.

## III. Information Received and Materials Reviewed

In conjunction with my preparation of this preliminary report, I have reviewed and examined the following documents, images and information.

1. The photographic images of the Models used by Caliente, the product advertised, the usages, any alterations to the images, the media used, and the mode and scope of distribution in various markets around Florida, nationally and worldwide on the web.

2. Each Model's earning history, development, growth, positioning, experience, current exposure, name recognition, personal publicity, social media profile, market demand, complimentary employment, and other factors determining and effecting earning capacity over the past 4 years.

3. The type and caliber of clients that have traditionally employed each Model.

4. Each Model's 1099's and W-2's (where available) for the past 4 years.

5. Agency records and feedback for each Model, where available.

7

# IV. Methodology/Process of Image Valuation

## A. Overview

As a starting point, it is my opinion that no reputable model, and certainly not the Models here, would consider or agree to the use of their images by Caliente. The principal reason is that, without exception, each Model of this caliber seeks jobs that will enhance her/his stature, protect her/his reputation and image and not serve as a potential deterrent for commercial brands to affiliate with that Model. In my experience and expertise, having one's image used in a way that would appear to sponsor, sanction, endorse, support or denote participation in the events or lifestyle Caliente and its members espouse would damage, harm and devalue each Model's individual career due to the nature of the industry and product advertised by Caliente.

Experientially, I recall no instance in my 26 years working as an agent where I or any other legitimate agent or agency would have booked a Model of the caliber of the Models for this type of client. Caliente is much more than a "clothing optional" resort; it is a "swinger's club" meaning a club whose members (predominantly married couples) pay to meet others for the express purposes of having sex at Caliente events and/or sponsored parties. The use of each Model's images in connection with promotional, marketing and advertisements for Caliente events was intended to and does necessarily imply that the Model either worked at Caliente, would be in attendance at the advertised event, and/or endorsed the club or events depicted. I believe that in the unlikely event a Model of this caliber would agree to such a job and usage, there would be negotiated a substantial premium for the work to offset anticipated and expected losses of marketability.

Regarding the Models identified in this preliminary report, I was informed that not one of them was ever approached by Caliente or its agent, not one was ever asked to authorize or approve any use whatsoever by Caliente of their image, and not one ever consented to Caliente's use of their likeness for any purpose whatsoever.

The damages I have established below are based on the fair market value of each Model's image for the specific appropriated use by Caliente, but do not consider the damage or possible end of the models' careers, damage to reputation, or loss of other clients and advertisers by the Models being associated with this type of business.

## B. Pricing of Work in the Modeling Industry

My opinions are based in part upon the way in which work in the modeling talent industry is priced. The rates that models are paid are based upon numerous factors, the most important of which are the following:

1. A model's desirability, based on numerous factors, including the demand for his or her services.

2. A model's work history, such as prior associations, appearances, endorsements, advertisements, etc.

3. The nature of the business seeking a model's service, the type of product, whether exclusivity is sought, the embarrassment factor from being associated with the advertisement or marketing of certain products (condoms, personal hygiene, medications etc.) or similar considerations.

4. The history of the business seeking a model's services, the style, quality and production of previous advertising and promotions, and its hiring of other models and celebrities.

5. Exposure, namely how broadly the Model's likeness will be circulated.

6. The type of exposure, or the "**Usage**" of the image, such as:

   a. **Advertising:** use of an image on a website owned, controlled or contributed to by Caliente or in a magazine or publication;

   b. **Social Media**: including, but not limited to, Facebook, Twitter, Instagram, YouTube, and Tumblr;

   c. **Third Party promotion:** use of an image to promote a third party product, company or event;

   d. **Branding:** either manipulating an image to effectively "brand" a company and suggest the model is working at the resort, club, event or company or attacbing dialogue or hash tag (#), which references, describes, labels or effectively categorizes a model and associates him/her to the product or business or similar products or business;

   e. **Coupon:** use of an image to offer discounts for entry to, or participation in a club, party or event, or discounts on products;

   f. **Extra Usage:** including, but not limited to, billboards, flyers, TV usage, movies, downloads, posters, hangtags, banners and decorations;

7. The length of exposure or Usage, the period of use, and any renewals and rollovers.

8. The nature, duration and location of the actual shoot and production (In this case, the client bears no cost for the actual production of the images).

While the list of all potential factors is extensive and case-specific, the foregoing factors are illustrative and particularly relevant to our case. It is the job of the talent agent to seek out particular types of work for a model, and to negotiate deals for a model based on all relevant considerations based on the particular model, the client and the product, event or service advertised.

## C. Methodology Used In Formulating My Preliminary Opinions

In estimating the compensatory, or *actual*, damages for each individual Model, I employed the same approach, methodology, and process that I would typically employ when determining what to charge a company or other entity that is interested in hiring models I represent. In addition to employing the foregoing factors, I did the following:

1. I reviewed Caliente's use of the photographic images of the Models, the product advertised, the Usages and the distribution of the images to various markets.

2. For the purpose of establishing a fee in an arm's-length negotiation, I took into account the number of images used and the Usage of each.

