UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAIME FAITH EDMONDSON, ALANA
CAMPOS, JOHN COULTER, JESSICA
BURCIAGA, BRENDA LYNN GEIGER, CLARK
GILMER, JESSICA HINTON, RACHEL
BERNSTEIN KOREN, AMBER LANCASTER,
URSULA MAYES, CARRIE MINTER, DESSIE
MITCHESON, SABELLA SHAKE, TIFFANY
TOTH, IRINA VORONINA, LAURIE ANN
YOUNG, CARMEN ELECTRA and CARISSA
ROSARIO

The Honorable Steven D. Merryday

Civil Action No. 8:15-CV-02672-
SDM/TBM

Plaintiffs,

- against -

CALIENTE RESORTS, LLC, d/b/a CALIENTE
RESORT, and CALIENTE VACATION CLUB,

Defendants.

## [CORRECTED] PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs Jaime Faith Edmondson, Alana Campos, John Coulter, Jessica Burciaga,

Brenda Lynn Geiger, Clark Gilmer, Jessica Hinton, Rachel Bernstein Koren, Amber Lancaster,

Ursula Mayes, Carrie Minter, Dessie Mitcheson, Sabella Shake, Tiffany Toth, Irina Voronina,

and Laurie Ann Young (collectively, "Original Plaintiffs") and Carmen Electra and Carissa

Rosario (collectively, "New Plaintiffs") ("Original Plaintiffs" and "New Plaintiffs" collectively

referred to as "Plaintiffs") file this Motion for Protective Order against Defendants Caliente

Resorts, LLC ("Resort") and Caliente Vacation Club, LLC ("Vacation Club").   In support,

Plaintiffs state:

## INTRODUCTION

This is an action in which Plaintiffs, all highly successful models, seek to protect their images from misuse and misbranding by a deviant swinger resort that openly promotes spouse swapping and group sex.  The defense has embarked on a mission to embarrass, abuse and intimidate each Plaintiff.  Its position on discovery matters at issue in this motion can be summed up as follows:

- *First*, Plaintiffs have put their *personal* reputation into issue by seeking damages for reputational harm, emotional distress or other personal injuries.

- *Second*, by agreeing to participate in this action, each Plaintiff must therefore endure the defense's abusive and harassing discovery demands.  To that end, the defense is entitled to know anything and everything about the private lives of each Plaintiff, regardless of how intimate, personal, private, embarrassing, painful or utterly irrelevant that information might be.

- *Third*, Plaintiffs who have posed or appeared nude in other photo shoots (such as *Playboy* magazine), advertisements or movies have effectively relinquished any right to object to the use of their images by Defendants.

Topics of discovery which the defense has aggressively sought and indicated an intent to continue to do so absent Court intervention include, but are not limited to:

- beyond merely the *existence* of prior marriages and/or divorces, the defense seeks all non-public *details* relating thereto;

- present and past non-marital sexual relationships;

- the number of sexual partners each Plaintiff has had for the past 10-15 years;

- the frequency with which each Plaintiff engages in sexual relations;

- whether any Plaintiff engages in self-gratification (masturbation) and has done so during a photo shoot, video or movie;

- whether any Plaintiff has ever received compensation in exchange for sexual favors (in other words, is any Plaintiff now, or has she/he ever been a prostitute); and

- whether any Plaintiff has a venereal or other sexually transmittable disease.

The defense misreads the Original and Amended Complaints in an attempt to manufacture the relevance of issues that have no bearing on any claim or defense in the case. Each Plaintiff's theory of damages is predicated on, among other things, deprivation of the right to negotiate NOT to have her or his image used by Caliente, as well as the professional reputational harm likely to flow from forced endorsement of a disreputable brand like a swinger resort that advocates spouse swapping and rampant group sex. Such discovery is utterly without any basis in Fed. R. Civ. P. 26 and was properly challenged (and properly limited) in the depositions of Ms. Voronina and Ms. Campos.

Moreover, the scope of discovery is intended to be broad, it is not unlimited. The intensely personal and private matters the defense maintains is discoverable exceeds all permissible bounds of the federal evidentiary rules as well. Questions posed by defense counsel, characterized as "background questions," were really veiled attempts to elicit improper reputation evidence under Fed. R. Evid. 404 and 405 designed to embarrass, intimidate and harass. Anecdotally, these are precisely the types of questions aimed at re-victimizing victims that Fed. R. Evid. 412 is designed to foreclose. Even if tangentially probative of an issue implicated by the claims or defenses in the case (which they are not), such questions would never pass muster under a proper Rule 403 balancing.