3. For each of the individual Models, I established a fair market fee for the use of the Model's image, taking into account the Model's payment history over the course of his/her career, the Model's work quality, experience, exposure, and duration of career. For each Model, I have established a fee that I believe would be reasonable in light of industry standards, the way each Model's image was used, the earning history of each Model and the nature of Caliente's business.

4. *The rate of compensation is established by multiplying each image used by the number of separate types of Usage.*

## V. Conclusion

After careful review of each Model's history, career, development, prospective future earnings, reputation and the growing industry of endorsements, branding and new media with the possibility and potential for income from these sources, I am confident in my quotes and conclusions. Again, these figures do not take into account additional Usages of which I'm not aware.

Use of these high caliber images is insidious in itself, but the nature of the industry Caliente is involved in, combined with the insinuations and language associated with the images can and will attach itself to each Model's career and as the images on the web are permanent, cause irrevocable damage to reputations, future earnings and each Model's business and ability to conduct business.

As stated, the quotes are a minimum that would be required to compensate each Model for the unauthorized taking and use of these images, based upon a calculation of a cost per image per Usage, as follows:

| MODEL | VALUE/ IMAGE (minimum) | # Images | Separate Usages | Damages |
|---|---|---|---|---|
| Irina Voronina | $20,000 | One | Advertising Social Media | $40,000 |
| Dessie Mitcheson | $30,000 | Four | Advertising Social Media | $240,000 |
| Tiffany Toth | $40,000 | Two | Advertising Social Media Coupon, Brand | $240,000 |
| Alana Campos | $30,000 | Two | Advertising Social Media Coupon, Brand | $150,000 |
| Carrie Minter | $25,000 | One | Advertising Social Media Brand | $75,000 |
| Jessa Hinton | $30,000 | One | Advertising Social Media | $60,000 |
| Ursula Mayes | $20,000 | Two | Advertising Social Media Brand | $100,000 |
| Clark Gilmer | $20,000 | Two | Advertising Social Media Brand | $120,000 |
| John Coulter | $10,000 | One | Social Media | $10,000 |
| Jessica Burciaga | $50,000 | One | Advertising Social Media Third Party | $150,000 |
| Amber Lancaster | $100,000 | One | Social Media Brand | $200,000 |
| Jaime Edmondson | $50,000 | One | Social Media Brand | $100,000 |
| TOTAL | | | | $1,485,000 |

If **Caliente Resorts** had attempted to purchase the image rights of these twelve Models to market, advertise, or promote its resort or events, it would have had to pay at least **$1,485,000** based on current market conditions and each Model's earning capabilities. I remain doubtful, however, that even at this price, any of the Models would have agreed to the use of their Images by Caliente for any purpose, considering the potential negative impact on their careers.

The foregoing opinions, analyses, and conclusions are based upon the documents and information I have reviewed as of the date of this report, as well as my experience in the modeling industry. I reserve the right to amend or supplement these opinions, analyses and conclusions upon receipt of additional information that may become available.

------------------------------------------------

**Stephen Chamberlin**

9 September 2015
---------------------------

**Date**



Irina Voronina has modeled internationally for more than 14 years. She was Playboy's Miss January 2001, and subsequently has been photographed by world famous photographers such as Teri Richardson, Mathew Rolston, Antoine Verglas, David LaChapelle and many others. She landed numerous print campaigns, including Skyy Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour, to name a few. She has appeared in numerous magazines including FHM, Maxim, Max (Italy), Ocean, Shape, 944, Knockout, Q (UK), People (Australia), and very recently on the covers of Kandy, Rukus and Browz magazine issues.

In 2008 Ms. Voronina was named a St Pauli Girl Beer spokes model and completed a year long public relations tour across the United States. She became first ever St. Pauli Girl to ring NYSE closing bell representing Constellation Brands. Ms. Voronina was the main host of Playboy Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air.

Ms. Voronina has acted extensively, including feature films (Reno 911, "Balls of Fury" "Towelhead" and "Piranha 3DD") and television (as a regular in the sit-com 'Svetlana', on the live action show, 'Saul of the Mole Men', and as a guest star on Nickelodeon's "iCarly").

In 2013, Ms. Voronina was named Model Of the Year by Kandy Magazine based on the highest number of digital issue downloads on iPad and iPhone. Ms. Voronina recently passed the 2 million fans mark on her Facebook fan page; her Twitter & Instagram fan following is constantly growing.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Irina Voronina** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$20,000 per image per Usage.**

Ms. Voronina had one image used for Advertising and Social Media.

**One (1) image @ $20,000 times two (2) Usages (Advertising, Social Media) = $40,000**

**IRINA VORONINA'S Actual Damages = $40,000**



# DESSIE MITCHESON



Dessie Mitcheson competed for Miss Pennsylvania USA at age18 and placed in the top ten. Ms. Mitcheson soon became the Face of Playboy intimates. The following year she became the Face of MGM Grand Las Vegas and Miss Pennsylvania Intercontinental. Ms. Mitcheson was also named Maxim magazine's Hometown Hottie. Thousands of girls across the United States enter the yearly contest. The same year, Ms. Mitcheson was #100 on Maxim's Hot 100 list. She has graced the pages of multiple issues of Maxim, including a three page spread, two center folds, and landed the cover for the May 2014 Navy issue.