Lacking any relevance or probative value whatsoever, the matters the defense has so aggressively pursued – and threatened to continue to pursue at upcoming depositions of all remaining Plaintiffs – are singularly intended to abuse, harass, intimidate, oppress, embarrass and humiliate. Defense counsel's mistreatment of Ms. Voronina and Ms. Campos during the course of their depositions – all of which the undersigned made every effort to prevent despite repeated (and unwarranted) threats to seek sanctions – is proof positive the defense has no

misgivings whatsoever about this conduct.  Such mistreatment is chronicled in the affidavits of

Plaintiffs Irina Voronina, Tiffany Toth, and Alana Campos, and attorney Joseph Casas, exhibits

1-4, respectively, to Plaintiffs' Opposition to Defendants Motion for Sanctions filed May 6, 2016

(Doc. No. 64), and are incorporated by reference here.  And, despite Plaintiffs' attempt to meet

and confer with defense counsel immediately following the Voronina and Campos depositions

regarding an appropriate scope for the remaining Plaintiff depositions, (*see* Doc. No. 64-5), the

defense ignored such entreaties and, instead, filed their sanctions motion.  The defense now

seeks to set new deposition dates for the remaining Plaintiffs and has even filed a motion to

compel deposition dates.  (*See* Doc. No. 69).  At the same time, defense counsel has threatened

to continue aggressive and inappropriate inquiry into highly personal and private topics.  All

attempts to meaningfully meet and confer regarding the proper scope of discovery of Plaintiffs

have failed.  Accordingly, Plaintiffs respectfully request that the Court enter a protective order

prohibiting Defendants from seeking in discovery the details of each Plaintiff's intimate personal

and private relationships with other persons, as set forth below.

## FACTUAL BACKGROUND

### A.    Plaintiffs

Each Plaintiff is a successful model, actress/actor, and business leader.  Each Plaintiff

makes a living by promoting her/his image and likeness to various clients as well as relying on

their professional reputations and own brands for modeling, acting, hosting, and other

opportunities.  Each Plaintiff's career in modeling, acting, and private enterprise has value

stemming from the goodwill and professional reputation each has built, all of which is critical to

being selected for jobs and maximizing earnings.  Each Plaintiff has worked diligently to

establish herself or himself as reliable, reputable and professional, and worthy of marquis

endorsement campaigns.  Each Plaintiff must necessarily be vigilant in protecting her or his

brand from harm, taint, or other diminution.   Any improper or unauthorized use of likeness, particularly by an entity or individual involved in an undesirable and non-reputable industry such as "swinger" or "spouse-swapping" lifestyle resorts has the great potential to hinder career opportunities of each Plaintiff.

At no time was any Plaintiff approached by Defendants or any agent thereof seeking consent to use the image of any Plaintiff for any purpose whatsoever.   At no time has any Plaintiff executed a release that would permit, or in any way could be construed to permit, the use of any image of any Plaintiff for any purpose whatsoever.   At no time was any Plaintiff offered the opportunity to engage in arms-length negotiations regarding the use of any image. And, at no time was any Plaintiff provided any compensation for Defendants' use and alteration of any image.   Defendants, however, reaped a windfall by using and altering the images of professional and successful models for commercial purposes without having to compensate the models a single penny for such usage.

## B.      Defendants

Defendants own and operate a swinger lifestyle/group sex resort catering to individuals engaging in "swinger" or open relationship lifestyle events.   Defendants host multiple events throughout each month at the Resort.   Unbeknownst to Plaintiffs until this matter, for years, images of one or more of the Plaintiffs have been pirated and used in marketing and promotion of those events.   Defendants also partner with private spouse swapping/swinger membership clubs such as AAHZ, Swinger Dating Club ("SDC"), Swinger Life Style ("SLS"), and Sexy Bare Bottoms Club ("SBBC"), to host weekly, monthly and annual holiday swinger and group sex parties at the Resort.