Ms. Mitcheson's career as a TV personality, actor and spokeswoman is booming. Recently featured as the main Tecate Beer ring girl in the biggest Pay per View event in history, the Mayweather v Pacquiao fight, which gave he world wide visibility with over 100 million viewers. This triggered a huge demand for her services and increased her daily quote substantially.

Ms. Mitcheson has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes and J. Valentine.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Dessie Mitcheson** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$30,000 per image per Usage.**

Ms. Mitcheson had 4 images used for Advertising and Social media.

**Four (4) images @ $30,000 times two (2) Usages (Advertising, Social Media) = $240,000**

**DESSIE MITCHESON'S Actual Damages = $240,000**

# DESSIE MITCHESON







11



Tiffany Toth has been the Playboy Cyber Girl of the Week for the third week of November 2005 and the Playboy Cyber Girl of the Month for May, 2006. Ms. Toth then went on to pose for three pictorials under Playboy's Fresh Faces. Ms. Toth was featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen, and Maxim. Ms. Toth was the Playmate of the Month in the September, 2011 issue of Playboy.

Ms. Toth worked for a number of national fashion catalogues earning extraordinary rates. Carrie Amber Intimates paid her at a rate of over $25,000 and Playboy Enterprises and paid over $65,000 for her work. Ms. Toth has now over 370,000 Instagram followers, over a million Facebook followers and is being paid for product endorsements. Ms. Toth has her own e-commerce site and her popularity continues to grow.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Tiffany Toth** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$40,000 per image per Usage.**

Ms. Toth had one image used for advertising, social media, branding and coupon (her image was used to advertise on website and multiple times on social media a coupon ad for "SEXY BARE BOTTOM CLUB" thus branding the image).

Ms. Toth had a second image used for advertising and social media.

**One image @ $40,000 times four (4) Usages (Advertising, Social Media, Coupon, Branding) = $160,000**

**One image @ $40,000 times two (2) Usages (Advertising, Social Media) = $80,000**

**TIFFANY TOTH's Actual Damages = $240,000**

# TIFFANY TOTH





**ALANA CAMPOS**



Alana Campos was nominated in numerous beauty pageants in her city, state and represented her country. She moved to the USA and is represented by Wilhelmina Models.

Ms. Campos was the Playboy playmate of the month, appeared in Astonish Mag, Viva Glam Mag, Bliss Mag, was the cover girl of AZ Foothills, and have been featured in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar and is a spokes model for My Body Journey.

Recently Ms. Campos starred in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman and Michael Douglas. Ms. Campos recently gained worldwide prominence as a featured ring girl on behalf of Tecate Beer at the Mayweather v. Pacquiao pay per view fight. (The biggest event in Pay per View history.) She has over 520,000 followers on Instagram and building rapidly.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Alana Campos** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$30,000 per image per Usage.**

Ms. Campos had one image used for Advertising, Social media and Branding and used on Caliente' Website, FaceBook and Twitter and labeled with the heading "Nothing Butt Net Party").

Ms. Campos had a second image used for Advertising and Social Media.

**One (1) image @ $30,000 times three (3) Usages (Advertising, Social Media, Branding) = $90,000**

**One (1) image @ $30,000 times two (2) Usages (Advertising, Social Media) = $60,000**

**ALANA CAMPOS' Actual Damages = $150,000**

# ALANA CAMPOS



# CARRIE MINTER



Celebrity Model Carrie Minter moved to Southern California to pursue her dreams of becoming a successful model and business woman. Ms. Minter entered the modeling world at 15 years old, modeling runway looks from Versace and Valentino. Her face has graced the pages and covers of catalogs, magazines, calendars, billboards, posters and ads for the likes of Playboy, GQ, Maxim, FHM, Seventeen, Harley Davidson, Dreamgirl International, Elegant Moments Lingerie, Benchwarmer Trading Cards, Aroos Bridal Magazine, Apparel News, JC Penney, Women's Wear Daily, Simin Couture, The Beverly Hills Hotel, Ferrari, Renaissance Hotel & Spa, Gillette, Love FiFi Lingerie, Music Legs, Linder Sport/ Sexy Shapewear, Have Faith Swimgerie, Wendy Griffin Jewelry, Shirley of Hollywood and many others. Ms. Minter has had co-starring roles and been featured in several commercials, television series, music videos, and films.

In 2013, Ms. Minter started her own business, Carrie's Pilates Plus, which combines Pilates, strength training, cardio and toning. Ms. Minter's earnings include both use of her image by leading brands as well as income from her independent business operation.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Carrie Minter** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$25,000 per image per Usage.**

Ms. Minter had one image used for Advertising, Social Media and Branding (her image was in fishnet stockings used on Caliente's Website, FaceBook and Twitter pages, and labeled with the heading "Nothing Butt Net Party").

**One (1) image @ $25,000 times three (3) Usages (Advertising, Social Media, Branding) = $75,000**

**CARRIE MINTER's Actual Damages = $75,000**

# CARRIE MINTER



# JESSA HINTON



Jessica (Jessa) Hinton was discovered by a talent manager at age 14. She immediately booked 3 national TV commercials and guest appeared on "Baywatch" and "7th Heaven" by the age 16.