Defendants concede they have used Plaintiffs' images for their advertisements. Defendants concede their use of Plaintiffs' images are purely for commercial purposes, specifically, to increase membership in the Resort, entice more patrons to the Resort and ultimately to increase revenues and make money.  Defendants concede they are aware of no actual releases by the Plaintiffs that would authorize the use by Defendants or party co-hosts (AAHZ, SDC, SLS, or SBBC).  Defendants concede that open and public affiliation with the Resort and its lifestyle events will, "without question," cause personal embarrassment *even for its own members,* as well as reputational and professional harm, including lost employment and business opportunities.  Defendants refuse, however, to remove the imagery or cease their unlawful activities.

## C.      The Original Complaint and Amended Complaint

On November 13, 2015, Original Plaintiffs filed a collective Complaint (Doc. No. 1). Each Original Plaintiff alleged nine counts against Defendants.[1]  With respect to Counts VI (defamation) and VII (defamation per se), each Original Plaintiff alleged Defendants' "unauthorized use and publication" of each Plaintiff's image or likeness "constitutes false representations or statements by implication" that Plaintiff's "*affiliation with or employment by the Resort, and her participation in or endorsement of the advertised activities at the Resort.*" (*E.g.,* Doc. No. 1 at ¶ 384) (emphasis added).  Each Plaintiff further alleged that "Defendants' use and publication of false and defamatory statements . . . have directly and proximately harmed [each Plaintiff's] *reputation and marketability*, among other injuries, in an amount to be determined at trial."  (*Id.* at ¶ 395 (emphasis added)); *see also* (*id.* at ¶ 411 (alleging as to defamation *per se* that the false associations attribute to Plaintiffs a condition "incompatible with

---

[1] The Court's recent ruling largely denied Defendants' Motion to Dismiss but dismissed Count IX alleging negligence by Defendants.  (Doc. No. 61.)  Per the Court's Order, Plaintiffs filed an Amended Complaint on May 13, 2016. (Doc. No. 16.)

the proper exercise of her lawful business, trade, profession, or office" rather than a condition relating to any Plaintiff's personal relationships.))

References to "reputation" in the Original Complaint are plainly in the context of professional reputation and marketability in the industry.  Each Plaintiff further alleged that "[i]n the modeling industry, reputation is critical" such that "endorsing, promoting, advertising or marketing the 'wrong' product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities." (*Id.* at ¶ 54.)  Nowhere does the Complaint seek damages related specifically to personal, reputational harm.

Insofar as there was any ambiguity on this point which the defense has attempted to exploit (a point we do not concede), the Amended Complaint made explicit what was already implicit.  But, even assuming one or more allegations in the Complaint could be construed to place *personal* reputation into issue, under no set of circumstances should the defense's malicious demands to make each Plaintiff's private life an open book be countenanced. Inquiring, and threatening to continue to inquire, into such highly personal and private topics such as marriage, divorce, sexual relations, etc. exceeds all bounds of what is acceptable for examination.

## D.  Defense Counsel's Improper Inquiries and Threats

Defendants deposed Plaintiffs Campos and Voronina on April 5 and 6, 2016, respectively.  Defense counsel inquired not just about the *existence of* Ms. Campos' prior marriage that ended in divorce in 2011, but also the *details* regarding it (well outside the relevant period), as well as her current relationship with her boyfriend.  When asked about the relevancy

of such information, defense counsel stated that such questions were related to Ms. Campos' claimed damages to her personal reputation.  (Campos Tr. 10:14-20.)

Defense counsel likewise inquired about not just the *existence of* Ms. Voronina's prior marriages that ended in divorce in 2003 and 2008, but the *non-public details* relating thereto, as well as the circumstances of her current relationship.  When asked about the relevance of such information, the defense explained it was entitled to ask Ms. Voronina "background questions." (Voronina Tr. 45:7-8.)   When challenged on whether the questions constituted proper background questions, the defense refused to articulate any ground for inquiring about Ms. Voronina's prior divorces, particularly intimate details far outside the relevant period.  (*See, e.g.,* Voronina Tr. at 46:19-22.)

During both the Campos and Voronina depositions, the defense also aggressively questioned each witness about prior nude photo shoots for Playboy, purported self-gratification videos (which do not exist), and suggested Plaintiffs had engaged in pornography simply because nude Playboy photos or still shots from movies had somehow been pirated by another entity, posted to a website or social media site and tagged with the term "porn."