In 2010, Ms. Hinton became the face of the Palms Hotel & Casino's ad campaign. Her images have appeared on billboards, in magazines, on posters, and multiple forms of electronic media. After the Palms Hotel campaign she expanded to TV personality roles, hosting for Victory Poker (interviewing poker players and celebrities) and as an interview personality for Top Rank Boxing (interviewing the likes of Manny Pacquiao and Shane Mosley).

In 2011, Ms. Hinton was selected as July's Playboy Playmate of the Month, becoming one of the most popular playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Her popularity has continued to grow since gaining spokesmodel roles for Affliction Clothing, Enzo Milano Hair Products, REVIV Wellness Spa, Protein World and ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume. She has also been seen as guest host for Los Angeles television station KTLA.

Ms. Hinton has been a featured front cover model gaining attraction for publications such as FHM Magazine, Kandy Magazine, MMA Sports Magazine, Guitar World and Muscle & Fitness Magazine.

Currently, Ms. Hinton has earned an elite status as a social media celebrity crossing over the 1 million follower benchmark on Instagram. Demand for her as a television host, spokesmodel and model continues to grow as well as demand for her creative talents. She was recently named as Creative Director for MAJR Media and given part ownership for her role with the company.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Ms. Hinton** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$30,000 per image per Usage.**

Ms. Hinton had one image used for Advertising and Social Media.

**One (1) image @ $30,000 times two (2) Usages (Advertising, Social Media) = $60,000**

**JESSICA HINTON'S Actual Damages = $60,000**

---

# JESSA HINTON





Ursula Yvonne Mayes' first assignment was a shoot for Maxim magazine. Ms. Mayes then landed the prestigious and recurring role of briefcase model #5 on the hit game show, Deal Or No Deal, hosted by Howie Mandel. Ms. Mayes also worked with the same producers from Deal or No Deal on a special Christmas episodic week on Minute To Win It with host and foodie, Guy Fieri. This led to an opportunity when The Tonight Show With Jay Leno called upon Ms. Mayes for it's hilarious "Jaywalking" skits. Since then Ms. Mayes has filmed various recurring roles on both The Tonight Show and The Jay Leno Show.

Ms. Mayes has appeared in campaigns for clients such as Coffee Bean & Tea Leaf, Coronet Diamonds, Volkswagen, Amway, Jim Bean, California Milk, Subaru, Evan Williams and Bacardi to name a few. She has appeared in US magazine, Muscle & Fitness, 944, Maxim, Stuff, OC Health, Runway and People Magazine's "100 Most Beautiful Issue" to name a few. Internationally, Ms. Mayes has been featured in Korean Vogue, Harper's Bazaar, Elle, In Style, Cosmopolitan, Marie Claire, Esquire Turkey, Australian FHM and many more. Ms. Mayes' other work includes a multi-international print and commercial campaign for EI Solutions Skincare and Cosmetics. Global video game powerhouse, THQ, hired Ms. Mayes as the cover model and star of Juiced 2: Hot Import Nights, the follow up to its 2 million selling Juiced racing game. Ms. Mayes starred in the game's television commercial, which aired on major networks worldwide. A special edition DVD just for her fans was included in the first set of released games. Ms. Mayes also appeared at the Juiced 2 launch event in London.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Ursula Mayes** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$20,000 per image per Usage.**

Ms. Mayes had one image used Advertising, Social media and Branding (her image was in fishnet stockings used on Caliente's Website, FaceBook and Twitter and labeled with the heading "Nothing Butt Net Party").

Ms. Mayes had a second image (Great Gatsby Party) used for Advertising and Social Media.

**One (1) image @ $20,000 times three (3) Usages ( Advertising, Social Media, Branding) = $60,000**

**One (1) image @ $20,000 times two (2) Usages (Advertising, Social Media) = $40,000**

**URSULA MAYES' Actual Damages = $100,000**

# URSULA MAYES



Caliente Resort Vacations
June 20 2014

Saturday Caliente Resort and #Aahz hosts one of their sexiest theme parties of the year! Nothing Butt Net! Not wear in fun and Plenty! Weather it's on your legs or wrapped around your body in a sexy dress or top. Fishnets are always sexy, but tonight with all of the ladies running around in barely there 'clothing' it's going to get Plastic fast! Join us for another hot, hot, steamy Summer night event!

Like  Comment  Share

7 people like this

Write a comment



**EXHIBIT A**
**PART 3**

# CLARK GILMER



Clark Middleton Gilmer is a successful model, host and actress with growing earning capabilities and an ever growing social media fan base. She has appeared in catalogues, magazines, campaigns and commercials and has also made appearances in major motion pictures and primetime television shows. Ben Affleck requested Ms. Gilmer by name to play a small featured role in his 2012 Oscar worthy film, Argo.

Clients Ms. Gilmer has worked for include; MAXIM and UFC magazines, Crystal Magazine, Miami Living, Tecate Beer, Plum Pretty Sugar Lingerie, Lady Lux swimwear, Sketchers, KGB swimwear, Susan Holmes Swimwear, Privalia, John Frieda, California Costumes, Maya Hansen, AbXcore and more.