Since that time, defense counsel has repeatedly maintained she is entitled to know everything and anything personal and private about Plaintiffs, that she intends to inquire about the details of prior marriages and divorces, present and past non-marital sexual relationships, the number of sexual partners each Plaintiff has had for the past 10-15 years, the frequency with which each Plaintiff engages in sexual relations, whether any Plaintiff engages in self-gratification (masturbation), whether any Plaintiff has ever received compensation in exchange for sexual favors (in other words, whether any Plaintiff is now, or has ever been, a prostitute), and whether any Plaintiff has a venereal or other sexually communicable disease, despite

knowing such questions plainly exceed the bounds of matters raised in the Original and Amended Complaint.

**E.      Plaintiffs' Repeated Attempts to Meet and Confer with the Defense Regarding their Treatment of Plaintiffs and the Proper Scope of Examination During Depositions Have Been Ignored or Proven Unproductive.**

The defense ignored Plaintiffs' April 7, 2016 letter seeking to discuss counsel's treatment of Plaintiffs, including Ms. Campos and Ms. Voronina, short of seeking relief from the Court. (*See* Doc. No. 64-5.)   Instead, two weeks later, the defense filed its Motion for Sanctions, (*see* Doc. No. 53) which was denied on May 17, 2016, (*see* Doc. No. 71).

During the preparation of this Motion for Protective Order, the defense challenged Plaintiffs' confidential designations over personal and private information elicited by defense counsel during depositions.   The defense maintains that inquiring about "the existence of any prior marriages *and any possible children"* was necessary "*in order to establish possible witnesses.*"   (**Ex. 1,** May 12, 2016 Letter re: confidential designations).   In other words, the defense intends to, or at least has tacitly threatened to, make witnesses out of ex-husbands *and* any children of a current or prior marriage.

The defense has now demanded deposition dates for the remaining Plaintiffs, (**Ex. 2,** Counsel emails of May 3, 10, 2016), and, on May 16, 2016, moved to compel deposition dates[2] (Doc. No. 69).   This, after Plaintiffs attempted to confer regarding the instant Motion for Protective Order and the defense invited Plaintiffs to file the instant Motion.   (**Ex. 3,** May 12 email exchange of counsel.)   The defense declined to discuss the matter further, reiterated its

---

[2] The Motion to Compel Deposition Dates mischaracterizes the nature of the parties' May 12 email communications and omits any reference to the Motion for Protective that prompted Plaintiffs' outreach in the first instant.  It also perpetuates the fiction espoused by the defense that Plaintiffs seek personal reputational *damages*, is directed to a superseded pleading, and ignores the Amended Complaint filed May 13, 2016 which made explicit what was already implicit in the original complaint.

view as to the discoverability of any and all personal and private details pertaining to each Plaintiff, and invited Plaintiffs to file this Motion.  *Id.*

On May 17, 2016, following the Court's denial of the sanctions motion, the defense offered to withdraw the Motion to Compel Deposition Dates if Plaintiffs (1) agreed not to file the this Motion for Protective Order, (2) provided reasonable dates for the depositions, and (3) agreed to extend the fact discovery deadline.  (**Ex 4,** May 17 letter and email exchange of counsel.)  Notwithstanding the one-sided nature of the defense's "olive branch" proposal – a point raised in Plaintiffs' response, (*see* Ex. 4) – the defense's communication was conspicuously silent about the critical dispute underlying this Motion: the defense's aggressive pursuit of all personal and private details about each Plaintiff.  As to this and all other outstanding discovery matters, the defense refuses to participate in any meaningful meet and confer discussions.[3]  (*See* Ex. 4.)  Despite Plaintiffs' good faith efforts to meet and confer, the defense's steadfast refusal to abandon their indefensible position again removes any question about the necessity of this Motion.[4]

## DISCUSSION

The defense has no grounds for pursuing the discovery of highly personal and private details for each Plaintiff.  Indeed, prevailing precedent and the Federal Rules make clear that such matters propounded by the defense are not discoverable.  Attempts to invade these areas,

---

[3] Plaintiffs have made every attempt to have a meaningful discussion about outstanding discovery matters.  Indeed, as we will note in our opposition to the defense Motion to Compel Deposition Dates, Plaintiffs offered to tentatively set dates for Plaintiffs with the understanding that if there is no ruling on this Motion for Protective Order by that time, the depositions will be continued.  (*See* Ex. 4.)  This was only AFTER defense counsel once again refused to commit to avoiding questions to Plaintiffs that are designed to embarrass, harass, abuse, oppress and intimidate. (Ex. 4.)  Defense counsel rejected this and other attempts by Plaintiffs to accommodate their demands and move the discovery process along.