Ms. Gilmer was also featured on America's Next Top Model and has also appeared on How I met Your Mother, CSI, Dexter and Glory Kickboxing for which she is a Brand Ambassador. Major National TV commercials to feature Ms. Gilmer include: Carl's Jr., Piston Kings Motor Oil, BJ's Brewhouse and Sol Republic Headphones.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Clark Gilmer** for the identified images used by Caliente, at a *minimum,* I would quote a rate of **$20,000 per image per Usage.**

Ms. Gilmer had one image used for Advertising, Social Media and Branding (used on Caliente's Website, FaceBook and Twitter and labeled with the heading "Nothing Butt Net Party").

Ms. Gilmer had a second image ("Fetish Ball: slap and tickle") used for Advertising, Social Media and Branding.

**One image @ $20,000 times three (3) Usages (Advertising, Social Media and Branding) = $60,000**

**One image @ $20,000 times three (3) Usages (Advertising, Social Media and Branding) = $60,000**

**CLARK GILMER'S Actual Damages = $120,000**

## CLARK GILMER










John Coulter has a modeling career that has lasted over 20 years. He has been represented by agencies in NY, Milan, Paris and London and worked with photographers such as Ellen Von Unwerth and David LaChapelle. He shot a Jeans campaign with Mary J.Bligh and LiL' Kim.

Mr. Coulter has appeared in many TV commercials and music videos. Print body work is where he excels and was a perennial favorite for brands such as Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. While Mr. Coulter remains a well-known model, he has also established himself as a highly successful artist. His talents are broad and he works constantly as a painter, sculptor, illustrator, costume designer and art director.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **John Coulter** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$10,000 per image per Usage.**

Mr. Coulter had one image used for Social Media (his image was accompanied by the tag "The morals were looser").

**One (1) image @ $10,000 times one Usage (Social Media) = $10,000**

**JOHN COULTER'S Actual Damages = $10,000**

# JOHN COULTER





Jessica Burciaga is a model and business owner from Orange County, CA. With Ms. Burciaga's first photo shoot, she won Stuff Magazine's "Neighborhood Knockout" contest. The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports Fight Night Round 3 video game.

Ms. Burciaga's popularity rose quickly and she began appearing in various magazines including Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine and many others. Ms. Burciaga was the Playmate of the Month in the February 2009 issue of "Playboy"and has appeared as herself in several episodes of the reality TV series "The Girls Next Door." Ms. Burciaga has continued to build an incredible career as a model, actress and businesswoman. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com.

Ms. Burciaga's earning potential has increased over the last few years and now is enhanced by her growing fame, notoriety, popularity and business savvy. Ms. Burciaga's social media reach has hit over 1.2 million followers on Instagram and 200,000 people following her on Twitter.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Jessica Burciaga** for the identified image used by Caliente, at a *minimum,* I would quote a rate of **$50,000 per image per Usage.**

Ms. Burciaga had one image used for Advertising, Social media and Third Party promotion.

**One (1) image @ $50,000 times three (3) Usages (Advertising, Social Media, Third Party) = $ 150,000**

**JESSICA BURCIAGA's Actual Damages = $150,000**

JESSICA BURCIAGA





Amber Lancaster was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. After a very successful five years on the squad, she moved to Los Angeles to pursue her entertainment career.

Ms. Lancaster was recruited for the prized and highly visible role on the internationally famous TV series The Price is Right. She co-starred as Jenny Swanson on MTV's The Hard Times of RJ Berger. Ms. Lancaster has also appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself of Attack of the Show, The Scream Awards, The Best Damn Sports Show Period, and in the feature film Redline.

Ms. Lancaster has been featured in numerous national magazine spreads and fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star. She has also been featured as part of Maxim's annual "Hot 100" list."

Ms. Lancaster has now established a thriving new business venture "Amber Lancaster Interiors". This business is benefitting from Ms. Lancaster's high public profile and extensive fan following on social media.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Amber Lancaster** for the identified images used by Caliente, at a *minimum*, I would quote a rate of **$100,000 per image per Usage.**

Ms. Lancaster had one image used for Social Media and Branding.

**One (1) image @ $100,000 times Two (2) Usages (Social Media, Branding) = $200,000**


**AMBER LANCASTER'S Actual Damages = $200,000**

## AMBER LANCASTER





Jaime Faith Edmondson comes from a family of police officers. Ms. Edmondson graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting the police force to become a cheerleader for the Miami Dolphins. Ms. Edmondson and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14."

Ms. Edmondson was the Playmate of the Month in the January, 2010 issue of "Playboy." She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets.

Ms. Edmondson and her fiancée, MLB Superstar Evan Longoria, have 2 children.

In my opinion, based on my experience and expertise in this industry, when negotiating a rate of compensation for **Jaime Edmondson** for the identified image used by Caliente, at a *minimum*, I would quote a rate of **$50,000 per image per Usage.**

Ms. Edmondson had one image used for Social Media and Branding.