[4] Regardless of the clear language in the Original Complaint, and even clearer language in the Amended Complaint, defense counsel adheres to the indefensible position that the "lawsuit has put all of these [personal and private] items at issue. Your clients may not like the questions but they are relevant to the defense of the claims. You are not going to limit what we can ask your clients when they all choose to File a lawsuit. File your motion and we will respond in kind."  (Ex. 4 (Attorney Michael Kraft email thread).)

coupled with the combative manner in which the defense has done so, are why such protections against abusive discovery were put in place.

**A.      Highly Personal and Private Questions as Posed by the Defense are not Discoverable under Rule 26(b)(1).**

Federal Rule of Civil Procedure 26(b)(1) permits parties to obtain, through discovery, "any non-privileged matter that is relevant to a party's claim or defense." The language of Rule 26(b)(1) makes clear that materials are discoverable only if they relate to the claims and defenses raised within the four-corners of the pleadings. Additionally, the rule contemplates courts will have an active role "in regulating the breadth of sweeping or contentious discovery." *See D'Aprile v. Unum Life Ins. Co. of Am.*, No. 2:09-CV-270-FTM36SPC, 2010 WL 3043220, at *1 (M.D. Fla. July 30, 2010) (internal citations omitted); *see also Jablonski, Jr. v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-CV-386, 2008 WL 8082765, at *3 (M.D. Fla. Sept. 18, 2008) (limiting discovery to only the claims adjuster files at issue in the case, and denying more global requests).

Matters that are not implicated in the pleadings, or which do not arise through reasonable inferences therefrom, are not discoverable. *See Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013), aff'd, No. 12-80582-CIV, 2013 WL 1934075 (S.D. Fla. Apr. 5, 2013) ("discovery should be tailored to the issues involved in the particular case"); *Dellacasa, LLC v. John Moriarty & Associates of Florida, Inc.*, No. 07-21659-CIV, 2007 WL 4117261, at *2 (S.D. Fla. Nov. 16, 2007) (denying discovery requests directed to projects unrelated to an actual claim or defense in the case); *Gov't Employees Ins. Co. v. Prushansky*, No. 12-80556-CIV, 2013 WL 499382, at *2 (S.D. Fla. Jan. 4, 2013) (denying discovery request regarding personnel records, among other things, as overly broad, seeking information that has no bearing on the claims and defenses in the case, and noting that it sought highly personal and confidential information for which the party seeking the discovery has not established any legitimate need).

The scope of discovery, while traditionally broad, is not without limits. *Auto-Owners, Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla 2005) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-53 (1978)). A party may not manufacture relevance of an issue that would not otherwise be an appropriate matter of discovery in an effort to bootstrap embarrassing and harassing discovery demands. *Cf. Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* 262 F. Supp. 2d 923, 926-27 (N.D. Ill. 2003) ("Discovery under Fed. R. Civ. P. 26(b) is not without limits; the manner and scope of discovery must be tailored to some extent to avoid harassment or being oppressive. When the purpose of the discovery is to obtain information for reasons *other than* the prosecution or defense of the lawsuit, unless vital information is at stake, discovery will be denied in its entirety.") (emphasis added) Simply asserting that discovery is relevant to a claim or defense is not sufficient to make a matter discoverable; the party seeking discovery must articulate at least some grounds for obtaining disputed and contentious discovery.

The Original and Amended Complaints plead consistently that Defendants' unauthorized use and alteration has and is likely to continue to cause *professional* reputational harm. Defendants' own corporate representative as well as its Chief Financial Officer and General Counsel have conceded this fact. Personal and private details as identified in this motion, regardless of any temporal component, have no bearing on any claim or defense in the case. Despite the defense's rote justification that the "lawsuit has put all of these [personal and private] items at issue," (Ex. 4), the defense has yet to offer a single, solitary and defensible basis for that sweeping statement. Nor can it. That the defense is bullish in its efforts to intimidate the Plaintiffs is apparent from its most recent threats. The defense's failure to even acknowledge the Amended Complaint is further testament to the singular, improper purpose for which it seeks this

discovery.  Because the personal, private and intimate matters sought by the defense, *see supra,* are not reasonably implicated by the four-corners of the pleadings or reasonable inferences to be drawn therefrom, such matters are not discoverable under Rule 26.