**One (1) image @ $50,000 times two (2) Usages (Social Media, Branding) = $100,000**

**JAIME EDMONDSON's Actual Damages = $100,000**

## JAIME EDMONDSON



## CURRICULUM VITAE OF
## STEPHEN CHAMBERLIN
### 100 S. DOHENY DRIVE
### LOST ANGELES CA 90048
### 310 666 3629

## Professional Experience

### Rumblestorm Management

January 2009 to present
Owner - Director

Rumblestorm management is a worldwide sourcing and management company that operates as a paid scout and development platform for models working all over the world. Currently managing models both male and female in the US, France, Great Britain, Spain, Germany, Japan, Singapore, Italy, Australia and New Zealand.

Agencies that I am actively engaged and conversing with regularly, include but not limited to, IMG Models Worldwide, DNA Management NY, Major Models Worldwide, NY Models NY, Elite NY, Ford Models NY, Society Management NY, Women NY, LA Models LA, M Management LA, Next Models Worldwide, Silent Models Paris, Premier Management London, Select Models London and Storm Management London.

I place models with these and other agencies in multiple countries. I book, negotiate, invoice, collect commissions, source tear sheets and monitor usage of jobs.

### Warning Management Inc.

November 1998 to August 2008
Founder - Partner - Director

A full service management company representing fashion models, actors, commercial talent, musicians, bands, photographers, directors, brands and companies. Revenues are primarily derived from commissions paid by clients, from engagements including but not limited to, bookings, endorsements, sponsorships, commissions, residuals, exclusivities and royalties. The mediums worked in include but not limited to, Print, Television, Videos, Packaging, Billboards, Point of Sale, Corporate Videos, Appearances, Speaking Engagements, Film, Events, Event Management, Organization, Consultancies and Negotiations.

My responsibilities were total management and hands on involvement in every facet of the company. As director and signatory for the company, I had a complete working knowledge of every negotiation, deal and client that we represented. I was responsible for not only branding and development of the major clients but also for branding and development of the company. I built the company from one employee and zero revenue into a publicly traded company with revenues of over $20 million per annum.

### LA Model Management (Los Angeles, CA)
### NY Model Management (New York, NY)

December 1991 to May 1998
Agency Director

LA Model Management is one of the world's oldest, largest and most respected agencies. I represented models, commercial talent, actors, production services, runway, hair and make-up artists and casting services.

My responsibility was the development of talent and the International marketing of the company to clients worldwide. I established the first corporate client endorsements by actors and opened a whole new industry within an industry. I developed model searches and TV shows that were fully sponsored and are still in production now.

In January of 1995, I opened NY Models in NY on behalf of the owner of LA Models. Both NY Model Management and LA Model Management are thriving.

### Spott Model Management (Sydney Australia)

January 1989 to August 1991
Agency Director

Spott models was a boutique agency in Sydney specializing in the development of models for the world market. In the two years working I sent over a hundred models out to various agencies worldwide and represented more than two hundred international models on their visits to Australia.

### Association of Surfing Professionals. (ASP)

December 1989 to March 1990
Tour Representative / Sponsorship Director

The Association Of Surfing Professionals is the governing body for professional surfing worldwide. I was the pro surfers representative on tour. I was the middle negotiator for all problems and communications between the surfers and the administrative body. I also wrote and actively sought corporate sponsorships for both the Association and professional contests. I served as contest director on a number of international events.

### Australian Professional Surfers Association (APSA)

December 1985 --March 1990
Part Time Director

The Australian Professional Surfers Association is the local governing Association for the development of Professional Surfing in Australia and the regional representative for the world body the ASP. My responsibilities were to raise sponsorship money for a fully funded national circuit which was the satellite events that helped Australian and international surfers progress to the world pro tour. I organized a national program of contests and established a point system for advancement and selection to the world tour.


## Education


Bachelor of Arts / Bachelor of Laws, University of New South Wales. Australia. (1985)

# ATTACHMENT 2

## *IN RE IMAGE INFRINGEMENT BY CALIENTE RESORTS LLC, ET AL*
## ATTACHMENT 2: DOCUMENT PRESERVATION DEMAND

In anticipation of potential litigation, Caliente Resorts, LLC, d/b/a Caliente Resort ("Resort"), and Caliente Vacation Club, LLC ("Club") (collectively, "Caliente"), Carl Anderson, officer and Registered Agent of Caliente, Steven Dorsey, Chief Operating Officer of Caliente, and all other officers, members, employees, agents or representatives of Caliente are hereby directed to preserve any and all documents (including, without limitation, any physical documents, tangible things, and electronic documents) in their possession, custody or control relating in any way to Caliente's marketing, promotion and advertising media and activities for events hosted at the Resort, from on or about January 1, 2012 to the present ("relevant period") in which images of the Models identified in the accompanying Demand Letter were used or depicted.