## B.     Such Questions are not Proper Character/Reputation Questions

Even assuming the defense was partly correct in its assertions that some personal or private details of each Plaintiff were discoverable,[5] the proposed discovery is still improper and would not be appropriate character evidence.  Under F.R.E. 405, a person's character may be proven by reputation or opinion evidence.  There are obvious limits to avoid the types of abuses the defense attempts to perpetrate.  Reputation evidence sought must be reasonably related to the reputation or character trait *in issue*.  *See Johnson v. Pistilli*, No. 95 C 6424, 1996 WL 587554, at *4 (N.D. Ill. Oct. 8, 1996) (ruling that evidence of defendant's reputation in the African-American community in which he works was irrelevant and therefore inadmissible in a case concerning discriminatory intent in the defendant's apartment rental practices); *Mitchell v. Hutchings*, 116 F.R.D. 481, 484 (D. Utah 1987) ("evidence of sexual conduct which is remote in time or place to plaintiffs' working environment is irrelevant. . . .  Such evidence is also unlikely to lead to the discovery of admissible evidence. Given the annoying and embarrassing nature of this discovery, the court holds, as a matter of law, that Rule 26 of the Federal Rules of Civil Procedure preponderates against its discoverability."). Other than a blanket demand that it is entitled to know every personal and private detail about each Plaintiff, the defense has identified

---

[5] On this point, it should be noted that during the Voronina and Campos depositions, the defense posed personal and private questions to each Plaintiff to which only a form objection was placed on the record by Plaintiffs' counsel. The defense was not precluded from examining the witnesses about any personal or private details until the defense began probing obvious areas of embarrassment that non-public and designed only to embarrass the witnesses.  Since that time, defense counsel has indicated that the questions posed to Ms. Voronina and Campos were "tame" when compared to questions she intended to pose to the remaining Plaintiffs.  Those intensely personal topical areas are identified throughout this Motion.

not a single reputation or character trait of any Plaintiff that is in issue in this case involving the theft and alteration of Plaintiffs' imagery.

Here, each Plaintiff alleges harm to her or his professional reputation as a result of Defendants' forced public affiliation with the Resort and its swinger activities, a fact conceded by the defense's own corporate representative, CFO and General Counsel.  Intimate details about each Plaintiff's personal intimate relationships, marriages, divorces and children born in or out of wedlock, whether a Plaintiff has a venereal or other sexually transmitted disease, or is in any way of loose or "unchaste" moral fiber is not relevant not can it conceivably lead to the discovery of admissible evidence.  Appropriate reputation questions would pertain, for instance, to a model's caliber of endorsement, her or his reliability and dependability, and her or his ability to connect visually with a consumer or prospective consumer regarding the good or service being advertised, among others.  The defense again has offered no basis other than a generalized statement that the personal and private lives of each Plaintiff are an open book for defense counsel's perusal.

That Plaintiffs allege that the false advertisements are "defamatory" in no way opens the door for the unbounded discovery advocated by the defense.  The defense's own failure to substantiate its affirmative defenses punctuates this point.  To illustrate, Affirmative Defense 7 contends that no Plaintiff may maintain an action for defamation and defamation per se because each allegation as to each Plaintiff said to be "defamatory" is, in fact, true in all respects as to each Plaintiff.  (*See* Doc. No. 16, Aff. Def. ¶ 7)  Organically illegitimate discovery demands cannot be validated by simply lodging a knowingly false affirmative defense.  Permitting a party to do so would invite the very abuses the federal evidentiary rules were on character evidence were designed to prevent.  According to Affirmative Defense 7, then, at least one of the

following must be true: (1) each Plaintiff agreed to advertise, market or promote the Resort; (2) each Plaintiff actually endorses and supports the events at the Resort; (3) each Plaintiff appearing in each contested advertisement takes part in the activities being advertised (swinger parties); or (4) each Plaintiff would appear at any event for which her or his image is being used to advertise and/or take part in such swinger or group sex activities at the Resort.  The defense knew then, and knows now, that each one of these premises are abjectly false.

The defense's own designated representative not surprisingly admitted *the corporations* (the actual defendants in this case) had no understanding of any factual predicate for Affirmative Defense 7, (*see* Dorsey Dep Tr. at 237:1-238:23), even after being coached by defense counsel. As the defense is aware, not one Plaintiff agreed to advertise, market or promote the Resort, not one Plaintiff is a member of the Resort, not one Plaintiff has taken part in the activities being advertised (a verifiable fact from Defendants' own records), and not one Plaintiff was contacted at any point to verify whether she or he would attend any party for the imagery was used.