The categories of documents to be preserved include, without limitation:

- all documents, including email and other communications, contracts, licenses, and notes relating to or referring to Caliente's promotional or advertising activities;

- hard copy and electronic customer, client, mailing and Club member lists for all events during the relevant period;

- a list of attendees at events hosted or organized by Caliente during the relevant period;

- all documents constituting or concerning images of the Models;

- all communications concerning images of the Models;

- all documents concerning or constituting social media postings by Caliente (Facebook, Twitter, Instagram, YouTube, Tumblr);

- accounting records, tax forms, filings and worksheets, and related documents for Caliente and/or any officer, employee, contractor, agent, or other representative of Caliente during the relevant period;

- all documents reflecting, referring to or relating to monies received, including profits, and/or paid out in connection with any event hosted or organized by Caliente;

- all documents, including audit reports, reflecting, referring to or relating to quarterly or annual or other audits of the books and records of Caliente during the relevant period;

- all Caliente tax returns prepared and filed during the relevant period, including all working papers used and relied upon in the preparation of the tax returns;

## *IN RE IMAGE INFRINGEMENT BY CALIENTE RESORTS LLC, ET AL*
## ATTACHMENT 2: DOCUMENT PRESERVATION DEMAND

- all banking records and related documents for any checking, savings, money market, credit, investment, retirement, or other account used by or in the name of any Caliente party dating back to January 1, 2012. Such records should include, but are not limited to, records reflecting, referring or relating to deposits, withdrawals, checks written, funds transfers, or other transactions impacting any such account;

- all banking records and related documents for any checking, savings, money market, credit, investment, retirement, or other account used by or in the name of Caliente or any Caliente party during the relevant period. Such records should include, but are not limited to, records reflecting, referring or relating to deposits, withdrawals, checks written, funds transfers, or other transactions impacting any such account;

- all documents, including but not limited to checks and/or check stubs, cash receipts, wire transfers, and federal or state tax returns, reflecting income or other money received by and/or paid to Caliente or any Caliente party during the relevant period;

- all communications (including but not limited to emails from any and all accounts used by Caliente, text messages and online, social network site postings by Caliente) and documents, including but not limited to notes, memos, and phone messages of calls with or about any of the Models and/or their images;

- all communications (including but not limited to emails from any and all accounts used by Caliente, text messages and online, social network site postings by Caliente) and documents, including but not limited to notes, memos, concerning all events portrayed and depicted in Attachment 2 to the Akerman Demand Letter (*i.e.,* the Chamberlin Preliminary Report), including but not limited to the following Caliente events:

  o  "AAHZcon Party" (March 21, 2015);

  o  "Great Gatsby Party" (Feb 21, 2015)

  o  "Nothing Butt Net Party"(June 21, 2014);

  o  "White Christmas Party"(Dec 20, 2014);

  o  "AAHZ's Metallic Party"(May 17, 2014);

  o  "AAHZ's Fetish Ball: Slap & Tickle" (Jan 17, 2015);

  o  "Erotic Halloween Ball" (Oct 24, 2015)

  o  "Sexy Bare Bottoms Club: Shimmer and Shine" (July 11, 2015); and/ or

  o  "American Bombshell" (July 4, 2015).

- all documents that refer or relate to in any way the matter discussed in the Akerman LLP Demand Letter to Caliente;

- all corporate filings by Caliente, including but not limited to documents relating to the corporate formation of any Caliente;

- all documents and communications concerning insurance maintained by Caliente during the relevant period, including but not limited to all documents concerning insurance claims on any of the Caliente insurance policies; and/or

- all documents and communications concerning any lawsuit filed or threatened against Caliente, or any officer, member, employee, agent or representative for conducted similar or related to the conduct described in the Akerman LLP Demand Letter to Caliente.

## Definitions/Instructions

For purposes of this notice, the term "document" includes but is not limited to: contracts, bills of sale, agreements, emails, text message, social media posts or communications, chat room messages, messaging application conversations, promissory notes, documents, applications, file memoranda, correspondence, telegrams, forms, bank statements, tax invoices, files, books, pamphlets, circulars, transcripts, orders, bulletins, periodicals, letters, reports, advertisements, graphs, charts, plans, records, studies, logs, manuals, minutes, photographs or microfilm, diagrams, drawings or other visual materials, lists, working papers, rough drafts, research material, notes, papers, ledgers, journals or other books of account, computer print-outs or discs or tapes, computer programs, intra- and inter-office memoranda, notebooks, desk calendars, diaries, statistical computations, confirmations, reports and/or summaries of interviews or conversations, reports and/or summaries of investigations, opinions or reports of consultants, statements or expressions of policy, appraisals, forecasts, of all natures and kinds whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced, all tape recordings (whether for computer, audio or visual replay), models, or other manner of tangible things on which words, phrases, symbols, information or other matter are written, printed or recorded.

For purposes of this notice, "Communication" or "Correspondence" shall mean all electronic and hard copy written communications as well as oral communications (unless otherwise specified) including, but not limited to, correspondence, inter- and intra-office and agency communications, meetings, telephone conversations, letters, memoranda, notes, agendas, meeting minutes, facsimiles, text messages, social media postings or messages, messaging application conversations, electronic mail, and other recordings of conversations, discussions or meetings.

Among other things, "preservation" of electronic documents means to preserve all computer hard-drives, all cloud drives, all emails, all electronic records or recordings, all electronic accounts wherever located and all electronic devices on which such electronic information may be stored and to immediately discontinue any deletion or destruction of such

## *IN RE IMAGE INFRINGEMENT BY CALIENTE RESORTS LLC, ET AL*
## ATTACHMENT 2: DOCUMENT PRESERVATION DEMAND

electronically stored information. The obligations to preserve all documents are imposed under both Federal Law and Florida State Law, and you should seek the advice of counsel. "Preservation" as called for in this Notice should not be construed as calling for the continuation of use or dissemination of the infringed images without authority by Caliente. As set forth in the Akerman Demand Letter, all such online images or other format should be immediately discontinued and taken offline, but the images with all meta data should themselves be maintained by Caliente pending resolution of this matter.