Undeterred, the defense continues to improperly pursue personal and private facts, proclaiming its relevance.  It is highly improper for the defense to contradict the testimony of its corporate designee solely to justify continued abusive tactics.  *Cf. U.S. v. Certain Real Prop. known as & Located at 6469 Polo Pointe Way, Delray Beach, Fla.*, 444 F. Supp. 2d 1258, 1262 (S.D. Fla. 2006) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)) (ruling it is proper to deny discovery on matters relevant to claims or defenses that have been stricken from the case, unless the information sought is independently relevant to other issues in the case).  Accordingly, the defense may not elicit personal or private details in order to prove reputation or character.

C.     **Even if Probative, Permitting the Defense to Explore Such Topics Would be Highly Prejudicial to each Plaintiff**

"The Federal Rules of Evidence provide that '[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence.'" *United States v. Hansen*, 563 F. App'x 675, 677 (11th Cir. 2014) (quoting Fed. R. Evid. 611(a).)  The district court is vested with exceedingly broad power to protect witnesses from harassment or undue embarrassment.  *Id.* (citing *United States v. Hill*, 643 F.3d 807, 845 (11th Cir. 2011).)  Moreover, under Rule 403, "[d]istrict courts are well within their discretion to exclude even relevant evidence for undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (citing *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007) (per curiam).)

Given the lack of any relevance or probative value, the defense is improperly motivated by a desire to harass or intimidate or discourage Plaintiffs from prosecuting their claims and having their day in court and is ripe for a protective order.  *See Priest v. Rotary*, 98 F.R.D. 755, 761-62 (N.D. Cal. 1983) ("discovery of intimate aspects of plaintiffs' lives, as well as those of their past and current friends and acquaintances, has the clear potential to discourage sexual harassment litigants from prosecuting lawsuits" and, on that basis, granted plaintiff's requested protective order prohibiting the defense from inquiry into plaintiff's past sexual behavior).

Here, the defense has not articulated, whether at the deposition or in any written missive since that time, a single colorable basis establishing the discoverability of each Plaintiff's personal and private information.  Nor can it.  There is no probative value. The defense's contention that such information goes to Plaintiffs' claims of reputational harm is belied by the conspicuous absence of any allegations of reputational harm derived from a relationship any Plaintiff had with a present or former spouse, a child, a present or former boyfriend/girlfriend, or a present or former friend or personal acquaintance.  As is clear from both the original and

Amended Complaint, each Plaintiff's defamation claim alleges that the reputational harm concerns only their professional reputation in their business dealings with other individuals and entities that hire each Plaintiff to perform modeling, endorse a good or service, or otherwise promote a reputable brand.  (*See, e.g.* Doc. No. 1 at ¶¶ 52, 54, 384, 395, and 411; *see also* Doc. No. 68 at ¶¶ 66, 67, 68, 73, 74.)

*Even if* specific instances of each Plaintiff's most private and intimate details were somehow probative – both substantively and temporally – of a claim or defense in the case, the defense could never pass muster under a Rule 403 balancing analysis.[6]  Rule 403 permits even relevant evidence to be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."  *Id; see also Ingle v. Circuit City*, No. 99-CV-1297-RHW, 2006 WL 6086293, at *6 (S.D. Cal. Feb. 6, 2006) (quoting Fed. R. Evid. 403) (excluding evidence regarding a Plaintiff's abortion under Rule 403, finding that such evidence would been "highly prejudicial" due to the likely "fierce emotional reaction" if a finder of fact were to learn of it, and the fact that such information "had very little probative value.")  "Unfair prejudice relates to the risk that the jury will decide the case on an improper basis."  *Id.*

Here, the defense has repeatedly threatened to inquire into highly personal and private details at each additional Plaintiff deposition, but cannot carry its burden to establish that questions about the frequency of sexual relations, intimate and even painful matters relating to prior divorces, and the host of other invasive personal questions they seek to pose can pass muster under Fed. R. Evid. 403.  In such circumstances, where the defense shows no signs of retreating from its indefensible position, the Court may deem such questioning inappropriate,