Caliente should cease destruction of any documents. This Notice is without limitation to the Models' rights under applicable law.

## FAILURE TO ADHERE TO THIS NOTICE MAY SUBJECT YOU TO POTENTIAL LIABILITY FOR SPOLIATION OF EVIDENCE.

Exhibit B



**Christopher G. Oprison**

Akerman LLP
The Victor Building
750 9th Street, N.W., Suite 750
Washington, DC  20001
Tel:  202.824.1703
Dir Fax:  202.585.6207
christopher.oprison@akerman.com

September 30, 2015

## VIA ELECTRONIC MAIL AND CERTIFIED US MAIL

Carl Anderson, Registered Agent/Manager
Steven Dorsey, Chief Operating Officer
Caliente Resorts, LLC
d/b/a Caliente Resort
21240 Gran Via Boulevard
Land O' Lakes, FL 34637

Carl Anderson, Registered Agent/Manager
Steven Dorsey, Chief Operating Officer
Caliente Vacation Club, LLC
21240 Gran Via Boulevard
Land O' Lakes, FL 24637

Carl Anderson, Registered Agent/Manager
Steven Dorsey, Chief Operating Officer
Caliente Vacation Club LLC
19235 US Highway 41 North
Lutz, FL 33549

> *Re:     Unauthorized Use of Images Despite September 10, 2015 Letter of
> Potential Claims, Cease & Desist, Demand for Payment, and Document
> Preservation Request*

Dear Messrs. Anderson and Dorsey:

As you know, we represent models Irina Voronina, Dessie Mitcheson, Tiffany Toth, Alana Campos, Carrie Minter, Jessica Hinton, Ursula Mayes, Clark Gilmer, John Coulter, Jessica Burciaga, Amber Lancaster and Jaime Edmondson (collectively the "Models").  In a letter dated September 10, 2015 (with enclosed exhibits) directed to the Caliente Resorts, LLC and Caliente Vacation Club, LLC (collectively, "Caliente"), and any other affiliated entities ("Demand Letter"), we explained that Caliente had no authority to use the Models' images in any way, under any circumstances, and that Caliente's use of the images (set forth in the preliminary report attached to the letter) embarrassed and injured the Models.

The Demand Letter requested that Caliente immediately cease and desist any further use and dissemination of the Models' images, remove all such images from Caliente websites and social media, compensate the Models for pirating the images, disclose all insurance policy coverage information, and preserve all records relating to the matters raised in the Demand Letter.  We made clear that immediate compliance with all such requests was required to avoid litigation.  We further informed you that the monetary demand in particular will be withdrawn after 30 days from receipt of the Demand Letter.  Caliente acknowledged receipt of the Demand Letter on September 14, 2015.

To date, we have received no response to the Demand Letter.  Our continuing investigation of Caliente's advertisement, promotional and marketing activities reveals that Caliente has not removed a single unauthorized image identified in and included with the Demand Letter.  It has now come to our attention that, on or about September 20, 2015, Caliente posted a *new image* of one of the Models without obtaining authority to do so, and without compensating that Model.  That image is enclosed herewith as Exhibit 1.  Caliente's knowing, wilful and intentional unauthorized use and dissemination of the Models' images will be detailed in a complaint and will amplify any prayer for damages should we be compelled to litigate this matter.

Once again, we request Caliente's prompt compliance with the requests made in the Demand Letter and, in particular, the *immediate removal of all images* posted by Caliente without the Models' authority.  We look forward to Caliente's prompt cooperation and are available to discuss at your first convenience.

**AKERMAN LLP**


By:  *Christopher Oprison (electronically signed)*
     Christopher Oprison


Encl.

cc:    Daniel Rosenthal, Akerman LLP
       Joseph Casas, The Casas Law Firm

Exhibit C

JAIME EDMONDSON



Exhibit D

## ALANA CAMPOS



Exhibit E

# JOHN COULTER



Exhibit F

JESSICA BURCIAGA



Exhibit G

BRENDA LYNN GEIGER



Exhibit H

CLARK GILMER



Exhibit I



Exhibit J

**RACHEL BERNSTEIN KOREN**



Exhibit K

AMBER LANCASTER



Exhibit L

URSULA MAYES





Exhibit M

CARRIE MINTER



Exhibit N

# DESSIE MITCHESON







Exhibit O

**SABELLA SHAKE**





Exhibit P

## TIFFANY TOTH



**Caliente Resort Vacations**
July 4, 2014 ·

And the holiday party weekend continues.  Join us tonight at 8pm for our #July4th holiday party #American Bombshell. Salute our great country with some #sexy military uniforms.

Like  Comment · Share

People You May Know                                    See

Add Friend

Add Friend



Exhibit Q





Exhibit R

**LAURIE YOUNG**