---

[6] Anecdotally, F.R.E. 412 was enacted to prevent the type of re-victimization of victims of sexual assault that we are seeing here from defense counsel.  In civil actions, evidence of prior sexual proclivities is appropriate only if its probative value *substantially* outweighs the danger of harm or unfair prejudice.  Despite repeated entreaties by the undersigned for defense counsel to articulate grounds – *any grounds* – for the relevance of such questions, defense counsel has refused to do so.

enter a protective order and even sanction defense counsel if it continues to pose such invasive questions. *See Purser v. Trauner, Cohen & Thomas, L.L.P.*, No. 1:07-CV-0395-JOF, 2007 WL 4458455, at *3-4, 7 (N.D. Ga. Dec. 14, 2007) (court finding that counsel's deposition question about a Plaintiff's credit card debt probed irrelevant matters not implicated in the complaint, ruling questioning inappropriate, entered a protective order and sanctioned defense counsel.) Such is the relief that is appropriate here.

## D.     A Protective Order Must Be Granted to Prevent Continued Discovery Abuses by the Defense

Pursuant to Rule 26(c) the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." *Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 663 (M.D. Fla. 2014) (quoting Fed. R. Civ. P. 26(c)).  As this Court has noted, "[g]ood cause 'generally signifies a sound basis or legitimate need to take judicial action.'" *Id* (quoting *In re Alexander & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987)).  Courts have "broad discretion when fashioning protective orders . . . ." *Id.* at 664.

Courts have granted protective orders and denied inquiries into a Plaintiff's sexual relationships when the relationships with those persons are not relevant and such discovery would serve only to harass, embarrass, and annoy the plaintiff.  *See Gibbons v. Food Lion, Inc.*, No. 98-1197-CIV-T-23F, 1999 WL 33226474, at *3 (M.D. Fla. Feb. 19, 1999).  Even if found to be relevant or probative on an issue, the Court may still preclude discovery into such areas if "the burden of answering certain questions outweighs their likely value," *Saylavee LLC v. Hockler*, No. CIV. 3:04 CV 1344 CFD/TPS, 2005 WL 1398653, at *2-3 (D. Conn. June 14, 2005) (citing Fed. R. Civ. P. 26(b)(2)(iii)) and issue a protective order to protect a witness "from annoyance, embarrassment, oppression, or undue burden. . . ." *Id.* (quoting Fed. R. Civ. P. 26(c).)

In light of the foregoing discussion, there are no grounds under Rule 26, or the federal rules of evidence to permit the defense's discovery of highly personal, private details of each Plaintiff's life.  Lacking any probative value, and virtually guaranteed to cause embarrassment, intimidation and oppression of each Plaintiff should the defense continue unimpeded in its discovery abuses, good cause exists for issuance of a protective order.

## LOCAL RULE 3.01(G) CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.01(g), counsel for Plaintiffs conferred multiple times with the defense who advised each time that Defendants oppose the relief requested and recommended that Plaintiffs' counsel file the present Motion.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant Plaintiffs a protective order as outlined herein that prohibits lines of questioning designed to harass, abuse, or intimidate plaintiffs, and grant Plaintiffs such further relief that is just and proper.

Dated: May 18, 2016

Respectfully submitted,

/s/ *Christopher G. Oprison*
Christopher G. Oprison, Esq.
Florida Bar Number: 0122080
Email: christopher.oprison@akerman.com
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Phone: (202) 824-1703
Fax: (202) 393-5959
*Pro Hac Vice Admission*

AND

Richard H. Martin, Esq.
Florida Bar Number: 579831
Email: richard.martin@akerman.com
**AKERMAN LLP**

401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837

AND

Daniel B. Rosenthal, Esq.
Florida Bar Number: 711934
Email: daniel.rosenthal@akerman.com
**AKERMAN LLP**
2424 North Federal Highway, Suite 410
Boca Raton, FL 33431
Phone: (561) 862-4000
Fax: (561) 368-4668

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2016, I presented the foregoing to the Clerk of the

Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which

will send a Notice of Electronic Filing to:

Michael Kraft, Esq.
Nicole Soto, Esq.
**CONROY SIMBERG**
201 East Kennedy Blvd., Suite 900
Tampa, FL 33602
Phone: (813) 273-6464
Fax: (813) 273-6465
mkraft@conroysimberg.com
nsoto@conroysimberg.com

*Attorneys for Defendants*

/s/ *Christopher G. Oprison*
Christopher G. Oprison